## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

**IN RE:**

**JSMITH CIVIL, LLC,**　　　　　　　　　　　　　　**CASE NO. 23-02734-5-JNC**
　　　　　　　　　　　　　　　　　　　　　　　**CHAPTER 11**

　　　　　　**DEBTOR.**

---

## PLAN OF REORGANIZATION
### [March 18, 2024]

---

**BUCKMILLER, BOYETTE & FROST, PLLC**

JOSEPH Z. FROST (NCSB No. 44387)
jfrost@bbflawfirm.com

4700 Six Forks Road, Suite 150
Raleigh, North Carolina 27609
T: 919.296.5040
F: 919.977.7101

Counsel for Debtor JSmith Civil, LLC

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

IN RE:

**JSMITH CIVIL, LLC,**                                      **CASE NO. 23-02734-5-JNC**
                                                           **CHAPTER 11**

                    **DEBTOR.**

---

## PLAN OF REORGANIZATION

---

Pursuant to the provisions of § 1123 of the Bankruptcy Code and Rules 3011 and 3016 of the Federal Rules of Bankruptcy Procedure, the Debtor JSMITH CIVIL, LLC (the "Debtor") hereby submits the following *Plan of Reorganization* (the "Plan"):

## ARTICLE I
## INTRODUCTION AND SUMMARY

The Debtor, a limited liability company organized and existing under the laws of the State of North Carolina, filed a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code on September 19, 2023, and this Plan, as proposed, contemplates a reorganization of the Debtor's assets and liabilities, continuation of the Debtor's construction business operations, the income from which will be utilized to pay operating expenses as well as those set forth in this Plan.

Reference is made to the Disclosure Statement, which is submitted along with the Plan, for a brief discussion of the Debtor's history, business structure, operations, summary of the Plan, proposed sales, and information relating to the various assets and property owned by the Debtor. In accordance with the Plan, the Debtor intends to satisfy Claims classified herein from funds derived from its continued business operations, prosecution of Litigation Claims, and, if necessary, the sale and liquidation of real and personal property.

## ARTICLE II
## DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION

**A.    Definitions and Defined Terms.** Unless the context otherwise requires and for purposes of the Plan and the accompanying Disclosure Statement, the following terms shall have the following meanings when used in capitalized form:

1.    "ADMINISTRATIVE CLAIM" or "ADMINISTRATIVE EXPENSE

CLAIM" shall mean any Claim allowed under 11 U.S.C. § 503(b) and entitled to priority pursuant to 11 U.S.C. § 507(a)(1) that has not been paid by the Debtor including, without limitation, any actual and necessary costs and expenses of preserving the Estate, any actual and necessary costs and expenses of operating the Debtor's business, any indebtedness or obligations incurred or assumed by the Debtor, as Debtor-in-Possession, during the pendency of the above-captioned case, including, without limitation, for the acquisition or lease of property or an interest in property or the performance of services, any compensation and reimbursement of expenses to the extent allowed by Final Order under 11 U.S.C. §§ 330 or 503, and any fees or charges assessed against the Estate of the Debtor under 28 U.S.C. § 1930 or under the United States Code.  "ADMINISTRATIVE CLAIM" shall mean any Claim entitled to priority under 11 U.S.C. § 507(a)(1).

2.      "ADMINISTRATIVE CLAIMANT" shall mean the holders of any Allowed Administrative Claim or Administrative Expense Claim for services provided to the Debtor relating to the Bankruptcy Case.

3.      "ADMINISTRATIVE CLAIM BAR DATE" shall have the meaning set forth in Section IV of this Plan.

4.      "AFFILIATE" shall the meaning set forth in 11 U.S.C. § 101(2).

5.      "ALLOWED" shall mean (a) any Claim against the Debtor, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed.

6.      "BANKRUPTCY CASE" shall mean and refer to the above-captioned chapter 11 bankruptcy proceeding that was filed by the Debtor and assigned BK Case No. 23-02734-5-JNC.

7.      "BANKRUPTCY CAUSES OF ACTION" shall mean any Claim or Cause of Action which may be asserted by the Debtor or the Debtor-in-Possession under 11 U.S.C. §§ 541, 542, 543, 544, 546, 547, 548, 549, 550, or 553.

8.      "BANKRUPTCY CODE" or "CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended.  References to "§___" herein shall refer to a section of the

Bankruptcy Code, 11 U.S.C. §101, et seq.

9.     "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as applicable to the chapter 11 cases, promulgated under 28 U.S.C. § 2075, as well as the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of North Carolina.

10.     "BUSINESS DAY" shall mean any calendar day other than a Saturday, Sunday or "legal holiday," as such term is defined in Federal Rule of Bankruptcy Procedure 9006(a).

11.     "CASH" shall mean legal tender of the United States of America.

12.     "CAUSE OF ACTION" shall mean, without limitation, any and all actions, proceedings, causes of action, controversies, liabilities, obligations, rights, rights of setoff, recoupment rights, suits, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, franchises, Claims, counterclaims, crossclaims, affirmative defenses, and demands of any kind or character whatsoever, whether known or unknown, asserted or unasserted, reduced to judgment or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in contract or in tort, in law, in equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the above-captioned case, including through the Effective Date. Without limiting the generality of the foregoing, when referring to Causes of Action of the Debtor or the Estates, Causes of Action shall include (i) all rights of setoff, counterclaim, or recoupment and Claims on contracts or for breaches of duties imposed by law or equity, (ii) Claims pursuant to 11 U.S.C. §§ 362, 510, 542, 543, 544 through 550, or 553, and (iii) Claims and defenses such as fraud, mistake, duress, usury, and any other defenses set forth in 11 U.S.C. § 558. A nonexclusive list of Causes of Action shall be set forth herein.

13.     "CLAIM" shall mean a duly listed or a timely filed Claim that is Allowed in order to be paid by the Court.

14.     "CLAIMS BAR DATE" means, as applicable, (a) January 24, 2024, for non-governmental creditors, or (b) such other period of limitation as may be specifically fixed by an Order of the Bankruptcy Court for the filing of certain Claims.

15.     "CLAIMS OBJECTION BAR DATE" means, for each Claim, the first Business Day that is ninety (90) days after the Effective Date, or such later date

the Bankruptcy Court may establish upon a motion by the Debtor, which may be approved without notice to any party-in-interest or hearing.

16.    "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan pursuant to 11 U.S.C. § 1123(a)(1).

17.    "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. § 1129.

18.    "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. §1129.

19.    "CONFIRMATION ORDER" shall mean the Order of the Court confirming this Plan, as proposed and amended.

20.    "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the Honorable Judge Joseph N. Callaway, II, United States Bankruptcy Judge presiding in, and over, the Bankruptcy Case filed by the Debtor.

21.    "CREDITORS" shall mean all those persons and entities holding Claims against the Debtor for unsecured debts, liabilities, demand or claims of any character whatsoever.

22.    "DEBTOR" shall mean JSMITH CIVIL, LLC,  as identified on the first page of this Plan.

23.    "DISBURSING AGENT" shall mean the Reorganized Debtor, attorney, or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

24.    "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with 11 U.S.C. § 1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of Claims whose votes with respect to this Plan are to be solicited.

25.    "DISPUTED CLAIM" shall mean any Claim that has not been Allowed or Disallowed, (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

For the avoidance of doubt, if no proof of Claim has been filed by the applicable deadline and the Claim is not listed on the Schedules or has been or hereafter is listed on the Schedules as $0.00, disputed, contingent, or unliquidated, such Claim shall be Disallowed and shall be disregarded for all purposes.

26.    "DISTRIBUTION DATE" shall mean the date on which distributions are to be made under the Debtor's Plan.

27.    "EFFECTIVE DATE" shall be the first (1st) day of the first (1st) full calendar month following date on which the Confirmation Order, as defined herein, becomes final and non-appealable.

28.    "ESTATE" shall mean, with respect to the Debtor, the estate created for the Debtor upon the filing of the Bankruptcy Case, pursuant to 11 U.S.C. § 541.

29.    "EXECUTORY CONTRACT" shall mean a contract to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Code.

30.    "FINAL DECREE" shall mean the order of this Court pursuant to Federal Rule of Bankruptcy Procedure 3022 closing this Bankruptcy Case.

31.    "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such Order has expired; or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

32.    "GAAP" means the United States Generally Accepted Accounting Principles.

33.    "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a Priority Claim, Administrative Claim, or Secured Claim.

34.    "IMPAIRED" shall mean those Classes of Creditors whose Claims or Interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their Claims or Interests in Cash as of the Effective Date of the Plan.

35.    "IMPAIRED CLASS" shall mean a Class that is Impaired within the meaning of 11 U.S.C. § 1124.

36.    "INTEREST" shall mean any share of common stock, preferred

stock or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or other right, contractual or otherwise, to acquire any such interest in a Debtor that existed before the Effective Date, any phantom stock or other similar stock unit provided pursuant to the Debtor's prepetition corporate structure and any Claim related to the purchase of interests subject to subordination pursuant to 11 U.S.C. § 510(b); provided, however, that to the extent an Interest is subject to the terms of a prepetition contract or other agreement, any recovery under the Plan on account of such Interest shall be subject to the terms of such contract or agreement.

37.    "LIEN" shall have the meaning set forth in 11 U.S.C. § 101(37).

38.    "LITIGATION CLAIM" shall mean any Claim asserted against the Debtor, including those claims that are disputed, contingent, or unliquidated, arising out of allegations of personal injury, wrongful death, property damage, product liability, tort claims, breach of contract claim, or similar theories of recovery for which coverage may exist under any insurance policy(ies) held by the Debtor.

39.    "PERSON" shall have the meaning set forth in 11 U.S.C. § 101(41).

40.    "PETITION DATE" shall mean September 19, 2023, the date upon which the Debtor filed the voluntary petition seeking relief under chapter 11 of the Bankruptcy Code.

41.    "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

42.    "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under 11 U.S.C. § 507(a).

43.    "PROFESSIONAL" shall mean an Entity: (a) retained pursuant to a Final Order in accordance with 11 U.S.C. §§ 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to 11 U.S.C. §§ 327, 328, 329, 330, 363 and 331 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Court pursuant to 11 U.S.C. § 503(b)(4).

44.    "PROOF OF CLAIM" shall mean a Proof of Claim filed by a Creditor, pursuant to 11 U.S.C. § 502, against the Debtor in the Bankruptcy Case.

45.    "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date,

in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

46.    "REJECTION CLAIM" means a Claim arising from the rejection of an Executory Contract or Unexpired Lease by the Debtor pursuant to 11 U.S.C. § 365.

47.    "REORGANIZED DEBTOR" shall mean the Debtor, as reorganized under the terms of this Plan and revested with the property which was formerly property of the estate, as provided by 11 U.S.C. § 1141(b).

48.    "SALE" shall mean the sale of certain assets of the Debtor under this Plan.

49.    "SALE PROCEEDS" means the proceeds of the Sale under this Plan, after payment of all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions, and any other costs permitted under § 506(c) of the Bankruptcy Code).

50.    "SCHEDULE OF ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES" shall mean the schedule of the Executory Contracts and Unexpired Leases within Class 7 that will be assumed or assumed and assigned by the Debtor pursuant to Article V of the Plan.

51.    "SCHEDULES" shall mean, collectively, the Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases filed by the Debtor pursuant to 11 U.S.C. § 521 and in substantial accordance with the Official Bankruptcy Forms.

52.    "SEC" shall mean the United States Securities and Exchange Commission.

53.    "SECURED CLAIM" shall mean a Claim (a) secured by a Lien on property in which the Estate of the Debtor against which the Claim is asserted has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Final Order entered by the Court, to the extent of the value of the Creditor's Interest in the Estate's interest in such property as determined pursuant to 11 U.S.C. § 506(a); (b) subject to setoff pursuant to 11 U.S.C. § 553, to the extent of the value of the property subject to setoff; or (c) otherwise Allowed

pursuant to the Plan as a Secured Claim.

54.    "SECURED CREDITORS" shall mean all Creditors who hold a lien, security interest or any other encumbrances that have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

55.    "STATEMENT OF FINANCIAL AFFAIRS" or "SOFA" shall mean the Statement of Financial Affairs, filed by the Debtor pursuant to 11 U.S.C. § 521 and in substantial accordance with the Official Bankruptcy Forms.

56.    "SUBSTANTIAL CONSUMMATION" shall mean the time the reorganized Debtor has commenced the distribution of the requisite payments called for under the Plan to all Classes.

57.    "TAX CLAIM" shall mean any Claim entitled to priority in treatment pursuant to 11 U.S.C. § 507(a)(8).

58.    "UNEXPIRED LEASE" means a lease to which the Debtor is a party that is subject to assumption or rejection under 11 U.S.C. § 365.

59.    "UNIMPAIRED" means any Claim or Interest that is not designated as Impaired.

60.    "UNRESOLVED CLAIM" shall mean any Claim that has neither been Allowed, Disallowed or liquidated.

**B.    Rules of Interpretation.** For purposes of this Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" or "Sections" are references to Articles or Sections, as applicable, hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in § 102 of the

Bankruptcy Code shall apply; and (h) any immaterial effectuating provisions may be interpreted by the Debtor in a manner that is consistent with the overall purpose and intent of the Plan all without further Order of the Court.

     **C.**    **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of North Carolina, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate governance matters relating to the Debtor and/or the Reorganized Debtor, shall be governed by the laws of the State of North Carolina, in which the Debtor was incorporated, as applicable.

## <u>ARTICLE III</u>
## CLASSIFICATION OF CLAIMS AND INTERESTS, IMPAIRMENT AND VOTING

     **A.**    **Classification of Claims and Interests Generally.** Pursuant to §§ 1122 and 1123 of the Bankruptcy Code, this Article represents the designation of Classes of Claims and Interests under the Plan. A Claim or Interest is in a particular Class for the purposes of voting on, and receiving distributions pursuant to, the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released, withdrawn or otherwise settled before the Effective Date. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. Any Class of Claims that is not occupied as of the date of the Confirmation Hearing of the Plan by an Allowed Claim, or a Claim temporarily Allowed under Bankruptcy Rule 3018, and for which, on the Effective Date, there are no Disputed Claims in such Class pending, shall be deemed deleted from the Plan for all purposes.

     **B.**    **Summary of Classification.** The Plan includes the classification set forth and described in more detail below, which designates the Classes of Claims against, and Interests in, the Debtor and specifies those that are impaired or unimpaired by the Plan and entitled to vote to accept or reject the Plan in accordance with § 1126 or deemed to reject the Plan:

| <u>Class</u> | <u>Class</u> | <u>Impairment</u> | <u>Voting Rights</u> |
|---|---|---|---|

| Class 1 | Administrative Claims and Expenses | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 2 | Unsecured Priority Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | *Ad Valorem* Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 4 | Ally Bank | Impaired | Entitled to Vote |
| Class 5 | BMO Bank, N.A. | Impaired | Entitled to Vote |
| Class 6 | Caterpillar Financial Services Corp. | Impaired | Entitled to Vote |
| Class 7 | Citizens One Auto Finance | Impaired | Entitled to Vote |
| Class 8 | First-Citizens Bank & Trust Company | Impaired | Entitled to Vote |
| Class 9 | Heavy Equipment Leasing of NC | Impaired | Not Entitled to Vote Fed. R. Bankr. P. 3003 |
| Class 10 | Komatsu Financial Limited Partnership | Impaired | Not Entitled to Vote Fed. R. Bankr. P. 3003 |
| Class 11 | Mitsubishi HC Capital America, Inc. | Impaired | Entitled to Vote |
| Class 12 | PNC Equipment Finance, LLC | Impaired | Entitled to Vote |
| Class 13 | Truist Equipment Finance Corp. | Impaired | Entitled to Vote |
| Class 14 | Wells Fargo Dealer Services | Impaired | Entitled to Vote |
| Class 15 | Wells Fargo Bank, N.A. | Impaired | Entitled to Vote |
| Class 16 | Westfield Insurance Company | Impaired | Entitled to Vote |
| Class 17 | Executory Contracts and Unexpired Leases | Impaired | Entitled to Vote |
| Class 18 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 19 | Equity Security Holders | Impaired | Entitled to Vote |

 **C.** **Voting of Claims.** Each holder of an Allowed Claim in an Impaired Class of Claims impaired by the Plan shall be entitled to vote separately to accept or reject the Plan.

 **D.** **Acceptance by Impaired Classes.** Each Impaired Class that will or may receive or retain property or any interest in property under the Plan shall be entitled to vote to accept or reject the Plan. An Impaired Class shall have accepted the Plan if (i) the holders (other than any holder designated under § 1126(e)) of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the holders (other than any holder designated under §1126(e) of the Bankruptcy

Code) of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  An Impaired Class of Interests shall have accepted the Plan if the holders (other than any holder designated under § 1126(e) of the Bankruptcy Code) of at least two-thirds (2/3) in amount of the Allowed Interests actually voting in such Class have voted to accept the Plan.

**E.    Acceptance by Unimpaired Classes.**    Those Claims and Interests in Unimpaired Classes are conclusively deemed to have accepted the Plan pursuant to § 1126(f) and, therefore, are not entitled to vote to accept or reject the Plan.

**F.    Classification and Treatment of Classes.**  The Debtor classifies the following Classes of Claims, indicating whether said Class is Impaired or Unimpaired, and proposes the following treatment:

## CLASS 1 – ADMINISTRATIVE CLAIMS AND ADMINISTRATIVE EXPENSES:

(1)    <u>Description</u>.    Class 1 consists of Claims for any cost or expense of administration of the Bankruptcy Case pursuant to §§ 503, 506, and 507 of the Bankruptcy Code.  The following Administrative Claims will be paid subject to Court approval:

| Claimant | Description | Amount |
|---|---|---|
| Buckmiller, Boyette & Frost, PLLC | Counsel for Debtor | TBD |
| Windle \| Terry \| Bimbo Construction Law | Special Counsel for Debtor | TBD |
| Markham, Mitchell & Stroud, PLLC | Accountant for Debtor | TBD |

(2)    <u>Impairment</u>.  This Class shall be IMPAIRED.

(3)    <u>Treatment</u>. Administrative Claims, consisting of those costs and expenses approved by the Court by a Final Order pursuant to §§ 327, 330, 331, and 503 of the Code, shall be paid in cash and in full including accruals to date of payment within ten (10) days from the Effective Date of the Plan.  To the extent any portion of an Administrative Claim that is pending before the Court is not approved, as of the Effective Date, such Administrative Claim shall be paid in cash, in full, including accruals, upon entry of a Final Order allowing the same.

In the event that funds are not available to pay such Administrative Claims within ten (10) days of the Effective Date of the Plan or upon entry of an Order allowing the Administrative Claim, such Claims shall be paid according to any agreement between the

Debtor and the Administrative Claimant, upon such terms and conditions as the Debtor and the Administrative Claimant may determine, including but not limited to, securing said Administrative Claims by a lien upon adequate collateral and property and the execution of any instruments evidencing the same.  Such Administrative Claims remaining unpaid ten (10) days following the Effective Date, shall accrue interest at a rate of not less than LIBOR plus 1.00% per annum. Administrative Claims shall also receive any Net Proceeds of Sale, in accordance with the priorities of the Bankruptcy Code.

## CLASS 2 – *AD VALOREM* TAX CLAIMS:

(1)    Description.  Class 2 consists of Claims for taxes owed by the Debtor to any city, county, or other municipality or taxing entity entitled to tax the real property of the Debtor based upon the value of the property assessed.  The Debtor is aware of the following Claims in this Class:

| Claimant | Claim No. | Amount |
|---|---|---|
| Wayne County Tax Collector | 36 | 29,232.05 |

(2)    Impairment.  This Class shall be UNIMPAIRED.

(3)    Treatment.  The Debtor proposes to pay the Claims of the Wayne County Tax Collector,  that arise in this Class in five (5) annual payments over a period not to exceed five (5) years from the Petition Date, commencing on December 31, 2024, and continuing thereafter on December 31, 2025, December 31, 2026, December 31, 2027, and September 19, 2028, and include annual interest at the statutory rate.  In the event of any sales or liquidations of any property owned by the Debtor, the taxes associated with such property shall be paid from the Sales Proceeds, and the annual payment reduced accordingly.  *The annual payment to this Class shall be $1,796.96.*

## CLASS 3 –TAX CLAIMS:

(1)    Description.  Class 3 consists of those Unsecured Priority Tax Claims against the Debtor for income taxes, withholding taxes, unemployment taxes and/or any and all other taxes levied or entitled to be levied against the Debtor by the Internal Revenue Service or the North Carolina Department of Revenue plus interest as allowed by law. As of the date of this Plan, the Debtor is aware of the following Claims in this Class:

| Claimant | Claim No. | Amount |
|---|---|---|
| Internal Revenue Service | 38 | $2,018.02 |
| North Carolina Department of Revenue | | UNKNONWN |

(2) <u>Impairment</u>.  This Class shall be IMPAIRED.

(3) <u>Treatment</u>.  The Debtor proposes the following treatment, for the Claims in this Class:

A. *Administrative Expense Tax Claims.* Those Priority Tax Claims that are considered an Administrative Claim and/or Administrative Expense Claim, if any, shall be paid in Cash and in full including accruals to date of payment within thirty (30) days from the Effective Date. *The Debtor does not anticipate that any such Administrative Expense Tax Claims will be filed.*

B. *Unsecured Priority Tax Claims.* The Unsecured Priority Tax Claims, shall be paid, in full, through five (5) annual payments over a period not to exceed five (5) years from the Petition Date, commencing on December 31, 2024, and continuing thereafter on December 31, 2025, December 31, 2026, December 31, 2027, and September 19, 2028, and include annual interest at the statutory rate.

C. *Secured Tax Claims.* To the extent filed, any Secured Tax Claims shall retain their secured interest in the property of the Debtor. The taxing authority shall retain its lien and secured status as to the underlying secured tax liability, plus accruing interest at the statutory rate from the Effective Date. *The Debtor does not anticipate that any such Secured  Tax Claims will be filed.*

D. *General Unsecured Tax Claims.*  To the extent filed, the Debtor proposes to treat any General Unsecured Tax Claims as General Unsecured Claims in Class 18 below.

E. *Payments to North Carolina Department of Revenue ("NCDOR").*  In the event that the Debtor fails to timely make a required payment as to any Claim of the NCDOR, then, subject to a ten (10) day right to cure following written notice of default from the NCDOR, the NCDOR shall be permitted to exercise any and all of its collection remedies under non-bankruptcy law as to any and all of its claims without further order of the Court. The rights of the NCDOR to setoff under § 553 of the Bankruptcy Code shall not be altered by the Plan or the confirmation order entered in this matter and are expressly reserved. The claim of the NCDOR is subject to adjustment on account of federal corrections, as required by N.C. Gen. Stat. § 105-130.20 (for corporations, limited liability companies and other entities) and N.C. Gen. Stat. § 105-159 (for individuals). Notwithstanding any other provisions of the Plan and the confirmation order, the NCDOR shall retain any and all statutory tax liens that may have arisen by operation of statute prior to the Petition Date, except to the extent that the treatment for Secured Tax Claims expressly states that such tax lien will not be treated as secured or fully secured in the treatment.

Absent such express language in the treatment for this Class, any such Lien may be ruled unenforceable by the Court only upon the filing of a separate pleading and after notice and a hearing.

F. *Penalties.* Any Claim or demand for a penalty relating to any Priority Tax Claim—other than a penalty of the type specified in § 507(a)(8)(G) of the Bankruptcy Code—shall be Disallowed, and the Holder of a Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtor, the Estate, or the Debtor's assets and property.

## CLASS 4 – ALLY BANK:

(1) <u>Description</u>. The Claims of ALLY BANK, comprising this Class, are described as follows:

A. <u>Ally Contract 1 (Account No. 4886)</u>. Prior to the Petition Date, the Debtor executed a Retail Installment Sale Contract in connection with the purchase of a 2020 Ford F-250 Super Duty Crew Cab XLT VIN:1FT7W2BN3LED29476 (the "Ally Vehicle 1"), which was financed by, and subsequently assigned to, Ally (collectively, "Ally Contract 1"). Pursuant to the terms of Ally Contract 1, the Debtor was required to remit sixty (60) monthly installment payments of $1,014.51, consisting of principal and interest at a rate equal to 5.29% per annum, commencing on May 30, 2020, and continuing thereafter until paid in full. As security for repayment of the amount set forth in Ally Contract 1, Ally retained a security interest, lien, and encumbrance upon the Ally Vehicle 1, which was noted on the Certificate of Title maintained by the North Carolina Department of Motor Vehicles.

Ally filed a proof of claim, Claim No. 16, in the Bankruptcy Case, claiming and asserting that the outstanding balance of Ally Contract 1 was $25,469.54 as of the Petition Date.

B. <u>Ally Contract 2 (Account No. 4882)</u>. Prior to the Petition Date, the Debtor executed a Retail Installment Sale Contract in connection with the purchase of a 2020 Chevrolet Silverado 1500 Crew Cab LT 4WD (VIN 3GCUYDED1LG265278) (the "Ally Vehicle 2"), which was financed by, and subsequently assigned to, Ally (collectively, "Ally Contract 2"). Pursuant to the terms of Ally Contract 2, the Debtor was required to remit sixty (60) monthly installment payments of $806.75, consisting of principal and interest at a rate equal to 5.29% per annum, commencing on May 30, 2020, and continuing thereafter until paid in full. As security

for repayment of the amount set forth in Ally Contract 2 Ally retained a security interest, lien, and encumbrance upon the Ally Vehicle 2, which was noted on the Certificate of Title maintained by the North Carolina Department of Motor Vehicles.

Ally filed a proof of claim, Claim No. 17, in the Bankruptcy Case, claiming and asserting that the outstanding balance of Ally Contract 2 was $20,289.44 as of the Petition Date.

C. <u>Ally Contract 3 (Account No. 5002)</u>.  Prior to the Petition Date, the Debtor executed a Retail Installment Sale Contract in connection with the purchase of a 2020 Dodge RAM 3500 (VIN 3C7WRTCLXLG145198) (the "Ally Vehicle 3"), which was financed by, and subsequently assigned to, Ally (collectively, "Ally Contract 3").  Pursuant to the terms of Ally Contract 3 the Debtor was required to remit sixty (60) monthly installment payments of $1,225.80, consisting of principal and interest at a rate equal to 5.65% per annum, commencing on June 19, 2020, and continuing thereafter until paid in full.  As security for repayment of the amount set forth in Ally Contract 3, Ally retained a security interest, lien, and encumbrance upon Ally Vehicle 3, which was noted on the Certificate of Title maintained by the North Carolina Department of Motor Vehicles.

Ally filed a proof of claim, Claim No. 18, in the Bankruptcy Case, claiming and asserting that the outstanding balance of Contract 3 was $31,879.95 as of the Petition Date.

(2)　　<u>Impairment</u>. This Class shall be IMPAIRED.

(3)　　<u>Treatment</u>. The Claims of Ally, as outlined above, shall be treated as follows:

A. <u>Ally Contract 1 (Account No. 4886)</u>. The Claim of Ally, arising from Ally Contract 1, shall be treated as a Secured Claim in an amount equal to: (a) The outstanding balance of Ally Contract 1 as of the Petition Date, plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest; plus (c) costs, expenses, and attorneys' fees approved by the Court pursuant to § 506(b) of the Bankruptcy Code; less (d) all post-petition payments made by the Debtor (the "Ally Contract 1 Secured Claim").  Ally shall retain all its lien on the Ally Vehicle 1 with the priority thereof as existed on the Petition Date, except as specifically set forth herein, pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the Ally Contract 1 Secured Claim is paid in full.

The Ally Contract 1 Secured Claim shall be amortized over a period not to exceed sixty (60) months (or five (5) years) from the Effective Date, with interest at a rate equal to seven-percent (7.00%) per annum, and payable in monthly installments of principal and interest commencing on the fifteenth (15th) day of first (1st) full month following the Effective Date, and continuing monthly thereafter. *The monthly installment payment amount, applicable for the Ally Contract 1 Secured Claim, shall be $504.33.*

All prepayment penalties set forth in the Contract shall be eliminated and, throughout the period of repayment of the Ally Contract 1 Secured Claim, the following shall be events of default: (i) Failure to make any payment within fifteen (15) days of the due date; (ii) Failure to maintain the Ally Vehicle 1 normal wear and tear excepted; (iii) Failure to pay all property taxes for the Ally Vehicle 1 when due, except for property taxes paid pursuant to this Plan; or (iv) Failure to maintain insurance on the Ally Vehicle 1 with Ally named as the loss payee.  Upon an event of default, Ally shall be entitled to foreclose on its interest in the Ally Vehicle 1 after providing the Debtor and its counsel at Buckmiller, Boyette & Frost, PLLC, with notice of default and thirty (30) days to cure such default without the need for further approval of the Bankruptcy Court.

B.  <u>Ally Contract 2 (Account No. 4882).</u>  The Claim of Ally, arising from Ally Contract 2, shall be treated as a Secured Claim in an amount equal to: (a) The outstanding balance of Ally Contract 2 as of the Petition Date, plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest; plus (c) costs, expenses, and attorneys' fees approved by the Court pursuant to § 506(b) of the Bankruptcy Code; less (d) all post-petition payments made by the Debtor (the "Ally Contract 2 Secured Claim").  Ally shall retain all its lien on the Ally Vehicle 2 with the priority thereof as existed on the Petition Date, except as specifically set forth herein, pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the Ally Contract 2 Secured Claim is paid in full.

The Ally Contract 2 Secured Claim shall be amortized over a period not to exceed sixty (60) months (or five (5) years) from the Effective Date, with interest at a rate equal to seven-percent (7.00%) per annum, and payable in monthly installments of principal and interest commencing on the fifteenth (15th) day of first (1st) full month following the Effective Date, and continuing monthly thereafter. *The monthly installment*

*payment amount, applicable for the Ally Contract 2 Secured Claim, shall be $401.76.*

All prepayment penalties set forth in Ally Contract 2 shall be eliminated and, throughout the period of repayment of the Ally Contract 2 Secured Claim, the following shall be events of default: (i) Failure to make any payment within fifteen (15) days of the due date; (ii) Failure to maintain the Ally Vehicle 2 normal wear and tear excepted; (iii) Failure to pay all property taxes for the Ally Vehicle 2 when due, except for property taxes paid pursuant to this Plan; or (iv) Failure to maintain insurance on the Ally Vehicle 2 with Ally named as the loss payee.  Upon an event of default, Ally shall be entitled to foreclose on its interest in the Ally Vehicle 2 after providing the Debtor and its counsel at Buckmiller, Boyette & Frost, PLLC, with notice of default and thirty (30) days to cure such default without the need for further approval of the Bankruptcy Court.

C.  <u>Ally Contract 3 (Account No. 5002).</u>  The Claim of Ally, arising from Ally Contract 3, shall be treated as a Secured Claim in an amount equal to the following: (a) The outstanding balance of Ally Contract 3 as of the Petition Date, plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest; plus (c) costs, expenses, and attorneys' fees approved by the Court pursuant to § 506(b) of the Bankruptcy Code; less (d) all post-petition payments made by the Debtor (the "Ally Contract 3 Secured Claim").  Ally shall retain all its lien on the Ally Vehicle 3 with the priority thereof as existed on the Petition Date, except as specifically set forth herein, pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the Ally Contract 3 Secured Claim is paid in full.

The Ally Contract 3 Secured Claim shall be amortized over a period not to exceed sixty (60) months (or five (5) years) from the Effective Date, with interest at a rate equal to seven-percent (7.00%) per annum, and payable in monthly installments of principal and interest commencing on the fifteenth (15th) day of first (1st) full month following the Effective Date, and continuing monthly thereafter. *The monthly installment payment amount, applicable for the Ally Contract 3 Secured Claim, shall be $631.26.*

All prepayment penalties set forth in Ally Contract 3 shall be eliminated and, throughout the period of repayment of the Ally Contract 3 Secured Claim, the following shall be events of default: (i) Failure to make any

payment within fifteen (15) days of the due date; (ii) Failure to maintain the Ally Vehicle 3 normal wear and tear excepted; (iii) Failure to pay all property taxes for the Ally Vehicle 3 when due, except for property taxes paid pursuant to this Plan; or (iv) Failure to maintain insurance on the Ally Vehicle 3 with Ally named as the loss payee.  Upon an event of default, Ally shall be entitled to foreclose on its interest in the Ally Vehicle 3 after providing the Debtor and its counsel at Buckmiller, Boyette & Frost, PLLC, with notice of default and thirty (30) days to cure such default without the need for further approval of the Bankruptcy Court.

## CLASS 5 – BMO BANK, N.A.

(1)    <u>Description</u>. The Claims of BMO BANK, N.A. ("BMO"), comprising this Class, are described as follows:

A.    <u>EFA 4002.</u>  The Debtor executed an Equipment Finance Agreement dated March 5, 2020, in favor of BANK OF THE WEST, predecessor-in-interest to BMO, in the original principal amount of $64,100.00, together with interest accruing thereon at a rate equal to 1.99% per annum ("EFA 4002"), in connection with the purchase of a Hyundai HR120C-9 Roller S/N 1E120271 (the "EFA 4002 Collateral"). EFA 4002 was payable in sixty (60) monthly installments of $1,123.25, commencing on April 15, 2020, and continuing monthly thereafter until paid in full.  As security for repayment of EFA 4002, BMO obtained a security interest in the EFA 4002 Collateral, which was perfected through the filing of a UCC Financing Statement with the North Carolina Secretary of State (the "EFA 4002 Financing Statement"). BMO, in the Bankruptcy Case, filed a proof of claim, Claim No. 46,  asserting and claiming that the outstanding balance of EFA 4002 was $29,396.40 (the "BMO EFA 4002 POC").

B.    <u>EFA 4003</u>. The Debtor executed an Equipment Finance Agreement dated March 11, 2020, in favor of BANK OF THE WEST, predecessor-in-interest to BMO, in the original principal amount of $62,300.00, together with interest accruing thereon at a rate equal to 1.90% per annum ("EFA 4003"), in connection with the purchase of two (2) Bomag BMP8500 Trench Rollers, Serial Nos. 101720133731 and 101720133633 (the "EFA 4003 Collateral").  EFA 4003 was payable in forty-eight (48) monthly installments of $1,348.89. As security for repayment of EFA 4003, BMO obtained a security interest in the EFA 4003 Collateral, which was perfected through the filing of a UCC Financing Statement with the North

Carolina Secretary of State (the "EFA 4003 Financing Statement"). BMO, in the Bankruptcy Case, filed a proof of claim, Claim No. 47, asserting and claiming that the outstanding balance of EFA 4003 was $16,996.02 (the "BMO EFA 4003 POC").

C.   **EFA 3001.** The Debtor executed an Equipment Finance Agreement dated February 18, 2021, in favor of BANK OF THE WEST, predecessor-in-interest to BMO, in the original principal amount of $130,270.13, together with interest accruing thereon at a rate equal to 3.99% per annum ("EFA 3001"), in connection with the purchase of two (2) Kubota L4760 47HP Hydrostatic Drive Tractors with Attachments, Serial Nos. 42700 and 42770 (the "EFA 3001 Collateral"). EFA 3001 was payable in forty-eight (48) monthly installments of $2,940.79. As security for repayment of EFA 3001, BMO obtained a security interest in the EFA 3001 Collateral, which was perfected through the filing of a UCC Financing Statement with the North Carolina Secretary of State (the "EFA 3001 Financing Statement"). BMO, in the Bankruptcy Case, filed a proof of claim, Claim No. 48, asserting and claiming that the outstanding balance of EFA 3001 was $71,409.51 (the "BMO EFA 3001 POC").

D.   **EFA 3002.** The Debtor executed an Equipment Finance Agreement dated May 14, 2021, in favor of BANK OF THE WEST, predecessor-in-interest to BMO, in the original principal amount of $53,675.00, together with interest accruing thereon at a rate equal to 4.75% per annum ("EFA 3002"), in connection with the purchase of a John Deere 317G Loader, Serial No. 1T0317GJTKJ352781 (the "EFA 3002 Collateral"). EFA 3002 was payable in forty-eight (48) monthly installments of $1,230.03. As security for repayment of EFA 3002, BMO obtained a security interest in the EFA 3002 Collateral, which was perfected through the filing of a UCC Financing Statement with the North Carolina Secretary of State (the "EFA 3002 Financing Statement"). BMO, in the Bankruptcy Case, filed a proof of claim, Claim No. 49, asserting and claiming that the outstanding balance of EFA 3002 was $33,549.09 (the "BMO EFA 3002 POC").

E.   **EFA 3003.** The Debtor executed an Equipment Finance Agreement dated May 14, 2021, in favor of BANK OF THE WEST, predecessor-in-interest to BMO, in the original principal amount of $171,100.00, together with interest accruing thereon at a rate equal to 4.75% per annum ("EFA 3003"), in connection with the purchase of a John Deere 670GP Grader, Serial No. 1DW670GPKGF673913 (the "EFA 3003 Collateral"). EFA 3003 was payable in forty-eight (48) monthly installments of $3,920.96.

As security for repayment of EFA 3002, BMO obtained a security interest in the EFA 3003 Collateral, which was perfected through the filing of a UCC Financing Statement with the North Carolina Secretary of State (the "EFA 3003 Financing Statement"). BMO, in the Bankruptcy Case, filed a proof of claim, Claim No. 50   asserting and claiming that the outstanding balance of EFA 3003 was $106,290.39 (the "BMO EFA 3003 POC").

(2)    <u>Impairment</u>. This Class shall be IMPAIRED.

(3)    <u>Treatment</u>. The Claims of BMO, as described herein, shall be treated as follows:

A.    <u>EFA 4002.</u> The BMO EFA 4002 POC shall be treated as a Secured Claim in an amount equal to the following: (a) The amount of the BMO EFA 4002 POC, plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest; plus (c) costs, expenses, and attorneys' fees approved by the Court pursuant to § 506(b) of the Bankruptcy Code; less (d) all post-petition payments made by the Debtor (the "BMO EFA 4002 Secured Claim"). BMO shall retain all its lien on the EFA 4002 Collateral with the priority thereof as existed on the Petition Date, except as specifically set forth herein, pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the BMO EFA 4002 Secured Claim is paid in full.

The BMO EFA 4002 Secured Claim shall be amortized over a period of sixty (60) months, with interest accruing at the contractual rate of 1.991% per annum, and payable in monthly installments of principal and interest commencing on the fifteenth (15th) of the first (1st) full month following the Effective Date, and continuing on the fifteenth (15th) day of each month thereafter until paid in full. *The monthly installment payment to this Class, on account of the BMO EFA 4002 Secured Claim, shall be $515.14.*

B.    <u>EFA 4003.</u> The BMO EFA 4003 POC shall be treated as a Secured Claim in an amount equal to the following: (a) The amount of the BMO EFA 4003 POC, plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest; plus (c) costs, expenses, and attorneys' fees approved by the Court pursuant to § 506(b) of the Bankruptcy Code; less (d) all post-petition payments made by the Debtor (the "BMO EFA 4003 Secured Claim"). BMO shall retain all its lien on the EFA 4003 Collateral with the priority thereof as existed on the

Petition Date, except as specifically set forth herein, pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the BMO EFA 4003 Secured Claim is paid in full.

The BMO EFA 4003 Secured Claim shall be amortized over a period of sixty (60) months, with interest accruing at the contractual rate of 1.90% per annum, and payable in monthly installments of principal and interest commencing on the fifteenth (15th) of the first (1st) full month following the Effective Date, and continuing on the fifteenth (15th) day of each month thereafter until paid in full. *The monthly installment payment to this Class, on account of the BMO EFA 4003 Secured Claim shall be $297.16.*

C. <u>EFA 3001.</u> The BMO EFA 3001 POC shall be treated as a Secured Claim in an amount equal to $36,000.00, representing the fair market value of the EFA 3001 Collateral as of the Petition Date, plus interest accrued through the Effective Date at the contractual non-default rate of interest (the "BMO EFA 3001 Secured Claim"), with the remaining balance of the BMO EFA 3001 POC, estimated to be at least $35,409.51, being treated as a Deficiency Claim and entitled to treatment as a General Unsecured Claim in Class 18 below (the "BMO EFA 3001 Unsecured Claim" or the "BMO EFA 3001 Deficiency Claim"). BMO shall retain all its lien on the EFA 3001 Collateral with the priority thereof as existed on the Petition Date, except as specifically set forth herein, pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the BMO EFA 3001 Secured Claim is paid in full.

The BMO EFA 3001 Secured Claim shall be amortized over a period of sixty (60) months, with interest accruing at the contractual rate of 3.99% per annum, and payable in monthly installments of principal and interest commencing on the fifteenth (15th) of the first (1st) full month following the Effective Date, and continuing on the fifteenth (15th) day of each month thereafter until paid in full. *The monthly installment payment to this Class, on account of the BMO EFA 3001 Secured Claim, shall be $662.83.*

D. <u>EFA 3002.</u> The BMO EFA 3002 POC shall be treated as a Secured Claim in an amount equal to $28,000.00, representing the fair market value of the EFA 3002 Collateral as of the Effective Date, plus interest accrued through the Effective Date at the contractual non-default rate of interest (the "BMO EFA 3002 Secured Claim"), with the remaining balance of the BMO EFA 3002 POC, estimated to be at least $, being treated as a

Deficiency Claim and entitled to treatment as a General Unsecured Claim in Class 18 below (the "BMO EFA 3002 Unsecured Claim" or the "BMO EFA 3002 Deficiency Claim"). BMO shall retain all its lien on the EFA 3002 Collateral with the priority thereof as existed on the Petition Date, except as specifically set forth herein, pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the BMO EFA 3002 Secured Claim is paid in full.

The BMO EFA 3002 Secured Claim shall be amortized over a period of sixty (60) months, with interest accruing at the contractual rate of 4.75% per annum, and payable in monthly installments of principal and interest commencing on the fifteenth (15th) of the first (1st) full month following the Effective Date, and continuing on the fifteenth (15th) day of each month thereafter until paid in full. *The monthly installment payment to this Class, on account of the BMO EFA 3002 Secured Claim, shall be $525.19.*

E. <u>EFA 3003.</u> The BMO EFA 3003 POC, and arising from EFA 3003, shall be treated as a General Unsecured Claim in Class 18, as there is no value in the EFA 3003 Collateral to support treatment as a Secured Claim under § 506(a) of the Bankruptcy Code.

F. <u>Termination of Covenants, Warranties, and Provisions of EFA 4002, EFA 4003, EFA 3001, EFA 3002, and EFA 3003.</u> All covenants, warranties, provisions, and prepayment penalties set forth in EFA 4002, EFA 4003, EFA 3001, EFA 3002, and EFA 3003, shall be eliminated and shall no longer have any force or effect after the Effective Date.

G. <u>Default Provisions.</u> Throughout the period of repayment of the BMO EFA 4002 Secured Claim, the BMO EFA 4003 Secured Claim, the BMO EFA 3001 Secured Claim, and the BMO EFA 3002 Secured Claim, the following shall be events of default: (i) Failure to make any payment within thirty (30) days of the due date; (ii) Failure to maintain the Collateral, normal wear and tear excepted; (iii) Failure to pay all property taxes for the EFA 4003 Collateral, the EFA 4002 Collateral, the EFA 3001 Collateral, and the EFA 3002 Collateral when due, except for *ad valorem* property taxes paid pursuant to this Plan; or (iv) Failure to maintain adequate insurance on the the EFA 4003 Collateral, the EFA 4002 Collateral, the EFA 3001 Collateral, and the EFA 3002 Collateral with BMO named as the loss payee. Upon an event of default, BMO shall be entitled to foreclose on its interest in the EFA 4003 Collateral, the EFA 4002 Collateral, the EFA 3001 Collateral, and the EFA 3002 Collateral

after providing the Debtor and its counsel at Buckmiller, Boyette & Frost, PLLC, with notice of default and thirty (30) days to cure such default without the need for further approval of the Bankruptcy Court.

## CLASS 6 – CATERPILLAR FINANCIAL SERVICES CORP.

(1)      Description.  The Claims of BMO BANK, N.A. ("BMO"), comprising this Class, are described as follows:

A.   Contract 1016.  On January 31, 2019, the Debtor executed an Installment Sale Contract ("Contract 1016"), in favor of GREGORY POOLE EQUIPMET COMPANY ("Gregory Poole") in connection with the purchase of a Caterpillar D5K2LGP Track Type Tractor, Serial No. KY207356 (the "Contract 1016 Collateral").   Contract 1016 was subsequently assigned by Gregory Poole to Caterpillar pursuant the Assignment of Installment Sale Contract (Without Recourse) on or about February 1, 2019.   The terms of Contract 1016 are summarized as follows:

| Amount Financed | $171,136.50 |
|---|---|
| Interest Rate: | 0.00% |
| Payment Terms | |
| Number of Payments | 60 |
| Payment Frequency | Monthly |
| Payment Amount | $2,852.28 |

To secure performance of the terms and provisions of Contract 1016, Caterpillar filed a UCC Financing Statement with the North Carolina Secretary of State, perfecting its security interest in the Contract 1016 Collateral. Prior to the Petition Date, Caterpillar repossessed and sold the Contract 1016 Collateral pursuant to Article 9 of the Uniform Commercial Code, which generated the sum of $35,148.52 in excess proceeds after payment of the outstanding balance owed under Contract 1016 (the "Contract 1016 Excess Proceeds").  As of the Petition Date, and on account of the repossession and sale of the Contract 1016 Collateral, no amounts are due and owing by the Debtor under Contract 1016.

B.   Contract 0510.  On December 7, 2020, the Debtor and Caterpillar entered into a Tax Lease ("Contract 0510"), in connection with the acquisition of a Used 2016 Caterpillar 336FL Large Hydraulic Excavator, Serial No. SSN 00260 (the "Contract 0510 Collateral").  The terms of Contract 0510

are summarized as follows:

| | |
|---|---|
| Total Amount: | $234,914.00 |
| Interest Rate: | 0.00% |
| Payment Terms | |
| Number of Payments: | 36 |
| Payment Frequency: | Monthly |
| Payment Amount: | $3,885.25 |
| Purchase Option Amount: | $101,535.00 |

To secure performance of the terms and provisions of Contract 0510, Caterpillar filed a UCC Financing Statement with the North Carolina Secretary of State on December 9, 2020, File No. 20200179398B (the "Contract 0510 Financing Statement"), perfecting its security interest in the Contract 0510 Collateral. Prior to the Petition Date, Caterpillar repossessed and sold the Contract 0510 Collateral pursuant to Article 9 of the Uniform Commercial Code, which failed to generate sufficient proceeds to pay, in full, the outstanding balance owed under Contract 0510, resulting in a deficiency in the amount of $58,319.52 (the "Contract 0510 Deficiency"). Caterpillar, in the Bankruptcy Case, filed a proof of claim, Claim No. 65, asserting that the outstanding balance due and owing under Contract 0510 was $58,319.52, as of the Petition Date.

C. __Contract 0502.__ On November 6, 2020, the Debtor and Caterpillar entered into a Tax Lease ("Contract 0502"), in connection with the acquisition of a Used 2016 Caterpillar 336FL Large Hydraulic Excavator, Serial No. RKB01928 (the "Contract 0502 Collateral"). The terms of Contract 0502 are summarized as follows:

| | |
|---|---|
| Total Amount: | $223,788.00 |
| Interest Rate: | 0.00% |
| Payment Terms | |
| Number of Payments: | 36 |
| Payment Frequency: | Monthly |
| Payment Amount: | $3,668.67 |
| Purchase Option Amount: | $98,070.00 |

To secure performance of the terms and provisions of Contract 0502, Caterpillar filed a UCC Financing Statement with the North Carolina Secretary of State on November 12, 2020, File No. 20200168943G (the "Contract 0502 Financing Statement"), perfecting its security interest in

the Contract 0502 Collateral. Prior to the Petition Date, Caterpillar repossessed the Contract 0502 Collateral and, since the Petition Date, has remained in exclusive possession of the Contract 0502 Collateral. Caterpillar, in the Bankruptcy Case, filed a proof of claim, Claim No. 64, asserting that the outstanding balance due and owing under Contract 0510 was $168,820.52, as of the Petition Date.

D. <u>Contract 0480.</u> On September 14, 2021, the Debtor executed an Installment Sale Contract ("Contract 0480"), in favor of Gregory Poole in connection with the purchase of a Used 2018 Caterpillar D5K2LGP Track Type Tractor, Serial No. EL700485 (the "Contract 0480 Collateral"). Contract 0480 was subsequently assigned by Gregory Poole to Caterpillar pursuant the Assignment of Installment Sale Contract (Without Recourse) on or about September 16, 2021. The terms of Contract 0480 are summarized as follows:

| Amount Financed | $182,247.72 |
|---|---|
| Interest Rate: | 3.99% |
| Payment Terms | |
| Number of Payments | 48 |
| Payment Frequency | Monthly |
| Payment Amount | $4,114.17 |

To secure performance of the terms and provisions of Contract 0480, Caterpillar filed a UCC Financing Statement with the North Carolina Secretary of State on September 16, 2021, File No. 20210126023M (the "Contract 0480 Financing Statement"), perfecting its security interest in the Contract 0480 Collateral. Prior to the Petition Date, Caterpillar repossessed the Contract 0480 Collateral and, since the Petition Date, has remained in exclusive possession of the Contract 0480 Collateral. Caterpillar, in the Bankruptcy Case, filed a proof of claim, Claim No. 64, asserting that the outstanding balance due and owing under Contract 0480 was $115,886.99, as of the Petition Date.

E. <u>Contract 0514.</u> On December 7, 2020, the Debtor and Caterpillar entered into a Tax Lease ("Contract 0514"), in connection with the acquisition of a Used 2016 Caterpillar 336FL Large Hydraulic Excavator, Serial No. SSN00275 (the "Contract 0514 Collateral"). The terms of Contract 0514 are summarized as follows:

| Total Amount: | $234,015.00 |
|---|---|
| Interest Rate: | 0.00% |

| Payment Terms | |
|---|---|
| Number of Payments: | 36 |
| Payment Frequency: | Monthly |
| Payment Amount: | $3,860.82 |
| Purchase Option Amount: | $101,535.00 |

To secure performance of the terms and provisions of Contract 0514, Caterpillar filed a UCC Financing Statement with the North Carolina Secretary of State on December 10, 2020, File No. 20200179876C (the "Contract 0514 Financing Statement"), perfecting its security interest in the Contract 0514 Collateral. Prior to the Petition Date, Caterpillar repossessed the Contract 0514 and, since the Petition Date, has remained in exclusive possession of the Contract 0514Collateral. Caterpillar, in the Bankruptcy Case, filed a proof of claim, Claim No. 64, asserting that the outstanding balance due and owing under Contract 0514 was $147,561.72, as of the Petition Date.

F.   Contract 0518.   On November 6, 2020, the Debtor and Caterpillar entered into a Tax Lease ("Contract 0518"), in connection with the acquisition of a Used 2016 Caterpillar 336FL Large Hydraulic Excavator, Serial No. SSN00310 (the "Contract 0518 Collateral"). The terms of Contract 0518 are summarized as follows:

| Total Amount: | $223,788.00 |
|---|---|
| Interest Rate: | 0.00% |
| Payment Terms | |
| Number of Payments: | 36 |
| Payment Frequency: | Monthly |
| Payment Amount: | $3,582.88 |
| Purchase Option Amount: | $101,535.00 |

To secure performance of the terms and provisions of Contract 0518, Caterpillar filed a UCC Financing Statement with the North Carolina Secretary of State on November 12 2020, File No. 20200168944H (the "Contract 0518 Financing Statement"), perfecting its security interest in the Contract 0518 Collateral. Caterpillar, in the Bankruptcy Case, filed a proof of claim, Claim No. 64, asserting that the outstanding balance due and owing under Contract 0518 was $132,923.70, as of the Petition Date.

(2)   Impairment.   This Class shall be IMPAIRED.

(3)    Treatment.  The Claims of Caterpillar, as described herein, shall be treated as follows:

A. Recharacterization and Consolidation of Contract 0502, Contract 0510, Contract 0480, Contract 0514, and Contract 0518.

    i. The transactions, evidenced by Contract 0502, Contract 0510, Contract 0480, Contract 0514, and Contract 0518, shall be recharacterized and treated as financing arrangements and/or secured transactions with the Debtor, as opposed to "leases" based upon application of those factors articulated in § 1-203 of the Uniform Commercial Code, with each transaction creating a separate security interests in the 0502 Contract Collateral, the Contract 0510 Collateral, the Contract 0514 Collateral, and the Contract 0518 Collateral.

    ii. The Claims of Caterpillar, evidenced by Caterpillar POC 64 and Caterpillar POC 65, and arising from Contract 0502, Contract 0510, Contract 0480, Contract 0514, and Contract 0518, shall be consolidated into a single obligation, which shall be treated as Secured Claim in an amount equal to $382,048.52 as of the Effective Date (the "Caterpillar Secured Claim"), representing the following fair market values of the Contract 1016 Excess Proceeds, the Contract 0502 Collateral, the Contract 0480 Collateral, the Contract 0514 Collateral, and the Contract 0518 Collateral:

| Contract No. | Collateral | Fair Market Value |
|---|---|---|
| 1016 | Contract 1016 Excess Proceeds | $35,148.52 |
| 0502 | 2016 Caterpillar 336FL Large Hydraulic Excavator (SN: RKB01928) | $83,900.00 |
| 0480 | 2018 Caterpillar D6K2LGP Track Type Loader (SN: EL700485) | $98,300.00 |
| 0514 | 2016 Caterpillar 336FL Large Hydraulic Excavator (SN: SSN00275) | $83,900.00 |
| 0518 | 2016 Caterpillar 336FL Large Hydraulic Excavator (SN: SSN00310) | $80,800.00 |

Caterpillar shall retain all its lien on the Contract 0502 Collateral, the Contract 0480 Collateral, the Contract 0514 Collateral, and the Contract 0518 Collateral, with the priority thereof as existed on the Petition Date, except as specifically set forth herein, pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the Caterpillar Secured Claim is paid in full on the Effective Date.

The remaining balance of the Caterpillar POC 64 and the Caterpillar POC 65, which is not included in the Caterpillar Secured Claim, and totaling approximately $241,463.93, shall be treated as a General Unsecured Claim in Class 18 below (the "Caterpillar Unsecured Claim" or the "Caterpillar Deficiency Claim").

B. <u>Amortization and Payment of Caterpillar Secured Claim.</u> The Caterpillar Secured Claim, after application of the Contract 1016 Excess Proceeds of $35,148.52 on the Effective Date, shall be amortized over a period of sixty (60) months, with interest accruing at a rate equal to seven-percent (7.00%) per annum, and payable in monthly installments of principal and interest commencing on the fifteenth (15th) of the first (1st) full month following the Effective Date, and continuing on the fifteenth (15th) day of each month thereafter, with a final payment of the outstanding principal balance and accrued interest due on the fifth (5th) anniversary of the Effective Date, as defined in the Order Confirming Plan of Reorganization. *The monthly installment payment to this Class, on account of the Caterpillar Secured Claim, shall be $6,869.04.*

C. <u>Termination of Prepetition Contractual Covenants, Warranties, and Provisions.</u> All covenants, warranties, provisions, and prepayment penalties set forth in Contract 0502, Contract 0480, Contract 0514, and Contract 0518, shall be eliminated and shall no longer have any force or effect after the Effective Date.

D. Default Provisions. Throughout the period of repayment of the BMO EFA 4002 Secured Claim, the BMO EFA 4003 Secured Claim, the BMO EFA 3001 Secured Claim, and the BMO EFA 3002 Secured Claim, the following shall be events of default: (i) Failure to make any payment within thirty (30) days of the due date; (ii) Failure to maintain the Collateral, normal wear and tear excepted; (iii) Failure to pay all property taxes for the EFA 4003 Collateral, the EFA 4002 Collateral, the EFA 3001 Collateral, and the EFA 3002 Collateral when due, except for ad valorem property taxes paid pursuant to this Plan; or (iv) Failure to

maintain adequate insurance on the EFA 4003 Collateral, the EFA 4002 Collateral, the EFA 3001 Collateral, and the EFA 3002 Collateral with BMO named as the loss payee. Upon an event of default, BMO shall be entitled to foreclose on its interest in the EFA 4003 Collateral, the EFA 4002 Collateral, the EFA 3001 Collateral, and the EFA 3002 Collateral after providing the Debtor and its counsel at Buckmiller, Boyette & Frost, PLLC, with notice of default and thirty (30) days to cure such default without the need for further approval of the Bankruptcy Court.

## **CLASS 7 – CITIZENS ONE AUTO FINANCE**

(1)    Description.  The Claims of CITIZENS ONE AUTO FINANCE arises from financing provided to the Debtor in connection with its purchase of the purchase, acquisition, and financing of a 2018 Chevrolet Silverado, VIN No. 3GCPCREC4JG177127 ("Vehicle"), repayment of which was secured by a security interest, lien, and encumbrance in favor of Citizens One that was noted on the Certificate of Tile issued by the North Carolina Department of Motor Vehicles (the "Citizens One Auto Loan").   The Debtor scheduled, and is informed and believes that the outstanding balance owed to Citizens One, on account of the Citizens One Auto Loan, is $6,520.76.

(2)    Impairment.  This Class shall be IMPAIRED.

(3)    Treatment.  The Claim of Citizens One, arising from Citizens One Auto Loan, shall be treated as a Secured Claim in an amount equal to: (a) The outstanding balance of Ally Contract 1 as of the Petition Date in the amount of not more than $6,520.76; less (b) all post-petition payments made by the Debtor (the "Ally Contract 1 Secured Claim").  Citizens One shall retain all its lien on the Vehicle with the priority thereof as existed on the Petition Date, except as specifically set forth herein, pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the Citizens One Secured Claim is paid in full.

The Citizens One Secured Claim shall be amortized over a period not to exceed sixty (60) months (or five (5) years) from the Effective Date, with interest at a rate equal to five-percent (5.00%) per annum, and payable in monthly installments of principal and interest commencing on the fifteenth (15th) day of first (1st) full month following the Effective Date, and continuing monthly thereafter.  *The monthly installment payment amount, applicable for the Citizens One Secured Claim, shall be $504.33.*

All prepayment penalties set forth in any contract or documents comprising the Citizen One Auto Loan shall be eliminated and, throughout the period of repayment of the Citizens One Secured Claim, the following shall be events of default: (i) Failure to make any payment within fifteen (15) days of the due date; (ii) Failure to maintain the Vehicle normal

wear and tear excepted; (iii) Failure to pay all property taxes for the Vehicle when due, except for property taxes paid pursuant to this Plan; or (iv) Failure to maintain insurance on the Vehicle with Citizens One named as the loss payee.  Upon an event of default, Citizens One shall be entitled to foreclose on its interest in the Vehicle after providing the Debtor and their counsel at Buckmiller, Boyette & Frost, PLLC, with notice of default and thirty (30) days to cure such default without the need for further approval of the Bankruptcy Court.

## CLASS 8 – FIRST-CITIZENS BANK & TRUST COMPANY

(1)    <u>Description.</u>    The Claim of FIRST-CITIZENS BANK & TRUST COMPANY arises from the following prepetition transactions with FCB:

| Loan Number | Total Outstanding Balance |
|---|---|
| Loan 1 (FCB Loan No. 9933) | $171,716.13 |
| Loan 2 (FCB Loan No. 2998) | $80,850.55 |
| Loan 3 (FCB Loan No. 4986) | $22,122.35 |
| Loan 4 (FCB Loan No. 4682) | $22,187.83 |
| Loan 5 (FCB Loan No. 0610) | $27,957.96 |
| Loan 6 (FCB Loan No. 9747) | $28,131.96 |
| Loan 7 (FCB Loan No. 3892) | $23,502.86 |
| Loan 8 (FCB Loan No. 6129) | $36,201.02 |
| Loan 9 (FCB Loan No. 6183) | $26,665.45 |
| Loan 10 (FCB Loan No. 6227) | $18,470.30 |
| Loan 11 (FCB Loan No. 6236) | $25,450.58 |
| Loan 12 (FCB Loan No. 6644) | $39,320.23 |
| Loan 13 (FCB Loan No. 0680) | $1,429.342.28 |
| Loan 14 (FCB Loan No. 7351) | $177,471.10 |
| Loan 15 (FCB Loan No. 2901) | $2,564,990.83 |
| Loan 16 (FCB Loan No. 2666) | $37,509.54 |
| Loan 17 (FCB Loan No. 2057) | $2,064,665.07 |
| Finance Contract 0001 | $18,397.89 |

(collectively, the "FCB Loans").  As security for repayment of the outstanding amounts due and owing under the FCB Loans, FCB was granted security interests in, inter alia, certain identified titled vehicles (the "Titled Vehicles"), all accounts, general intangibles, inventory, equipment, furniture, furnishings, and other goods, now owned or thereafter

acquired, including any accessions, additions, replacements, substitutions, and records relating thereto, as well as any proceeds arising to the foregoing (the "FCB Collateral"). The security interests in the FCB Collateral were perfected through the filing of various UCC Financing Statements with the North Carolina Secretary of State, including but not limited to, the UCC Financing Statements filed on April 30, 2021, File No. 202100057231E, and on July 30, 2022, File No. 20220104913F and, in accordance with N.C. Gen. Stat. § 25-9-311, by noting the security interests, liens, and encumbrances on the Certificates of Title for the Titled Vehicles issued by the North Carolina Department of Motor Vehicles for certain titled vehicles owned by the Debtor.

FCB filed a proof of claim, Claim No. 42, in the Bankruptcy Case, asserted a Secured Claim against the Debtor and arising from the FCB Loans, in the amount of $6,614,953.93 (the "FCB POC").

(2)    Impairment.  This Class shall be IMPAIRED.

(3)    Treatment.  The Claims of FCB, arising from the FCB Loans and evidenced by the FCB POC, shall be treated as a Secured Claim in an amount equal to: (a) The outstanding balance of the FCB Loans, as claimed and set forth in the FCB POC, plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest; plus (c) costs, expenses, and attorneys' fees approved by the Court pursuant to § 506(b) of the Bankruptcy Code; less (d) all post-petition payments made by the Debtor (the "FCB Secured Claim").  FCB shall retain all its liens and encumbrances on FCB Collateral with the priority thereof as existed on the Petition Date, except as specifically set forth herein, pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the FCB Secured Claim is paid in full.

The FCB Secured Claim shall be amortized over a period not to exceed ten (10) years or 120 months from the Effective Date, with interest at a rate equal to seven-percent (7.00%) per annum, and payable in monthly installments of principal and interest commencing on the fifteenth (15th) day of first (1st) full month following the Effective Date, and continuing monthly thereafter, with a final payment of any outstanding principal and accrued interest due on or before the sixtieth (60th) month following the Effective Date. *The monthly installment payment to this Class, on account of the FCB Secured Claim, shall be $76,805.22.*

Throughout the period of repayment of the FCB Secured Claim, the following shall be events of default: (i) Failure to make any payment within fifteen (15) days of the due date; (ii) Failure to maintain the FCB Collateral normal wear and tear excepted; (iii) Failure to pay all property taxes for the FCB Collateral when due, except for property taxes paid pursuant to this Plan; or (iv) Failure to maintain insurance on the FCB Collateral with FCB named as the loss payee.  Upon an event of default, FCB shall be entitled to foreclose on

its interest in the FCB Collateral after providing the Debtor and its counsel at Buckmiller, Boyette & Frost, PLLC, with notice of default and thirty (30) days to cure such default without the need for further approval of the Bankruptcy Court.

## <u>CLASS 9 – FLAGSTAR FINANCIAL & LEASING, LLC</u>

(1)   <u>Description.</u>   Prior to the Petition Date, the Debtor and ENGS COMMERCIAL FINANCE CO. ("ENGS") entered into a Commercial Lease Agreement (the "Agreement"), dated August 2, 2022, in connection with the acquisition and financing of two (2) Yanmar SV100 Hydraulic Excavators with a 36" Bucket, Thumb, and 48" Tilt Bucket, Serial Nos. YMRSV100LANAJAH647, and YMRSV100LANAJAH648 (collectively, the "Collateral"), which required that the Debtor make equal monthly payments in the sum of $5,165.93 per month for a period of thirty-six (36) consecutive months beginning September 15, 2022. Repayment, and performance, of the Debtor's obligations under the Agreement was secured a security interest in the Collateral that was perfected through the filing of a UCC-1 Financing Statement with the North Carolina Secretary of State on August 2, 2022 (the "Financing Statement"). Post-execution of the Agreement, ENGS merged with Mitsubishi HC Capital America, Inc. ("MHCCA"), which assigned all right, title, and interest in the Agreement (and any attendant documents associated therewith) to FLAGSTAR FINANCIAL & LEASING, LLC ("Flagstar").

Flagstar filed a proof of claim, Claim No. 13, in the Bankruptcy Case, asserting that the outstanding balance owed by the Debtor under the Agreement is $245,569.10, exclusive of post-petition interest, attorneys' fees, and costs (the "Flagstar POC").

On December 20, 2023, and in the Bankruptcy Case, the Bankruptcy Court entered a Consent Order a Consent Order Regarding Motion of Flagstar Financial & Leasing, LLC for Entry of an Order Granting Relief from the Automatic Stay or, Alternatively, Requiring Adequate Protection [D.E. 204] (the "Flagstar Consent Order") between Debtor and Flagstar, which recharacterized the Agreement, as a secured transaction as opposed to a "true lease" under the Uniform Commercial Code, and confirmed that Flagstar possessed a perfected security interest in the Collateral. The Flagstar Consent Order, likewise, required that the Debtor make monthly adequate protection payments to Flagstar in the amount of $5,165.93, commencing on December 15, 2023, and continuing monthly thereafter until the earlier of the Effective Date, dismissal of the Bankruptcy Case, or conversion of the Bankruptcy Case to one under chapter 7 of the Bankruptcy Code.

(2)   <u>Impairment.</u>  This Class shall be IMPAIRED.

(3)   <u>Treatment.</u>  The Claim of Flagstar, as described herein, shall be shall be treated as follows:

A. <u>Recharacterization.</u> Consistent with the Flagstar Consent Order, the transaction evidenced by the Agreement, shall be recharacterized and treated as financing arrangement and/or secured transaction with the Debtor, as opposed to a "lease," with said transaction creating a security interest in the Collateral.

B. <u>Bifurcation, Amortization, and Payment.</u>  The Claim of Flagstar, evidenced by the Flagstar POC and arising from the Agreement, shall be treated as Secured Claim in an amount equal to $150,000.00 as of the Effective Date (the "Flagstar Secured Claim"), representing the fair market value of the Collateral, with the remaining balance of the Flagstar POC, totaling $95,569.10, being treated as a General Unsecured Claim in Class 18 below (the "Flagstar Unsecured Claim" or the "Flagstar Deficiency Claim"). Flagstar shall retain all its lien on the Collateral, with the priority thereof as existed on the Petition Date, except as specifically set forth herein, pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the Flagstar Secured Claim is paid in full as provided for herein.

The Flagstar Secured Claim shall be amortized over a period of sixty (60) months, with interest accruing at a rate equal to seven-percent (7.00%) per annum, and payable in monthly installments of principal and interest commencing on the fifteenth (15th) of the first (1st) full month following the Effective Date, and continuing on the fifteenth (15th) day of each month thereafter, until paid in full. *The monthly installment payment to this Class, on account of the Flagstar Secured Claim, shall be $2,970.18.*

C. <u>Termination of Prepetition Contractual Covenants, Warranties, and Provisions.</u> All covenants, warranties, provisions, and prepayment penalties set forth in the Agreement, shall be eliminated and shall no longer have any force or effect after the Effective Date.

D. <u>Default Provisions.</u> Throughout the period of repayment of the Flagstar Secured Claim, the following shall be events of default: (i) Failure to make any payment within thirty (30) days of the due date; (ii) Failure to maintain the Collateral, normal wear and tear excepted; (iii) Failure to pay all property taxes for the Collateral when due, except for ad valorem property taxes paid pursuant to this Plan; or (iv) Failure to maintain adequate insurance on the Collateral with Flagstar named as the loss payee.  Upon an event of default, Flagstar shall be entitled to foreclose on its interest in the Collateral after providing the Debtor and its counsel at Buckmiller, Boyette & Frost, PLLC, with notice of default and thirty (30) days to cure such default without the need for further approval of the Bankruptcy Court.

## **CLASS 10 – HEAVY EQUIPMENT LEASING OF NC**

(1)    <u>Description.</u>  The Claims of HEAVY EQUIPMENT LEASING  OF NC ("HEL") arise from, and are evidenced by, the UCC Financing Statements filed with the North Carolina Secretary of State on April 14, 2023, File No. 20230047976A, and File No. 20230047977B (collectively, the "HEL Financing Statements") evidencing a security interest, lien, and encumbrance on the following personal property collateral:

### UCC Financing Statement (File No. 20230047976A)

Assets Ford 450 Super Duty 1FDOW4GT3HED28299    Ford    F-450 2017; Chevrolet Silverado 2500 HD 1GC4YNE72LF101121    Chevrolet Silverado 2500    2020; Chevrolet Silverado 1500 3GCPCREC4JG177127 Chevrolet Silverado 2018; Chevrolet Silverado 1500 3GCUKRECXHG203200 Chevrolet  Silverado    2017; Ford Super Duty F-250    1FT7W2BN3LED29476 Ford F-250 2020; Ford F-350 1FT8W3DTXCEC68097 Ford F-350    2012; Ram 3500    3C7WRTCLXLG145198    Ram    Ram 3500 2020; Chevrolet Silverado 1500 3GCPCREC0JG223956 Chevrolet Silverado 2019; Chevrolet Silverado 1500 1GCPCNEC1HF193533    Chevrolet    Silverado    2017; Chevrolet Silverado 1500 3GCUKREC4JG158907 Chevrolet Silverado 2018; Ram 4500 3C7WRKFL8HG520468    Ram    Ram 4500 2017; Ram 4500 3C7WRLFL1JG185873 Ram Ram 4500 2018; Ram 4500    3C7WRKFLXGG387985  Ram    Ram 4500 2016; Chevrolet Equinox 3GNAXKEV0LS713761    Chevrolet    Equinox 2020; GMC Sierra 1500    1GTR2UEA7BZ191473    GMC Sierra 2011; Chevrolet Silverado 1500 3GCPKSEA5DG291831  Chevrolet    Silverado    2013; GMC Sierra 2500    1GT11REG5GF111680    GMC Sierra 2016; Chevrolet Silverado 2500    1GC1KUEG8GF289440    Chevrolet    Silverado2500    2016; Chevrolet Silverado 2500 1GB1KUEG1GF226197 Chevrolet Silverado 2500 2016; Chevrolet Silverado 2500 1GC1KWE84GF243169    Chevrolet    Silverado 2500 2016; GMC Sierra 2500 HD    1GT12NEY7KF221475 GMC Sierra 2500 HD  2019; Chevrolet 2500HD1GC4YPEY7LF118811    Chevrolet    Silverado 2500HD 2020; Ram 4500 3C7WRKFL4GG116937 Ram Ram 4500 2016; Chevrolet Silverado 1500 3GCPCREC0JG644589    Chevrolet    Silverado    2018; Chevrolet Silverado 1500 3GCUYGEL1KG306824 Chevrolet Silverado 2019;  whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

### UCC Financing Statement (File No. 20230047977B)

Assets Kenworth  1NKWGGGG80J255067    Kenworth    W900L  2018; Cat Dozer D6K2    EL700485    Caterpillar    D6K2LGP    2019; Hyundai 120C-9 Roller    26012411E120271 Hyundai 120C-9  2019; XL Lowboy Trailer    4U3J05336HL016596    0    0    2017; Sakai SV544T 84" SF roller with SD kit 3SV56-10414    Sakai    SV544T 84"    2020; Hyundai HR140LC-9A    HHKHZ409KF0000499    Hyundai HR140LC-9A    2015; Ford F750 Water truck 3FRXF7FA7DV026455    Ford    F750    2013; Sweeper    33306    0    8HC    2011; Carhauler Load Trailer  4ZECH2225J1168093    0    0    2018; Dump trailer    4RADU1223MG002748    INTERSTATE    0    0; Light Tower    5XFLN0517DN003658    WACKER    LTN6    2013; Light Tower 5XFLN0512EN001351    Wacker Neuson    0    2014; Light Tower 5XFLN0515EN003160    Wacker Neuson    0    2014; Rock Box    18-5102  SPEEDSHORE    BB-07 .5-L.    0; Trench Box 8' x 24 'x 4" Flat Bottom    M22041423    0    0    0; GPS Base    1122-25748    TopCon Hyper V 0; GPS Base    1122-20065    TopCon  Hyper V 0; GPS Base    1448-26159    TopCon  Hiper VR    0; GPS Rover    1448-13820    TopCon HiPer VR    0; GPS Rover    1122-25739    TopCon Hiper V  0; GPS Rover    1143-12742    TopCon  Hyper V 0; Data Collector  303928    TopCon  FC-6000 0; Data Collector  263342  TopCon  FC-5000 0; Data Collector 236483  TopCon  FC-5001 0; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

(the "HEL Collateral").  The Claim of HEL was scheduled by the Debtor as disputed and, despite receiving a copy of the Notice of Disputed Claims [D.E.  ], HEL did not file a proof of claim prior to the Claims Bar Date.

(2)    <u>Impairment.</u>  This Class shall be IMPAIRED.

(3)   <u>Treatment.</u>  The Claims of HEL, pursuant to § 502(d) of the Bankruptcy Code and Fed. R. Bankr. P. 3003(c)(2), shall be DISALLOWED and HEL shall not be entitled to receive any distribution or payment from the Debtor on account of any indebtedness arising prior to the Petition Date.  HEL shall, within thirty (30) days of the Effective Date, cause the HEL Financing Statements to be cancelled, removed, or otherwise terminated with the North Carolina Secretary of State.

## CLASS 11 – KOMATSU FINANCIAL LIMITED PARTNERSHIP

(1)   <u>Description.</u>    The  Claims  of  KOTMATSU  FINANCIAL  LIMITED PARTNERSHIP ("KFLP"), arising from the Debtor's prepetition purchase and acquisition under Contract Nos. 4000, 4001, 4002, and 4004 (collectively, the "KFLP Contracts"), of the following personal property collateral: (a) Komatsu D39PXi-24 Crawler Dozer (SN 96851); (b) Komatsu D61PXi-24 Crawler Dozer (SN B61346); (c) Komtasu D51PXi-24 Crawler Dozer (SN B61346); (d) Komtasu D71PXi-24 Crawler Dozer& Rear Ripper (SN 70616); (d) Komtasu PC360LCi-11 Hydraulic Excavator with 60" Bucket (SN A38653) (the "KFLP Collateral").   The security interest, lien, and encumbrance in the KFLP Collateral was purportedly perfected by the following UCC Financing Statements filed with the North Carolina Secretary of State:

| Date | File No. |
|---|---|
| April 13, 2021 | 20210047270G |
| January 11, 2022 | 20220004596A |
| January 11, 2022 | 20220004595M |
| January 18, 2022 | 20220007239J |
| June 6, 2022 | 20220079476M |
| June 29, 2022 | 20220090480J |

(collectively, the "KFLP Financing Statements").

Prior to the Petition Date, and based upon the Debtor's default, the KFLP Collateral was repossessed by KFLP and, pursuant to the Transfer of Equity and Assumption Agreements dated June 22, 2023 (the "Assumption Agreements"), the KFLP Collateral was sold to a third party, Mac Jones Construction, LLC ("MJC").  Each of the Assumption Agreements, however, contained the following provision:

> The Original Purchaser [JSmith Civil, LLC] agrees that notwithstanding the aforementioned transfer, the Original Purchaser is in no way relieved from the obligations set forth in the aforesaid contract and related documents and instruments but is and shall continue to be firmly bound. It is further understood and agreed that the liability of the Original Purchaser shall not be affected by any indulgence, compromise, settlement, extension, or variation

of terms effected by or with the Transferee, any guarantor of the obligations of the Original Purchaser under the aforesaid contract or any other person interested by operation of law or otherwise or by any election of remedies by KF or by any other action or inaction by KF. The Original Purchaser and the Transferee agree that the liability of the Original Purchaser and the Transferee under the aforesaid contract and related documents and instruments shall be joint and several. Notices of non-payment and non-performance, notices of amount of indebtedness outstanding at any time, protests, demands and prosecution of collection, foreclosure and possessory remedies and the right to remove any legal action from the court originally acquiring jurisdiction, are hereby expressly waived.

The Claims of KFLP, and arising from the KFLP Contracts and the KFLP Financing Statements, were scheduled by the Debtor as disputed and, despite receiving a copy of the Notice of Disputed, Contingent, or Unliquidated Claims [D.E. 106], KFLP did not file any proofs of claim for any amounts due and owing by the Debtor prior to the Claims Bar Date, including but not limited to any amounts purportedly owed pursuant to the KFLP Contracts and/or the KFLP Financing Statements.

(2)     Impairment.  This Class shall be IMPAIRED.

(3)     Treatment.  The Claims of KFLP, including those arising from the KFLP Contracts and evidenced by the KFLP Financing Statements, shall be DISALLOWED pursuant to § 502(d) of the Bankruptcy Code and Fed. R. Bankr. P. 3003(c)(2). KFLP shall not be entitled to receive any distribution or payment from the Debtor on account of any indebtedness arising prior to the Petition Date. KFLP shall, within thirty (30) days of the Effective Date, cause the KLFP Financing Statements to be cancelled, removed, or otherwise terminated with the North Carolina Secretary of State.

## CLASS 12 – MITSUBISHI HC CAPITAL AMERICA, INC.

(1)     Description.  The Claims of MITSUSBSHI HC CAPITAL AMERICA, INC. ("MHCCA") are described as follows:

A.  Contract No. 124860 / Lease 1.  Commercial Lease Agreement executed by the Debtor with ENGS COMMERCIAL FINANCE CO. ("ENGS"), dated June 2, 2021, as amended ("Lease 1"), in connection with the acquisition and financing of the following:

| Quantity | Equipment Description | Serial No. |
|----------|----------------------|------------|
| 1 | 2021 Hyundai HL940 Wheel Loader | HHKHWL41 CL0000033 |

| 1 | 2021 Hyundai HL940 Wheel Loader | HHKHWL41 AL0000012 |
| 1 | 2021 Hyundai HL955 Wheel Loader | HHKHWL50AL0000095 |
| 1 | 2021 Hyundai HX145LCR Excavator | HHKHK404VE0001583 |
| 1 | 2021 Hyundai HX235A Hydraulic Excavator | HHKHK608KE0000038 |
| 1 | 2021 Hyundai HX235A Hydraulic Excavator | HHKHK604EL0000612 |

(collectively, the "Lease 1 Collateral" or the "Lease 1 Equipment"). ENGS filed a UCC Financing Statement with the North Carolina Secretary of State on June 2, 2021, File No. 20210073616K perfecting its security interest in the Lease 1 Collateral (the "Lease 1 Financing Statement").

B. <u>Contract No. 131241 / Lease 2.</u> Commercial Lease Agreement executed by the Debtor with ENGS dated August 25, 2021, in connection with the acquisition and financing of the following:

| Quantity | Equipment Description | Serial No. |
|---|---|---|
| 1 | 2019 Yanmar V1035-6A Excavator | AK240 |
| 1 | 2020 Yanmar SV100 Hydraulic Excavator | AG959 |
| 1 | 2020 Yanmar SV100 Hydraulic Excavator | AF797 |
| 1 | 2021 Yanmar V1055-6A Excavator | AH923 |
| 1 | 2020 Yanmar SV100 Hydraulic Excavator | AG914 |
| 1 | 2021 Yanmar V1055-6A  Excavator | AH919 |
| 1 | 2020 Yanmar V1035-6A Excavator | AL445 |

(collectively, the "Lease 2 Collateral" or the "Lease 2 Equipment"). ENGS filed a UCC Financing Statement with the North Carolina Secretary of State on August 27, 2021, File No. 20210117111J perfecting its security interest in the Lease 2 Collateral (the "Lease 2 Financing Statement").

C. <u>Contract No. 136895 / Lease 3.</u> Commercial Lease Agreement executed by the Debtor with ENGS dated November 4, 2021, as amended ("Lease 3"), in connection with the acquisition and financing of one (1) Hyundai HX220AL Excavator, Serial No. HHKHK607EL0000228 (the "Lease 3 Collateral or the "Lease 3 Equipment"). ENGS filed a UCC Financing Statement with the North Carolina Secretary of State on November 4,

2021, File No. 20210149465F perfecting its security interest in the Lease 3 Collateral (the "Lease 3 Financing Statement").

D. <u>Contract No. 136896 / Lease 4.</u> Commercial Lease Agreement executed by the Debtor with ENGS dated November 4, 2021, as amended ("Lease 4"), in connection with the acquisition and financing of one (1) Hyundai HX220AL Excavator, Serial No. HHKHK607EL0000121 (the "Lease 4 Collateral" or the "Lease 4 Equipment"). ENGS filed a UCC Financing Statement with the North Carolina Secretary of State on November 4, 2021, File No. 20210149472C, perfecting its security interest in the Lease 4 Collateral (the "Lease 4 Financing Statement").

E. <u>Contract No. 136897 / Lease 5.</u> Commercial Lease Agreement executed by the Debtor with ENGS dated November 4, 2021, as amended ("Lease 5") (Lease 1, Lease 2, Lease 3, Lease 4, and Lease 5 are collectively referred to herein as, the "Leases"), in connection with the acquisition and financing of one (1) Hyundai HL940XT Wheel Loader, Serial No. HHKHW400CL0001189 (the "Lease 5 Collateral" or the "Lease 5 Equipment") (the Lease 1 Collateral, the Lease 2 Collateral, the Lease 3 Collateral, the Lease 4 Collateral, and the Lease 5 Collateral are collectively referred to herein as, the "MHCCA Collateral" or the "MHCCA Equipment"). ENGS filed a UCC Financing Statement with the North Carolina Secretary of State on November 4, 2021, File No. 20210149476H, perfecting its security interest in the Lease 5 Collateral (the "Lease 5 Financing Statement") the Lease 1 Financing Statement, the Lease 2 Financing Statement, the Lease 3 Financing Statement, the Lease 4 Financing Statement, and the Lease 5 Financing Statement are collectively referred to herein as, the "Financing Statements").

Post-execution of the Leases, ENGS merged with MHCCA, which acquired all right, title, and interest in the Leases and any attendant documents associated therewith, including but not limited to, the Financing Statements.

MHCCA filed a proof of claim, Claim No. 37, in the Bankruptcy Case, asserting that the outstanding balance owed by the Debtor under the Leases is $2,066,143.88, exclusive of post-petition interest, attorneys' fees, and costs (the "MHCCA POC").

On December 20, 2023, and in the Bankruptcy Case, the Bankruptcy Court entered a Consent Order a Consent Order Regarding Motion to Compel Assumption or Rejection of Equipment Lease Agreements [D.E. 204] (the "MHCCA Consent Order") between Debtor and MHCCA, which provided as follows: (1) Recharacterized each of the Leases, as

secured transactions as opposed to a "true leases" under the Uniform Commercial Code, and confirmed that MHCCA possessed a perfected security interest in the MHCCA Collateral; (2) Required that the Debtor make monthly adequate protection payments to MHCCA in the amount of $35,068.90; and (3) Granted MHCCA relief from the automatic stay with respect to the following items of the MHCCA Collateral, which shall be surrendered to MHCCA by the Debtor:

| Description of Collateral/Equipment | Serial No. |
| --- | --- |
| 2021 Hyundai Loader HL940 | HHKHWL41AL0000012 |
| 2019 Yanmar V1056-6A Excavator | AK240 |
| 2020 Yanmar V1035-6A Excavator | AL445 |
| 2021 Hyundai HX145 Excavator | HHKHK404VE0001583 |
| 2020 Yanmar SV100 Excavator | AF797 |
| 2020 Yanmar SV100 Excavator | AG959 |

(collectively, the "Surrendered MHCCA Collateral" or the "Surrendered MHCCA Equipment"). The MHCCA Consent Order, likewise, granted MHCCA a Secured Claim in the amount of $2,250,000.00 (the "MHCCA Secured Claim") in the Bankruptcy Case, which was secured by the MHCCA Collateral, and would be reduced through the periodic payments remitted by the Debtor as well as the application of proceeds resulting from the liquidation and sale of the Surrendered MHCCA Collateral.

(2)     Impairment.  This Class shall be IMPAIRED.

(3)     Treatment.  The Claims of MHCCA, as described herein, shall be treated as follows:

A.   Recharacterization. Consistent with the MHCCA Consent Order, each of the transactions evidenced by the Leases, shall be recharacterized and treated financing arrangements and/or secured transactions with the Debtor, as opposed to a "lease," with said transaction creating a security interest in the MHCCA Collateral.

B.   Amount, Amortization, and Payment.  The Claim of MHCCA, arising from the Leases and consistent with the MHCCA Consent Order, shall be treated as Secured Claim in an amount equal to $2,250,000.00 as of December 20, 2023, less any and all post-petition payments made by the Debtor and application of the proceeds resulting from the liquidation and sale of the Surrendered MHCCA Collateral (the "MHCCA Secured Claim"). MHCCA shall retain all its lien on the MHCCA Collateral, with the priority thereof as existed on the Petition Date, and consistent with the terms of the MHCCA Consent Order, except as specifically set forth

herein, pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the MHCCA Secured Claim is paid in full as provided for herein.

The MHCCA Secured Claim shall be amortized over a period of eight (8) years, with interest accruing at a rate equal to 8% per annum, and payable in monthly installments of $35,068.90, with the first payment due on the fifteenth (15th) day of the first (1 st) full month following the Effective Date, with the final payment of any outstanding principal and accrued interest due on the forty-eight (48th) month following the Effective Date.

C.  <u>Termination of Prepetition Contractual Covenants, Warranties, and Provisions.</u> All covenants, warranties, provisions, and prepayment penalties set forth in the Leases, shall be eliminated and shall no longer have any force or effect after the Effective Date.

D.  <u>Default Provisions.</u> Throughout the period of repayment of the MHCCA Secured Claim, the following shall be events of default: (i) Failure to make any payment within thirty (30) days of the due date; (ii) Failure to maintain the MHCCA Collateral, normal wear and tear excepted; (iii) Failure to pay all property taxes for the MHCCA Collateral when due, except for *ad valorem* property taxes paid pursuant to this Plan; or (iv) Failure to maintain adequate insurance on the MHCCA Collateral with MHCCA named as the loss payee. Upon an event of default, MHCCA shall be entitled to foreclose on its interest in the MHCCA Collateral after providing the Debtor and its counsel at Buckmiller, Boyette & Frost, PLLC, with notice of default and thirty (30) days to cure such default without the need for further approval of the Bankruptcy Court.

## CLASS 13 – PNC BANK, N.A.

(1)  <u>Description.</u> The Claims of PNC BANK, N.A. and/or PNC EQUIPMENT FINANCE, LLC (collectively, "PNC") arise from the following loans, obligations and indebtedness incurred by the Debtor in connection with its business operations:

| Lease/Loan Number | Original Principal Balance / Amount Financed | Collateral Description |
|---|---|---|
| Loan 5211 | $180,108.67 | 2018 Kenworth W900L (VIN: 1NKWGGGG8J255067 |
| Loan 5212 | $100,222.82 | TopCon Positioning(GPS grading system) |

| Loan 5213 | $59,128.82 | 2018 Bomag Roller 24-33 Walkbehind Pad Model BMP8500 (SN: 101720131911) |
| | | 2018 Bomag Roller 24-33 Walk-Behind Pad Model BMP8500 (SN: 10172031930) |
| Loan 5214 | $31,374.76 | Survey Kit HiPer V Rover GD Digital UHF with upgrades including but not limited to: FC5000 Atom GEO Cell N. America S/N 245087 410075-5200-077 Cradle, Pocket 3D PSWD S/N 97387-12, Benchmark Tool & Supply !Site Rover A Modem (SN 1122-25748) |
| | | Survey Kit HiPer V Rover GD Digital UHF with upgrades including but not limited to: FC5000 Atom GEO Cell N. America S/N 245087 410075-5200-077 Cradle, Pocket 3D PSWD S/N 97387-12, Benchmark Tool & Supply !Site Rover A Modem (SN: 1122-25739) |
| Loan 5215 | $75,000.00 | 2017 XL110 Hydraulic Detachable Gooseneck 53" OAL Trailer (VIN: 4U3J05336HL016596) |
| Loan 5216 | $38,500.00 | 2012 Ford F-350 SD Crew Cab Pickup 4DR (VIN: 1FT8W3DTXCEC68097) |
| Loan 5217 | $148,382.50 | 25-Ton Articulated Truck (SN: 7290) |
| Loan 5218 | $40,362.77 | 2020 Chevy Silverado 2500 (VIN: 1GC4YNE72LF101121) |
| Lease 6423 | $110,000.00 | 2022 Manitou MLA-6 Articulated Loader w/84" Bucket(serila number ATTBKT) & 60" HD Pallet Forks(serial Number 3003382) (SN: MMCMMLA6HD00060413) |

(collectively, the "PNC Obligations"). The security interests granted to PNC, to secure repayment of the PNC Obligations, were perfected by the filing of various UCC Financing

Statements with the North Carolina Secretary of State (the "PNC Financing Statements") or, pursuant to N.C. Gen. Stat. § 25-9-311, by noting the security interest, lien, and encumbrance of PNC on the Certificate of Title issued by the North Carolina Motor Vehicles on any item of the PNC Collateral covered by a Certificate of Title.

Post-petition, and on November 15, 2023, the Debtor conducted a public sale of certain personal property collateral, which included some of the PNC Collateral (the "November 2023 Public Sale"). The Bankruptcy Court, on December 29, 2023, entered an Order Approving Report of Public Sale, Application for Payment of 11 U.S.C. § 506(c) Expenses, and Motion for Distribution [D.E. 213] (the "Sale Confirmation Order"), which confirmed the November 2023 Public Sale and authorized the distributions and payment of $154,058.74 to PNC from the net sales proceeds generated thereby (the "PNC Sales Proceeds"). The PNC Sales Proceeds, distributed to PNC, consisted of the following: (a) The outstanding principal balance owed to PNC under Loan Nos. 5211, 5212, 5213, 5214, 5215, 5215, 5216, 5217, and 5218 (collectively, the "PNC Loans") and totaling $100,624.60; (b) Accrued interest through December 18, 2023, on the PNC Loans, and totaling $3,434.14; (c) Reasonable attorneys' fees, costs, and expenses incurred by PNC and in connection with the PNC Loans totaling $5,000.00; and (d) Payment of the sum of $45,000.00, to PNC in full and complete satisfaction of any and all amounts due and owing under Lease 6423, which is a cross-collateralized obligation arising following the forthcoming rejection of Lease 6423 and surrender of the underlying 2022 Manitou MLA-6 Articulated Loader (the "Leased Equipment") to PNC, in the Bankruptcy Case.

     (2)   <u>Impairment.</u>  This Class shall be IMPAIRED.

     (3)   <u>Treatment.</u>  The Claims of PNC, as described herein and arising from the the PNC Obligations, were satisfied, in full, from the proceeds generated from the November 2023 Public Sale, wherein the sum of $154,211.75 was paid to PNC in full and complete satisfaction of the PNC Obligations owed by the Debtor.

Lease 6423, to the extent necessary and required, will be, and hereby is, rejected by the Debtor in accordance with Article V below and, pursuant to the Public Sale Confirmation Order, and in exchange for any and all amounts paid to PNC thereunder, PNC shall not be entitled to any Claim arising from the Debtor's rejection of the PNC Lease in the Bankruptcy Case.

Within thirty (30) days of the Effective Date, and based upon payment—in full—of any and all amounts due and owing to PNC by the Debtor, PNC shall cause the PNC Financing Statements recorded with the North Carolina Secretary of State to be cancelled, removed, or otherwise terminated, and any security interests, liens, or encumbrances noted on any Certificates of Title covering the PNC Collateral with the North Carolina Department of Motor Vehicles to be removed and terminated.

## CLASS 14– TRUIST EQUIPMENT FINANCE CORP.

(1)    Description.    The Claims of TRUIST EQUIPMENT FINANCE CORP. ("TEF") are described as follows:

A.    Loan 1. On November 19, 2021, the Debtor executed a Promissory Note in favor of TEF in the original principal amount of $1,582,345.55, with interest accruing a fixed rate equal to 2.60% per annum, and payable in fifty-four (54) consecutive monthly installments of principal and interest in the amount of $31,082.02, commencing January 1, 2022, with a final payment of all principal and outstanding/accrued interest due on June 1, 2026 ("Note 1"). Repayment of, and performance, of those obligations and terms of Note 1 were secured by the Master Security Agreement No. ******4647 dated November 18, 2021 (the "TEF Security Agreement"), which granted TEF a security interest in the following personal property collateral:

| Item | VIN #/Serial Number | Year | Equipment Description |
|------|---------------------|------|-----------------------|
| 1 | KL202630 | 2017 | 2017 CAT D3K2LGP 2630 Crawler Dozer |
| 2 | MH600516 | | CAT AP655F Paver |
| 3 | EL703096 | 2019 | 2019 D6K2LGP Track Type Tractor |
| 4 | EL703523 | 2020 | 2020 D6K2LGP Track Type Tractor w/Topcon 3DMC MAX |
| 5 | CC300388 | 2020.000 | 2020 CAT CC34B Asphalt Compator |
| 6 | 101720131862.000 | | Bomag BMP8500 Trench Roller |
| 7 | 101720131863.000 | | Bomag BMP 8500 Trench Roller |
| 8 | 1GB4CYCY0HF156366 | 2017 | 2017 Chevy Silverado 35-56366 |
| 9 | 1GNEVKKW6JJ103642 | 2018 | 2018 Chevy Traverse 3642 |
| 10 | 3GCPCREC8JG623196 | 2018 | 2018 Chevorlet Silverado 23196 |
| 11 | 1GKKNMLS1LZ166028 | 2020 | 2020 GMC Acadia - 66028 |
| 12 | 3GCUYAEF5KG100591 | 2019 | 2019 Chevy Silverado - 00591 |
| 13 | 1GC4WLE72LF162205 | 2020 | 2020 Chevy Silverado - 62205 |
| 14 | 1T0325GMEMJ390815 | | John Deere 325 Skid Steer |
| 15 | 1T0333GMLLF371360 | | John Deere333G Skid Steer |
| 16 | 1T0333GMCKF362197 | | John Deere 333G Skid Steer |
| 17 | 3C7WRNBLXKG664683 | 2019 | 2019 Dodge Ram Truck 5500 |
| 18 | 3C7WRNBL1KG664684 | 2019 | 2019 Dodge Ram Truck 5500 |
| 19 | 1C6SRFFT4LN370675 | 2020 | 2020 Dodge Ram Truck 1500 |
| 20 | 1GC4YPEY7LF118811 | 2020 | 2020 Chevrolet Silverado 2500 |
| 21 | 3FRXF7FA7DV026455 | 2013 | 2013 Ford F-750 Water Truck |
| 22 | 1FVACXDT1EHFR6986 | 2014 | 2014 Freightliner Water Truck |

(collectively, the "TEF Collateral"). TEF purported to perfect its security interest in the TEF Collateral, including those items that were covered by a Certificate of Title with the North Carolina Department of Motor Vehicles (the "TEF Titled Vehicles"), through the filing of a UCC Financing Statement with the North Carolina Secretary of State on November 23, 2021, File No. 20210158599C (the "TEF Financing

Statement") (Note 1, the TEF Security Agreement, and the TEF Financing Statement are collectively referred to herein as, the "Loan 1 Documents" and with respect to the entire transaction as, "Loan 1").

B. <u>Loan 2.</u>  On January 31, 2022, the Debtor executed a Promissory Note in favor of TEF in the original principal amount of $469,301.82, with interest accruing a fixed rate equal to 2.82% per annum, and payable in forty-eight (48) consecutive monthly installments of principal and interest in the amount of $10,351.16, commencing March 1, 2022, with a final payment of all principal and outstanding/accrued interest due on February 1, 2026 ("Note 2"). Repayment of, and performance, of those obligations and terms of Note 2 were secured by the previously-executed TEF Security Agreement and previously-filed TEF Financing Statement with the North Carolina Secretary of State (Note 2, the TEF Security Agreement, and the TEF Financing Statement are collectively referred to herein as, the "Loan 2 Documents" and with respect to the entire transaction as, "Loan 2").

C. <u>Loan 3.</u>  On January 7, 2022, the Debtor executed a Promissory Note in favor of TEF in the original principal amount of $232,154.56, with interest accruing a fixed rate equal to 2.285% per annum, and payable in forty-eight (48) consecutive monthly installments of principal and interest in the amount of $5,123.21, commencing April 1, 2022, with a final payment of all principal and outstanding/accrued interest due on March 1, 2026 ("Note 3"). Repayment of, and performance, of those obligations and terms of Note 3 were secured by the previously-executed TEF Security Agreement and previously-filed TEF Financing Statement with the North Carolina Secretary of State (Note 3, the TEF Security Agreement, and the TEF Financing Statement are collectively referred to herein as, the "Loan 3 Documents" and with respect to the entire transaction as, "Loan 3").

TEF, in the Bankruptcy Case, filed a proof of claim, Claim No. 66, asserting a Secured Claim arising from Loan 1, Loan 2, and Loan 3, in the amount of $1,468,571.23, as of the Petition Date ("TEF POC").

(2)   <u>Impairment.</u>  This Class shall be IMPAIRED.

(3)   <u>Treatment.</u>  The Claims of TEF, as described herein, shall be treated as follows:

A. <u>Bifurcation; TEF Secured Claim; TEF Unsecured Claim.</u> The Claim of

TEF, evidenced by the TEF POC and arising from the Loan 1 Documents, the Loan 2 Documents, and the Loan 3 Documents, shall be treated as Secured Claim in an amount equal to $594,000.00, as of the Effective Date (the "TEF Secured Claim"), representing the fair market value of the TEF Collateral (excluding the value of that portion of the TEF Collateral for which any security interest of TEF is being avoided in Section 3(B) below, with the remaining balance of the TEF POC, totaling $874,571.23, being treated as a General Unsecured Claim in Class 18 below (the "TEF Unsecured Claim" or the "TEF Deficiency Claim"). TEF shall retain all its lien on the Collateral, with the priority thereof as existed on the Petition Date, except as specifically set forth herein, pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the TEF Secured Claim is paid in full as provided for herein.

B. <u>Partial Avoidance of Security Interest in TEF Collateral.</u>   Any security interest granted to TEF under the TEF Security Agreement, and with respect to the following collateral, is hereby avoided on the grounds that TEF failed to properly perfect its security interest under N.C. Gen. Stat. § 25-9-311(a), in said collateral by having its security interest, lien, and encumbrance noted on the Certificate of Title issued with respect to said titled vehicles by the North Carolina Department of Motor Vehicles:

| Collateral | Vehicle Identification No. |
|---|---|
| 2017 Chevrolet Silverado Truck | *************6366 |
| 2018 Chevrolet Traverse | *************3642 |
| 2018 Chevrolet Silverado | *************3196 |
| 2020 GMC Acadia | *************6028 |
| 2019 Chevrolet Silverado Truck | *************0591 |
| 2020 Chevrolet Silverado Truck | *************2205 |
| 2019 Dodge 1500 RAM Truck | *************4683 |
| 2019 Dodge 1500 RAM Truck | *************4684 |
| 2020 Dodge 1500 RAM Truck | *************0675 |
| 2020 Chevrolet 2500 Silverado Truck | *************8811 |
| 2013 Ford F-750 Water Truck | *************6455 |
| 2014 Freightliner Water Truck | *************6986 |

C. <u>Amortization and Payment of TEF Secured Claim.</u> The TEF Secured Claim shall be amortized over a period of sixty (60) months, with interest accruing at a rate equal to five-percent (5.00%) per annum, and payable in monthly installments of principal and interest commencing on the

fifteenth (15th) of the first (1st) full month following the Effective Date, and continuing on the fifteenth (15th) day of each month thereafter, until paid in full. *The monthly installment payment to this Class, on account of the TEF Secured Claim, shall be $11,209.51.*

D. <u>Termination of Prepetition Contractual Covenants, Warranties, and Provisions.</u> All covenants, warranties, provisions, and prepayment penalties set forth in the Loan 1 Documents, the Loan 2 Documents, and the Loan 3 Documents, shall be eliminated and shall no longer have any force or effect after the Effective Date.

E. <u>Default Provisions.</u> Throughout the period of repayment of the TEF Secured Claim, the following shall be events of default: (i) Failure to make any payment within thirty (30) days of the due date; (ii) Failure to maintain the Collateral, normal wear and tear excepted; (iii) Failure to pay all property taxes for the TEF Collateral when due, except for *ad valorem* property taxes paid pursuant to this Plan; or (iv) Failure to maintain adequate insurance on the TEF Collateral with TEF named as the loss payee. Upon an event of default, TEF shall be entitled to foreclose on its interest in the TEF Collateral after providing the Debtor and its counsel at Buckmiller, Boyette & Frost, PLLC, with notice of default and thirty (30) days to cure such default without the need for further approval of the Bankruptcy Court.

## <u>CLASS 15 – WELLS FARGO BANK, N.A.</u>

(1) <u>Description.</u> The Claims WELLS FARGO BANK, N.A. a/k/a WELLS FARGO DEALER SERVICES ("Wells Fargo") are described as follows:

A. <u>WF Loan 1 (Contract No. 3628).</u> The Debtor, on September 29, 2017, executed a Retail Installment Sale Contract in favor of CAPTIAL FORD, INC. ("Dealership") on September 29, 2017, in connection with the purchase of a 2017 Ford F-450 Super Duty DRW, VIN No. 1FD0W4GT3HED28299 (the "Vehicle 1") ("WF Loan 1"). The Contract was subsequently assigned by the Dealership to Wells Fargo who financed the Debtor's purchase of the Vehicle. Pursuant to the terms of Retail Installment Contract, the Debtor was required to remit seventy-two (72) monthly installment payments of $988.43, consisting of principal and interest at a rate equal to 5.09% per annum, commencing on November 13, 2017, and continuing thereafter until paid in full. As security for repayment of the amount set forth in Contract, Wells Fargo retained a security interest, lien, and encumbrance upon Vehicle 1, which

was noted on the Certificate of Title maintained by the North Carolina Department of Motor Vehicles.

Wells Fargo filed a proof of claim, Claim No. 5, in the Bankruptcy Case, claiming and asserting that the outstanding balance of WF Loan 1 was $6,949.61 as of the Petition Date (the "WF Loan 1 POC").

B. <u>WF Loan 2 (Loan No. 7000).</u> The Debtor, on October 27, 2022, executed a Loan and Security Agreement in favor of Wells Fargo, in connection with the purchase of a 2022 Vactron Vacuum Trailer, Model No. LP873SDT, VIN 7NWH19A68PK050208 ("Vehicle 2") ("Loan Agreement"), under which the Debtor was required to remit sixty (60) monthly installment payments of $2,109.44, consisting of principal and interest at a rate equal to 6.94% per annum. As security for repayment of the amount set forth in the Loan Agreement, Wells Fargo retained a security interest, lien, and encumbrance upon Vehicle 2, which was noted on the Certificate of Title maintained by the North Carolina Department of Motor Vehicles (collectively, "WF Loan 2 Documents" and, with respect to the entire transaction, as "WF Loan 2").

Wells Fargo filed a proof of claim, Claim No. 31, in the Bankruptcy Case, claiming and asserting that the outstanding balance of WF Loan 2 was $118,761.50 as of the Petition Date (the "WF Loan 2 POC").

(2) <u>Impairment.</u> This Class shall be IMPAIRED.

(3) <u>Treatment.</u> The Claims of Wells Fargo, as described herein, shall be treated as follows:

A. <u>WF Loan 1 (Contract No. 3628).</u> The Claim of Wells Fargo, arising from WF Loan 1, shall be treated as a Secured Claim in an amount equal to: (a) WF Loan 1 POC, plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest; plus (c) costs, expenses, and attorneys' fees approved by the Court pursuant to § 506(b) of the Bankruptcy Code; less (d) all post-petition payments made by the Debtor (the "WF Loan 1 Secured Claim"). Wells Fargo shall retain all its lien on Vehicle 1 with the priority thereof as existed on the Petition Date, except as specifically set forth herein, pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the WF Loan 1 Secured Claim is paid in full.

The WF Loan 1 Secured Claim shall be paid, in full, including any interest accruing from an after the Effective Date at the contractual interest rate of 5.05% per annum, on the sixtieth (60th) day following the Effective Date. *The payment to Wells Fargo, on account of the WF Loan 1 Secured Claim, shall not be less than $6,949.61.*

All prepayment penalties set forth in the Retail Installment Contract shall be eliminated and, throughout the period of repayment of the WF Loan 1 Secured Claim, the following shall be events of default: (i) Failure to make any payment within fifteen (15) days of the due date; (ii) Failure to maintain Vehicle 1 normal wear and tear excepted; (iii) Failure to pay all property taxes for Vehicle 1 when due, except for property taxes paid pursuant to this Plan; or (iv) Failure to maintain insurance on Vehicle 1 with Wells Fargo named as the loss payee. Upon an event of default, Wells Fargo shall be entitled to foreclose on its interest in Vehicle 1 after providing the Debtor and its counsel at Buckmiller, Boyette & Frost, PLLC, with notice of default and thirty (30) days to cure such default without the need for further approval of the Bankruptcy Court.

B. WF Loan 2 (Loan No. 7000). The Claim of Wells Fargo, evidenced by the WF Loan 2 POC and arising from the WF Loan 2 Documents, shall be treated as Secured Claim in an amount equal to $50,000.00 as of the Effective Date (the "WF Loan 2 Secured Claim"), representing the fair market value of Vehicle 2, with the remaining balance of the WF Loan 2 POC, totaling at least $68,761.50, being treated as a General Unsecured Claim in Class 18 below (the "WF Loan 2 Unsecured Claim" or the "WF Loan 2 Deficiency Claim"). Wells Fargo shall retain all its lien on Vehicle 2, with the priority thereof as existed on the Petition Date, except as specifically set forth herein, pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until the WF Loan 2 Secured Claim is paid in full as provided for herein.

The WF Loan 2 Secured Claim shall be amortized over a period not to exceed sixty (60) months (or five (5) years) from the Effective Date, with interest at a rate equal to seven-percent (7.00%) per annum, and payable in monthly installments of principal and interest commencing on the fifteenth (15th) day of first (1st) full month following the Effective Date, and continuing monthly thereafter. *The monthly installment payment to this Class, on account of the WF Loan 2 Secured Claim, shall be $990.06.*

All prepayment penalties set forth in the WF Loan 2 Documents shall be eliminated and, throughout the period of repayment of the WF Loan 2

Secured Claim, the following shall be events of default: (i) Failure to make any payment within fifteen (15) days of the due date; (ii) Failure to maintain Vehicle 2 normal wear and tear excepted; (iii) Failure to pay all property taxes for Vehicle 2 when due, except for property taxes paid pursuant to this Plan; or (iv) Failure to maintain insurance on Vehicle 2 with Wells Fargo named as the loss payee.  Upon an event of default, Ally shall be entitled to foreclose on its interest in Vehicle 2 after providing the Debtor and its counsel at Buckmiller, Boyette & Frost, PLLC, with notice of default and thirty (30) days to cure such default without the need for further approval of the Bankruptcy Court.

## CLASS 16 – WESTFIELD INSURANCE COMPANY

(1)    Description.  The Claims of WESTFIELD INSURANCE COMPANY a/k/a WESTFIELD NATIONAL INSURNACE COMPANY and/or OHIO FARMERS INSURANCE COMPANY (collectively "Westfield") arise from the following;  (a) Agreement of Indemnity executed by the Debtor and made effective as of May 8, 2018 (the "2018 Indemnity Agreement"); (b)  Agreement of Indemnity executed by the Debtor and made effective as of May 21, 2019 (the "2019 Indemnity Agreement"); (c)  Agreement of Indemnity executed by the Debtor and made effective as of May 1, 2020 (the "2020 Indemnity Agreement") (collectively, the "Indemnity Agreements").  Purusant to the Indemnity Agreements, the Debtor agreed to indemnify Westfield, as surety under certain surety bonds, undertakings, guarantees, and other writings obligatory in the nature of a bond (the "Surety Bonds" or the "Bonds") from any and all liability for losses and/or expenses of whatsoever kind, including but not limited to interest, court costs, and counsel fees) and other losses that Westfield may sustain by reason of the Debtor and other third-party indemnitors failure to perform on any contracts covered by the Bonds.  As security therefore, the Indemnity Agreement granted Westfield a security interest in the following:

i.  All of such Indemnitor's real property, personal property, accounts, accounts receivable, notes receivable chattel paper, commercial tort claims, deposit accounts, documents, machinery, equipment, fixtures, instruments, inventory, investment property (including certificated and uncertificated securities), general intangibles, goods (including rights to returned or repossessed goods and rights of stoppage in transit), cash and cash equivalents, contract rights and claims, payment intangibles, and supporting obligations, agreements, and letter of credit rights, proceeds of letters of credit, promissory notes, records, software, franchises, customer lists, insurance receivables and refunds, tax refunds, tax refund claims, pension plan refunds, pension plan reversions, patents, patent applications, service marks, service mark applications, trademarks, trademark applications, trade names, trade secrets, goodwill, copyrights, copyright applications, and licenses; and

ii.  All supporting obligations of, attachments, accessions, parts and appurtenances to, substitutions for, replacements of, products and proceeds including cash proceeds, noncash proceeds and proceeds of any insurance of, any and all of the Collateral.

(the "Westfield Collateral").  Westfield filed, on May 10, 2023, a UCC Financing Statement with the North Carolina Secretary of State, File No. 20230059889H, to perfect

its security interest, lien, and encumbrance in the Westfield Collateral arising from the 2018 Indemnity Agreement and the 2019 Indemnity Agreement (the "May 2023 Financing Statement").  Westfield, likewise and on Marh 29, 2023, filed a UCC Financing Statement with the North Carolina Secretary of State, File No. 2023004094211, to perfect its security interest, lien and encumbrance in the Westfield Collateral arising from the 2020 Indemnity Agreement (the "March 2023 Financing Statement").

    (2)   <u>Impairment.</u>  This Class shall be IMPAIRED.

    (3)   <u>Treatment.</u>  The Claims of Westfield , as described herein, and arising from the Indemnity Agreements, shall be treated as General Unsecured Claims in Class 18 below, as the value of the Westfield Collateral, given the senior security interests of other Secured Creditors, including FCB, is not sufficient to support treatment of any portion of the Westfield POC as a Secured Claim in the Bankruptcy Case.   Westfield shall, within thirty (30) days of the Effective Date, cause the Westfield Financing Statements to be cancelled, removed, or otherwise terminated, as to the Debtor, and with the North Carolina Secretary of State.

## CLASS 17– EXECUTORY CONTRACTS AND UNEXPIRED LEASES

    (1)   <u>Description.</u> This Class consists of the Unexpired Leases and Executory Contracts that the Debtor entered into with various third parties, as set forth on Schedule G to the Voluntary Petition, Schedules, and Statement of Financial Affairs [D.E.68], as amended, except for those Unexpired Leases or Executory Contracts specifically classified in other Classes or previously assumed or rejected by the Debtor.

    (2)   <u>Impairment</u>.  This Class shall be IMPAIRED.

    (3)   <u>Treatment</u>. The Debtor will assume, assume and assign, or reject Unexpired Leases and Executory Contracts, within this Class, in accordance with Article V of the Plan.

## CLASS 18 – GENERAL UNSECURED CLAIMS

    (1)   <u>Description</u>.   This Class consists of the Allowed, Undisputed, Non-contingent, Unsecured Claims listed in Schedule F by the Debtor or as otherwise approved by the Court, and any Deficiency Claims known to the Debtor at the time of the filing of this Plan, whose Claims where not included in Class 8, and are more than $10,000.00.  The last day for Creditors to file proofs of claim was **JANUARY 24, 2024**.

    (2)   <u>Impairment</u>.  This Class shall be IMPAIRED.

(3)    <u>Treatment.</u>    The Debtor shall pay the holders of Claims in this Class, consistent with the Liquidation Analysis attached as an Exhibit to the Disclosure Statement, the aggregate sum of $500,000.00 (the "Total Unsecured Dividend"), in equal twenty (20) quarterly installments over a period of five (5) years, through ten (10) semi-annual payments of $50,000.00, commencing on the earlier of June 30th or December 31st, following the Effective Date, and continuing semi-annually thereafter, with said payments being distributed to the Class *pro rata*. The Debtor, at its election, may execute a Promissory Note in favor of this Class, in an amount equal to the Total Unsecured Dividend to be paid hereunder.

The Debtor may also investigate and pursue avoidance actions pursuant to §§ 547 and 548.  Any funds collected through such actions, and preserved for the benefit of the estate, shall be distributed in accordance with the priorities established by the Bankruptcy Code and Orders of this Court.

## <u>CLASS 20 - EQUITY SECURITY HOLDERS:</u>

(1)    <u>Classification</u>.  This class consists of the Debtor's sole member, JEREMY A. SMITH ("Smith").

(2)    <u>Impairment</u>.  This Class shall be IMPAIRED.

(3)    <u>Treatment</u>. Smith shall retain his membership and ownership in the Debtor and, to the extent necessary, shall remit the New Value Contribution in exchange for retention of his membership interest in the Debtor after the Effective Date.

## <u>ARTICLE IV</u>
## <u>MEANS OF EXECUTION AND IMPLEMENTATION</u>

A.    <u>Satisfaction of Absolute Priority Rule; New Value Contribution; Procedure for Competing Bids of New Value.</u>  To satisfy the absolute priority rule and in the event of a dissenting Class of Impaired Unsecured Creditors, and to ensure compliance with § 1129(b)(2)(B)(ii) of the Bankruptcy Code, the Equity Security Holder—identified in Class 10 above—shall make an aggregate new value contribution of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) (the "New Value Contribution") on the Effective Date, in exchange for retention of their respective membership interests in the Debtor after the Effective Date.  The Debtor reserves the right, until the conclusion of the Confirmation Hearing, to increase the New Value Contribution.

Any party desiring to place a bid or proposal in excess of the New Value Contribution, shall submit any such bid or proposal, in writing, to Debtor's counsel at Buckmiller, Boyette & Frost, PLLC, 4700 Six Forks Road, Suite 150, Raleigh, North Carolina 27609,

within ten (10) calendar days prior to the initial setting by the Bankruptcy Court for the Confirmation Hearing (the "Bid Deadline"). In the event a party-in-interest submits a competing written bid or proposal prior to the Bid Deadline, the Debtor will conduct an auction at the Confirmation Hearing. The failure to submit a competing written bid or proposal prior to the Bid Deadline, shall bar consideration of any such competing written bid or proposal and the Debtor shall not be required to hold or conduct any auction at the Confirmation Hearing.

B.      <u>Ongoing Business and Production Operations; Source of Revenue/Income for Implementation of Plan of Reorganization.</u>  The Debtor, since the Petition Date, continuing through the Effective Date, and throughout the period of repayment of its Creditors has, and will continue, to perform subcontracting services to various third-parties throughout the State of North Carolina, from which it anticipates substantial revenue.   To the extent necessary, the Debtor intends and reserves the right to sell, free and clear of liens, certain real and/or personal property, to pay the Claims of Secured Creditors, as well as generate income that could be utilized to fund the Total Unsecured Dividend.

C.      <u>Litigation Claims.</u> The Debtor intends to pursue, as a method by which to fund payments to Creditors under this Plan, the turnover and recovery of any amounts to which it is entitled, including but not limited to: (1) Tax credits from the Internal Revenue Service; (2) Prepetition accounts receivable from various third parties; and (3) Avoidance, recovery, and preservation for the benefit of the Estate, any payments and transfers pursuant to §§ 544, 547, and 548 of the Bankruptcy Code, as well as the Uniform Voidable Transactions Act, codified by the North Carolina General Assembly in N.C. Gen. Stat. § 39-23.1, *et seq.* (the "UVTA").

D.      <u>Timing of Distributions</u>.  Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court. Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.

E.      <u>Penalties, Late Charges, and Attorneys' Fees</u>.  Except as expressly stated in the Plan, or allowed by a Final Order of the Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.  All payments, distributions, or transfer to be made under the Plan, except as expressly provided by the Plan or the Court, shall be made without interest.

F.      <u>Distributions to Unsecured Creditors</u>.  No distributions shall be made to creditors within the General Unsecured Creditor Class until (i) the deadline for filing deficiency claims has past; (ii) all assets of the Debtor have been liquidated and the net

proceeds received; (iii) the deadline for objections to claims has past; (iv) all objections to claims have been resolved by a Final Order; and (v) the deadline for filing Administrative Claims has past and all requests for Administrative Claims have been resolved by Final Order.

G. <u>De Minimis Distributions</u>. No distribution of less than twenty-five dollars ($25.00) shall be required to be made to any holder of an Allowed Unsecured Claim. Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

H. <u>Claims Paid by Third Parties</u>. To the extent a Creditor receives payment in full or in part on account of such Claim from any party that is not the Debtor, such Creditor shall, within two (2) weeks therefore, inform the Debtor of such payment, and its Claim shall be reduced accordingly for purposes of distribution under the Plan.

I. <u>Unclaimed Property</u>. If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the Claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the Claim. Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.

J. <u>Preservation of Avoided Transactions for the Benefit of the Estate</u>. All transactions avoided or otherwise set aside pursuant to §§ 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to § 551 and applicable case law. Funds received from such transactions shall be distributed to Creditors according to the priorities of the Bankruptcy Code. In the case of any lien that has been avoided which encumbered certain properties of the Debtor and has since been avoided, the lien shall not remain on the public record nor shall it remain an encumbrance upon the real property. However, all distributions made towards such deed of trust shall be distributed not to the named beneficiary of such deed of trust, but shall instead be paid to the Disbursing Agent for distribution to Creditors in accordance with the provisions of this Plan.

K. <u>Authorization to Take Actions Necessary to Comply with Plan and Bankruptcy Code</u>. The Debtor will execute and deliver all documentation to the Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

L. <u>Other Actions</u>. The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

M. <u>No Waiver</u>. Confirmation of this Plan shall constitute a finding that the Debtor does not waive, release, or discharge, but rather retains and reserves any and all

prepetition and post-petition Claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Bankruptcy Rules, or by the Local Rules, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to §§ 545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to Creditor(s) as part of the Plan. Further, the Debtor retains all rights to assert and pursue all Claims under § 542, including without limitation actions to seek turnover assets of the Estate, actions to recover accounts receivable, and/or actions to invalidate setoffs.

N.    <u>Payment of Unpaid and Outstanding Administrative Claims</u>.  Administrative Claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

O.    <u>Deadline for Objections, Applications and Adversary Proceedings</u>.    All objections to claims, fee applications, and adversary proceedings will be filed with the Court within sixty (60) days of the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any Claims against Secured Creditors relating to the payoff and/or satisfaction of their Secured Claims.

P.    <u>Procedure for Payment of Professional Fees</u>.    Current Court approved professionals shall not be subject to the fee application process for services rendered post-confirmation in furtherance of implementation of the Plan.

Q.    <u>Exemption from Transfer Taxes</u>.    Pursuant to § 1146(a), the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.  Each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of the Plan.

R.    <u>Deficiency Claims</u>.  Any Secured Creditor asserting a Deficiency Claim shall file a proof of claim within thirty (30) days after the determination that such Deficiency Claim exists, including an itemization of the principal, interest, and other costs, or be forever barred from asserting any Deficiency Claim and such obligation shall be deemed

paid in full. In the event the Debtor obtains his Final Decree prior to the determination of any Deficiency Claim, such Secured Creditor shall inform the Disbursing Agent of any such Deficiency Claim within the same time period. In such event, a proof of claim form shall not be required, but the Secured Creditor shall provide notice of such Deficiency Claim to the Disbursing Agent in a writing containing the same information required pursuant to § 501 and Bankruptcy Rule 3001.

S.    <u>Administrative Claims Bar Date</u>.  The Administrative Claim Bar Date for filing all Administrative Claims shall be sixty (60) days from the Effective Date. Holders of Administrative Claims not previously Allowed by the Court by Final Order must submit proofs of Administrative Claims on or before such Administrative Claim Bar Date or be barred from doing so. Such request for an Administrative Claim must be made by motion (not by filing a proof of claim on Official Form B10) and include an itemization of the amount of the claim, the basis for such claim, and if such claim is based on a writing, a copy of such writing. All Administrative Claims not previously Allowed by the Court by Final Order must be filed with the Court on or before the Administrative Claims Bar Date and served on counsel for the Debtor. Creditors required to file Administrative Claims who fail to do so by the deadline shall be forever barred, estopped, and enjoined from asserting such claim(s) against the Debtor. Notwithstanding the forgoing, Administrative Claims arising from services rendered by professionals approved by the Court pursuant to § 327 of the Bankruptcy Code must comply with the applicable guidelines established by the Bankruptcy Administrator for filing fee applications. Any request for an Administrative Claim not made in accordance with these requirements by the bar date and not Allowed by an Order of the Court shall be forever barred, estopped, and enjoined from asserting such claim(s) against the Debtor and shall not be treated as an Administrative Claim for purposes of this Plan.

## <u>ARTICLE V</u>
## <u>TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

A.    <u>Assumption or Rejection of Executory Contracts and Leases</u>. Any executory contracts or leases classified in Class 7 shall be assumed or rejected in accordance with this Article VI, unless assumed or rejected by a separate Order of the Court entered prior to the Confirmation Date.

B.    <u>Procedure for Assuming or Rejecting Class 7 Executory Contracts and Leases</u>. The Debtor shall file with the Court the Schedule of Assumed Executory Contracts and Unexpired Leases (including the proposed Cure Claim amounts) no later than thirty (30) days prior to the scheduled Confirmation Hearing, and serve such Schedule of Assumed Executory Contracts upon the affected parties in accordance with Rules 6006 and 9014. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related Cure Claim must be filed, served, and actually received by

the Debtor no later than fourteen (14) days after the filing of the Schedule of Assumed Executory Contracts and Unexpired Leases. Any such objections will be scheduled to be heard by the Bankruptcy Court at the Confirmation Hearing, unless resolved by the parties prior to the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Claim will be deemed to have assented to such assumption or Cure Claim. To the extent any such dispute regarding the assumption of an Executory Contract or Unexpired Lease is not consensually resolved by the parties or otherwise resolved prior to the Effective Date, such assumption will be deemed to occur retroactively to the date of the Confirmation Hearing if approved by the Bankruptcy Court.

C.     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to Section 365(b)(l) of the Bankruptcy Code, by payment of the Cure Amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute between the Debtor and a counterparty to any Executory Contracts or Unexpired Leases that is not resolved between the parties regarding (1) the amount of any payments to cure such a default; (2) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption, shall be made following the entry of a Final Order resolving the dispute and approving the assumption, which Final Order or orders may, for the avoidance of doubt, be entered (and any related hearing may be held) after the Effective Date. Any Cure Claim shall be deemed fully satisfied, released, and discharged upon payment by the Debtor of any one of the following: (1) amounts listed on the Debtor's Schedule of Assumed Executory Contracts and Unexpired Leases (if no objections to the Cure Claim is filed within the applicable objection period), (2) amounts agreed to by the Debtor and the applicable counterparty, or (3) amounts as ordered by the Court.

D.     Claims Based on Rejection of Executory Contracts and Unexpired Leases. The Debtor shall file the Schedule of Rejected Executory Contracts and Unexpired Leases no later than thirty (30) days prior to the scheduled Confirmation Hearing. Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (2) the effective date of such rejection; or (3) the Effective Date of the Plan. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from

assertion, and shall not be enforceable against the Debtor, the Estate, or its property without the need for any objection by the Debtor or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.

## ARTICLE VI
## PRESERVATION OF CLAIMS UNDER 11 U.S.C. § 506(c)

Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Debtor shall have the right to seek recovery of the costs and expenses of maintaining and preserving any collateral or property that occurred prior to the Effective Date.

## ARTICLE VII
## PRESERVATION OF CLAIMS AND AVOIDANCE ACTIONS

Notwithstanding anything to the contrary therein, the provisions of the Plan, Disclosure Statement, or Confirmation Order shall not have and are not intended to have, any *res judicata* or collateral estoppel effect with respect to any causes of action that the Debtor may assert, regardless of whether and to what extent such causes of action are specifically described in the Plan or Disclosure Statement. Unless any causes of action are expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order of the Court, all such causes of action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel, or laches shall apply so such causes of action upon or after confirmation of the Plan. Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or Confirmation Order, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment, or bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by the Debtor prior to the Effective Date. This shall include, but is not limited to any and all prepetition and post-petition Claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Bankruptcy Rules, or by the Local Rules, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to §§ 545, 546, 547, 548, 550, and 542, including without limitation actions to seek turnover the assets of the Estate, actions to recover accounts receivable, and/or actions to invalidate setoffs.

## ARTICLE VIII
## SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The Claims stated herein may be modified throughout the course of payment under this Plan, by modification, Court Order, or other legally appropriate manner. The Debtor, upon full payment as called for thereunder, shall be entitled to have the Security Instrument marked paid and satisfied and/or canceled as a matter of record, by the Substitute Trustee or Secured Creditor either upon request by the Debtor or by appropriate application to this Court, upon a showing that the full amount of the payments called for herein were made by the Debtor.

## ARTICLE IX
## ACCEPTANCE OR REJECTION OF PLAN AND
## EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.     <u>Each Impaired Class Entitled to Vote Separately</u>.  Each Impaired Class of Claims shall be entitled to have the holders of Claims therein vote separately as a Class to accept or reject the Plan.

B.     <u>Acceptance by a Class of Creditors</u>.  Consistent with § 1126(c), and except as provided in § 1126(e), a Class of Claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of that Class that have timely and properly voted to accept or reject the Plan.

C.     <u>Claimants Entitled to Vote</u>.  Holders of Impaired Claims shall be entitled to vote if:

(1)     Such Claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed. The Claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such Claim has been filed or listed on the Schedules;

(2)     Such Claim has been filed against the Debtor or listed on the Debtor's Schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by Order of the Court in accordance with Bankruptcy Rule 3018;

(3)     Such Claim has been filed in an undetermined amount, in which case the Creditor shall not be entitled to vote unless the Debtor and

the holder of the Claim agree on an amount for voting purposes or the Court enters an Order setting the amount of the Claim that the Creditor may ballot.

(4)    Any entity holding two or more duplicate Claims shall be entitled to vote only one Claim.

D.    <u>Confirmation Hearing</u>.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E.    <u>Acceptances Necessary to Confirm the Plan</u>.  At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each Impaired Class.  Under § 1126 of the Bankruptcy Code, an Impaired Class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an Impaired Class, the Court must also determine that members of that Class will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such Class member would receive or retain if the Debtor was liquidated as of the Effective Date of the Plan under chapter 7 of the Bankruptcy Code.

F.    <u>Confirmation of Plan Without Necessary Acceptances</u>.  The Bankruptcy Code provides that the Plan may be confirmed even if not accepted by all Impaired Classes. In order to be confirmed without the requisite number of acceptances of each Impaired Class, the Court must find that at least one Impaired Class has accepted the Plan without regard to the acceptances of Insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such Impaired Class.  In the event that any Class votes against the Plan, the Debtor hereby requests and moves the Court under the provisions of this Plan outlined in Article IX herein, for confirmation pursuant to the "cramdown" provisions of § 1129(b).  In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the Allowed Claims in any Class that votes against the Plan consistent with § 1129(b)(2)(A).

## <u>ARTICLE X</u>
## "CRAMDOWN" FOR IMPAIRED CREDITORS
## NOT ACCEPTING THE PLAN

In respect to any Class of Creditors Impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each Class of Claims or Interests that are Impaired under the Plan and that the

Court confirm the Plan without such acceptances by the said Impaired Classes.  The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any Secured Creditor, at a valuation hearing under § 506, to be scheduled at the same time as the Confirmation Hearing.

## ARTICLE XI
## EFFECT OF CONFIRMATION

A.      Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

B.      Injunction.  As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a Claim, Equity Interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to § 1141, are enjoined from taking any of the following actions against the Debtor on account of any such Claims, Equity Interests, debtor or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Notwithstanding the foregoing, the Plan does not release or waive any Claims the Debtor may have against any party in interest.

## ARTICLE XII
## RELEASE OF TITLE TO PROPERTY

A.      Vehicles.  Upon the satisfaction or other discharge of a security interest in a motor vehicle, mobile home, or in any other Property of the Estate for which the certificate of title is in the possession of the Secured Creditor, the Secured Creditor shall within ten (10) days after demand and, in any event, within thirty (30) days of receipt of the payment in full pursuant to the Plan, execute a release of its security interest on the said title or certificate, in the space provided therefore on the certificate or as the North Carolina Department of Motor Vehicles prescribes, and mail or deliver the certificate and release to the Debtor.  Confirmation of this Plan shall impose an affirmative and direct duty on each such Secured Creditor to comply with this provision, which shall be enforced by either the filing of a contested matter or adversary proceeding with the Court prior to, or after, the closing of the Bankruptcy Case. The Debtor specifically reserves the right to reopen the Bankruptcy Case under § 350 to pursue any and all rights and Claims provided for herein.

B.     Personal Property. Upon the satisfaction or other discharge of a security interest in any non-titled personal property, including but not limited to, equipment, inventory, accounts, accounts receivable, and the proceeds and products arising therefrom, the Secured Creditor shall within ten (10) days after demand and, in any event, within thirty (30) days of receipt of the payment in full pursuant to the Plan, release, cancel or otherwise terminate its security interest in the personal property collateral, as well as any UCC Financing Statement, as amended or continued, on file with the North Carolina Secretary of State.  Confirmation of this Plan shall impose an affirmative and direct duty on each such Secured Creditor to comply with this provision, which shall be enforced by either the filing of a contested matter or adversary proceeding with the Court prior to, or after, the closing of the Bankruptcy Case. The Debtor specifically reserves the right to reopen the Bankruptcy Case under § 350 to pursue any and all rights and Claims provided for herein.

B.     Real Property.  Pursuant to N.C. Gen. Stat. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a Creditor holds a properly secured mortgage, the secured party shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the Office of the Register of Deeds for the applicable County a satisfaction of its security interest and mail or deliver the recorded satisfaction document or documents to the Debtor. The failure of any such party to comply with this section shall  results in the imposition of statutory damages of $1,000.00, actual damages, costs and legal fees as provided for by § 45-36.9(c) of the N.C. General Statutes.   Confirmation of this Plan shall impose an affirmative and direct duty on each such Secured Creditor to comply with this provision, which shall be enforced in a proceeding filed with the Court prior to, or after, the closing of the Bankruptcy Case. The Debtor specifically reserves the right to reopen the Bankruptcy Case under § 350(b) of the Bankruptcy Code to pursue the rights and claims provided for herein including all remedies for damages and attorneys' fees under applicable state and federal statutes.

## ARTICLE XIII
## APPLICATION OF PLAN PAYMENTS

A.     All payments made by the Debtor, under this Plan, shall be applied as indicated in the respective treatment for each Creditor, or if no such application of payments is specified, then payments shall be applied first to accrued interest and then to principal on a monthly basis according to the amortization schedule proposed for each Creditor.  In the event that a creditor is entitled to costs and/or attorneys' fees post-petition under § 506(b) of the Bankruptcy Code, such creditor must file an application in accordance with the Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorneys' fees becoming part of the creditor's allowed claim or such costs and/or attorney's fees shall be disallowed as part of such claim. Confirmation of the Plan shall impose an affirmative duty and legal obligation on the

holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with § 524(i).

B.     Confirmation of the Plan shall impose a duty on the Holders and/or servicers of Claims secured by liens on real property to apply the payments received from the Debtor to the month in which they were made under the Plan or directly by the Debtor, whether such payments are immediately applied to the outstanding balance of the loan or placed into some type of suspense account and to otherwise comply with § 524(i).

## <u>ARTICLE XIV</u>
## <u>RETENTION OF JURISDICTION</u>

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of §§ 105(a) and 1127 of the Bankruptcy Code and for, without limitation, the following purposes, <u>inter alia</u>:

1.     To determine any and all objections to the allowance of Claims and Interests and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

2.     To determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any Claim resulting therefrom;

3.     To determine all controversies and disputes arising under or in connection with the Plan and applications, adversary proceedings and litigated matters pending on the Confirmation Date;

4.     To effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

5.     To determine such other matters and for such other purposes as may be provided for in the Confirmation Order;

6.     To determine all disputes regarding property of the estate and establish and adjust procedures for the orderly administration of the Estate;

7.     To determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

8.     To replace the Debtor-in-Possession with a Trustee under § 1104 for good

cause shown.

# ARTICLE XV
## MISCELLANEOUS PROVISIONS

A.   <u>Survival of Terms</u>.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B.   <u>Successors Bound</u>.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of Claims and Interests.

C.   <u>Further Assurance</u>.  If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

E.   <u>Liens</u>.  All liens remaining in favor of any Creditor in this action against the real property conveyed prior to the Petition Date shall be deemed to be released upon confirmation of the Plan.  All parties shall, upon written request by the Debtor, provide such additional documentation as may be necessary to effectuate these lien releases.

F.   <u>Incorporation of Disclosure Statement</u>.  All the terms and conditions of the Disclosure Statement are incorporated herein by reference.

**REMAINDER OF PAGE INTENTIONALLY BLANK**
**[SIGNATURES ON FOLLOWING PAGE]**

**JSMITH CIVIL, LLC**
**PLAN OF REORGANIZATION**
*SIGNATURE PAGE*

Respectfully submitted this, the 18th day of March, 2024.

**JSMITH CIVIL, LLC**

BY:

Name: Jeremy A. Smith
Title: Manager, President, & Chief Executive Officer
Date:  March 18, 2024

**BUCKMILLER, BOYETTE & FROST, PLLC**

BY: s/Joseph Z. Frost
JOSEPH Z. FROST, NCSB No. 44387
jfrost@bbflawfirm.com

4700 Six Forks Road, Suite 150
Raleigh, North Carolina 27609
T: 919-296-5040
F: 919-977-7101

Counsel for Debtor JSmith Civil, LLC