# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# NEW BERN DIVISION

IN RE:

**JSMITH CIVIL, LLC,**

**DEBTOR.**

CASE NO. 23-02734-5-JNC
CHAPTER 11

## MOTION FOR APPROVAL OF GLOBAL SETTLEMENT
## AND COMPROMISE WITH WESTFIELD INSURANCE COMPANY

**NOW COMES** JSMITH CIVIL, LLC ("JSC" and "Debtor"), by and through undersigned counsel of record and pursuant to § 105(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019, and hereby respectfully move this Court for entry of an Order allowing and approving the global settlement and compromise reached with WESTFIELD INSURANCE COMPANY ("Westfield" or "Defendant") (the Debtor and Westfield are collectively referred to herein as, the "Parties" and individually as, "Party"). In support hereof, the Debtor shows unto the Court as follows:

### JURISDICTION AND AUTHORITY

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 151, and 157, as it (a) arises in, and concerns, matters affecting the administration of bankruptcy estate in the above-captioned bankruptcy proceeding that was filed by the Debtor, see id. §157(b)(2)(A), (b) concerns the allowance or disallowance of claims against the bankruptcy estate, see id. § 157(b)(2)(B), (c) seeks an Order approving the compromise and settlement regarding claims that are property of the estate, see id. § 157(b)(2)(N), and (d) concerns rights duly established under the Bankruptcy Code. The relief sought herein, as a result, constitutes a "core proceeding," pursuant to 28 U.S.C. § 157(b)(2).

2. The Court, likewise, has the authority to hear this matter under the Standing Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

### FACTUAL BACKGROUND

3. The Debtor, a limited liability company organized and existing under the laws of the State of North Carolina, filed a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District

of North Carolina (the "Bankruptcy Court") on September 19, 2023 (the "Petition Date"), BK Case No. 23-02734-5-JNC (the "Bankruptcy Case").

4. Prior to the Petition Date, the Debtor and certain non-debtor third parties, including JEREMY A. SMITH ("Jeremy Smith"), TINA SMITH ("Tina Smith"), JSC HOLDINGS, LLC ("JSC Holdings"), JSC ENTERPRISES, LLC ("JSC Enterprises"), and/or SHELLEY A. MCPHATTER ("McPhatter"), BRIDGEPOINT GENERAL CONTRACTING, INC. ("BGC"), and BRIDGEPOINT CONSTRUCTION SERVICES ("BCS"), and David M. White ("White")[1] executed and delivered to Westfield, the following:

    A. Agreement of Indemnity executed by the Debtor and made effective as of May 8, 2018 (the "2018 Indemnity Agreement");

    B. Agreement of Indemnity executed by the Debtor and made effective as of May 21, 2019 (the "2019 Indemnity Agreement"); and

    C. Agreement of Indemnity executed by the Debtor and made effective as of May 1, 2020 (the "2020 Indemnity Agreement").

(collectively, the "Indemnity Agreements").

5. Purusant to the Indemnity Agreements, the Debtor agreed to indemnify Westfield, as surety under certain surety bonds, undertakings, guarantees, and other writings obligatory in the nature of a bond (the "Surety Bonds" or the "Bonds") from any and all liability for losses and/or expenses of whatsoever kind, including but not limited to interest, court costs, and counsel fees) and other losses that Westfield may sustain by reason of the Debtor and other third-party indemnitors failure to perform on any contracts covered by the Bonds (collectively, the "Bonded Projects").

6. As security therefore, the Indemnity Agreements granted Westfield a security interest in the following:

---

[1] McPhatter, BGC, BCS, and White are collectively referred to herein as, the "Other Indemnitors."

> i. All of such Indemnitor's real property, personal property, accounts, accounts receivable, notes receivable chattel paper, commercial tort claims, deposit accounts, documents, machinery, equipment, fixtures, instruments, inventory, investment property (including certificated and uncertificated securities), general intangibles, goods (including rights to returned or repossessed goods and rights of stoppage in transit), cash and cash equivalents, contract rights and claims, payment intangibles, and supporting obligations, agreements, and letter of credit rights, proceeds of letters of credit, promissory notes, records, software, franchises, customer lists, insurance receivables and refunds, tax refunds, tax refund claims, pension plan refunds, pension plan reversions, patents, patent applications, service marks, service mark applications, trademarks, trademark applications, trade names, trade secrets, goodwill, copyrights, copyright applications, and licenses; and
> ii. All supporting obligations of, attachments, accessions, parts and appurtenances to, substitutions for, replacements of, products and proceeds including cash proceeds, noncash proceeds and proceeds of any insurance of, any and all of the Collateral.

(the "Westfield Collateral"). Westfield, on Marh 29, 2023, filed a UCC Financing Statement with the North Carolina Secretary of State, File No. 2023004094211, to perfect its security interest, lien and encumbrance in the Westfield Collateral arising from the 2020 Indemnity Agreement (the "March 2023 Financing Statement"). Likewise, and on May 10, 2023, Westfield filed a UCC Financing Statement with the North Carolina Secretary of State, File No. 20230059889H, to perfect its security interest, lien, and encumbrance in the Westfield Collateral arising from the 2018 Indemnity Agreement and the 2019 Indemnity Agreement (the "May 2023 Financing Statement").

7. Prior to the filing of the Bankruptcy Case, Westfield had been arranging for and assisting Debtor in the performance of the completion of and performance of the Bonded Projects and, moreover, had been funding, directly or indirectly, payments to Debtor's subcontractors, suppliers, and others related to obligations on projects on which Westfield has issued Bonds, referred to herein as, the Bonded Projects.

8. Westfield incurred significant losses that currently exceed $35,000,000.00 through issuance of the Bonds and faces additional risk and exposure up to the aggregate penal sum of all the Bonds, totaling in excess of $200,000,000.00. Although the total amount of Westfield's loss cannot be determined at this time, it is unlikely that said losses will exceed $50,000,000.00.

9. Westfield, in the Bankruptcy Case, filed a proof of claim, Claim No. 41, asserting a secured claim of $111,777,977.42, representing one-half (1/2) of the total penal sums of the Bonds on which Westfield had received and/or anticipated receiving claims (the "Westfield POC").

10. The Other Indemnitors filed, in the Bankruptcy Case, proofs of claim, Claim Nos. 57, 58, 59, and 60 in the Bankruptcy Case, asserting claims against the Debtor in the amount of $20,518,751.64 (the "Other Indemnitors POCs"). As part of settlement and compromise between Westfield and the Other Indemnitors (the "Other Indemnitors Settlement"), the Other Indemnitors assigned, transferred, and conveyed to Westfield all rights, claims, demands, and interests against the Debtor and Debtor Affiliates arising from

3

or relating to the Indemnity Agreements, the Bonds, the business relationship between the Debtor and Debtor Affiliates (collectively or individually) and the Other Indemnitors (collectively or individually), or the sale of the Debtor, Holdings, Enterprises, and the interests therein to Jeremy Smith and/or Tina Smith (the "Other Indemnitors Assigned Claims").[2]

11. On March 18, 2024, the Debtor filed the Plan of Reorganization [D.E. 296] (the "Plan") and the Disclosure Statement [D.E. 297] that are currently before the Court, to which Westfield has objected. The hearing on confirmation of the Plan and approval of the Disclosure Statement is currently scheduled for July 30, 2024, in Greenville, North Carolina (the "Confirmation Hearing").

12. On April 2, 2024, and following the filing of the Plan and the Disclosure Statement, Westfield commenced a civil action with the United States District Court for the Eastern District of North Carolina captioned <u>Westfield Insurance Company v. JSC Holdings, LLC, Jeremy Smith, Tina Smith, Smith Holdings Land Trust, and JSmith Destination Management, LLC</u>, Civ. Action No. 5:24-cv-00202-FL, through the filing of a Complaint against JSC Holdings, Jeremy Smith, Tina Smith, JSC Holdings, JSC Enterprises, SMITH HOLDINGS LAND TRUST (the "Smith Trust"), and JSMITH DESTINATION MANAGEMENT, LLC ("JSC Destination") (Jeremy Smith, Tina Smith, JSC Holdings, JSC Enterprises, the Smith Trust, and JSC Destination are collectively referred to herein as, the "Debtor Affiliates") (collectively, the "Federal Litigation").

13. The Debtor Affiliates each dispute the allegations raised by Westfield in the Federal Litigation and do not believe that Westfield is entitled to, nor should it be awarded, any of the relief sought in the Federal Litigation.

14. Following commencement of the Federal Litigation, and prior to the Confirmation Hearing, the Debtor, Westfield, and the Debtor Affiliates (collectively, the "Parties"), and through their counsel, engaged in mediated settlement conference overseen by the Honorable Stephani W. Humrickhouse, Retired United States Bankruptcy Judge for the Eastern District of North Carolina, which culminated in a global resolution of the issues and controversies between the Debtor and Westfield in the Bankruptcy Case, as well as the Federal Litigation between Westfield and the Debtor Affiliates, including any and all of which have been, or could have been, asserted by and against one another (collectively, the "Claims"), and is memorialized in the *Settlement and Release Agreement* (the "Settlement

---

[2] The Other Indemnitors Assigned Claims include, but are not limited to, the right to prosecute and maintain the Other Indemnitors POCs that were filed in the Bankruptcy Case.

4

Agreement"), a copy of which is attached hereto as **EXHIBIT 1** and incorporated herein by reference.[3]

## SUMMARY OF SETTLEMENT AND RELIEF REQUESTED

15. The Parties have resolved all issues in dispute, including any and all relief and remedies sought and available in the Bankruptcy Case and the Federal Litigation pursuant to the Settlement Agreement, and in exchange for the following:

  A. <u>Treatment of Westfield POC in Bankruptcy Case.</u> The indebtedness and obligation owed by the Debtor to Westfield, evidenced by the Westfield POC and arising from the Indemnity Agreements, shall be treated as General Unsecured Claim in Class 18 of the Plan in an amount equal to $45,000,000.00 (the "Westfield General Unsecured Claim"), as the value of the Westfield Collateral, given the senior security interests of other Secured Creditors, including First-Citizens Bank & Trust Company ("FCB"), is not sufficient to support treatment of any portion of the Westfield POC as a secured claim in the Bankruptcy Case. Westfield shall, within thirty (30) days of the Effective Date of the Plan, cause the Westfield Financing Statements to be cancelled, removed, or otherwise terminated, as to the Debtor, and with the North Carolina Secretary of State.

  B. <u>Plan Support.</u> Westfield shall withdraw its objection to confirmation of the Plan and approval of the Disclosure Statement, and support confirmation of the Plan and approval of the Disclosure Statement, as amended and modified by the terms and provisions of the settlement and compromise set forth in the Settlement Agreement.

  C. <u>Waiver and Release of Claims and Causes of Action</u>. The Debtor Affiliates, the Debtor, and the Reorganized Debtor under any confirmed Plan in the Bankruptcy Case, shall not pursue any claims or causes of action, based on the Bankruptcy Code or otherwise, with respect to any of the Bonds, Bonded Projects, or contracts thereunder, including those claims for breach of contract, wrongful termination, claims for payment, avoidance actions, or other claims against (a) any obligee on any of the Bonds, (b) any subcontractor, supplier, laborer,

---

[3] The Parties, through counsel, have agreed to all of the terms and provisions of the Settlement Agreement; however, and despite their best efforts, the Settlement Agreement was not able to be fully executed prior to the filing of this *Motion for Approval of Global Settlement and Compromise with Westfield Insurance Company* (the "Settlement Motion"). The Debtor, upon receipt of a fully-executed copy of the Settlement Agreement, will supplement this Settlement Motion to provide the Court, creditors, and parties-in-interest with a fully-executed copy of the Settlement Agreement.

or other party for work performed, materials supplied, or services provided or payment related to a bonded project, or (c) any owner on any bonded project (the "Bonded Project Claims"). The Debtor Affiliates, the Debtor, and Westfield acknowledge and agree that the Bonded Project Claims are not property of the estate and such claims belong to Westfield.

D. <u>Settlement Payment Obligation by Jeremy Smith, Tina Smith, and JSC Destination.</u> Jeremy Smith, Tina Smith, and JSC Destination, jointly and severally (the "Settlement Payors"), shall pay or cause to be paid to the Westfield the total sum of $1,400,000.00 (the "Settlement Payment"), evidenced by a Promissory Note (the "Note") and payable as follows:

   (1) Any payments to Westfield from the Debtor pursuant to the Plan (the "Plan Payments") shall be credited dollar-for-dollar against the balance of the Note;

   (2) Westfield shall forebear from making demand or taking other action on the Note during the term of the Plan, if confirmed, while receiving Plan Payments from the Debtor or until an uncured default with respect to the Plan Payments, whichever occurs first, but in no event shall Westfield be required to forbear its rights under the Note beyond five (5) years after the Effective Date or in the event confirmation of the Plan is denied and the Bankruptcy Case dismissed or converted;

   (3) Upon completion of the Plan Payments pursuant to a confirmed Plan, an uncured default with respect to the Plan Payments, or denial of confirmation of the Plan and dismissal or conversion of the Bankruptcy Case, whichever occurs first, the remaining balance of the Note shall be amended and amortized and the balance will be paid to Westfield in equal monthly installments over the following five (5) years (the "Installment Payments" and each an "Installment Payment");

   (4) The Settlement Payors shall pay the first Installment Payment by the first available fifteenth (15th) day of the month following completion of the Plan Payments, an uncured default with respect to the Plan Payments, or denial of confirmation of the Plan and dismissal or conversion of the Bankruptcy Case, whichever occurs first, with each subsequent Installment

6

Payment becoming due and owing on the fifteenth of each month thereafter;

(5) The Settlement Payors' failure to make any Installment Payment within fifteen (15) days of becoming due shall constitute a "Default" under this Settlement Agreement;

(6) If the Settlement Payors are deemed to be in default under this Settlement Agreement, Westfield shall provide written notice to the Settlement Payors of the alleged default (the "Notice of Default") which shall afford the Settlement Payors seven (7) days from receipt thereof to cure any such default (the "Cure Period"); and

(7) To the extent the Settlement Payors fail to cure any default within the Cure Period, the entire unpaid portion of the Note shall become immediately due and owing and interest shall begin to accrue on any unpaid portion of the Note in the amount of the lesser of ten percent (10.0%) or the maximum legal rate of interest then in effect in the State of North Carolina; and

(8) Nothing herein shall prevent the Settlement Payors from prepaying all or a portion of the Note without penalty.

E. <u>Voluntary Dismissal with Prejudice of Federal Litigation.</u> Westfield shall cause the Federal Litigation to be dismissed, with prejudice, no later than fifteen (15) business days after the following: (A) Execution of the Settlement Agreement; (ii) Entry of an Order by the Bankruptcy Court approving the terms and conditions of the Settlement Agreement pursuant to Fed. R. Bankr. P. 9019; and (iii) Confirmation of the Plan, as amended herein.

F. <u>Release by Debtor and Debtor Affiliates.</u> The Debtor and Debtor Affiliates, on their own behalf, and on behalf of their agents, servants, employees, insurers, reinsurers, successors, affiliates, and assigns, hereby release, acquit, exonerate, and forever discharge Westfield and its agents, servants, employees, insurers, reinsurers, successors, affiliates, and assigns, from and against any and all defenses, actions, causes of action, claims and demands, for any and all damages, losses, and/or injuries that the Debtor or Debtor Affiliates possess or may possess against Westfield arising out of or relating to the Indemnity Agreements, the Bonds, any underlying bonded project or contract or right or interest thereto, and/or the Federal Litigation.

G. <u>Release by Westfield.</u> Effective as of, conditioned upon, and subject to (a) execution of the Note, (b) approval and confirmation of the Plan, and (c) the execution of this Agreement, Westfield, on its own behalf, and on behalf of its agents, servants, employees, insurers, reinsurers, successors, affiliates, and assigns, will release, acquit, exonerate, and forever discharge the Debtor and Debtor Affiliates, their agents, servants, employees, insurers, reinsurers, successors, affiliates, and assigns, from and against any and all actions, causes of action, claims, and demands for any and all damages, losses, and/or injuries that Westfield possesses or may possess against the Debtor and Debtor Affiliates (i) under or in relation to the Indemnity Agreements, the Bonds, any underlying bonded project or contract or right or interest thereto, and/or the Federal Litigation and/or (ii) without warranty, pursuant to the Other Indemnitors Assigned Claims.

H. <u>Warranty of Assets and Restrictions on Transfer of Property.</u> Jeremy Smith and Tina Smith provided a disclosure of assets and financial interests to Westfield as part of the negotiation of the Settlement Agreement, which they represent and warrant that the information provided is accurate and complete to the best of their knowledge and that they have disclosed all assets, rights, and interests with an individual value of greater than $25,000.00 of which they are aware. The remedy for a breach of this warranty is that the releases of Westfield as to the Debtor-Affiliates shall be void to the extent of the additional assets, rights, and interests not so disclosed. For avoidance of doubt, the remedy for a breach of this warranty provision shall be limited to the value of the undisclosed asset, right, or interest plus the reasonable attorneys' fees incurred by Surety in pursuit of its claims. JSC Destination is the owner of property located at 207 Smith Street, Atlantic Beach, NC 28512 (the "Smith Street Property") and the Debtor Affiliates, including JSC Destination, agree not to transfer or further encumber the Smith Street Property without the written consent of Westfield provided, however, Surety shall provide its written consent to the sale of the Smith Street Property **if** (a) the sale is to a party that has no personal, family, or business relationship to any of the Debtor Affiliates, (b) the sale price is the fair market value of the Smith Street Property, and (c) the net proceeds (after satisfaction of priority liens and closing costs) are paid to Westfield to be applied to the Note.

16. By and through this *Motion for Approval of Global Settlement and Compromise with Westfield Insurance Company* (the "Settlement Motion") and in

accordance with Federal Rule of Bankruptcy Procedure 9019(a), the Debtor respectfully requests that the Court enter an Order approving the settlement and compromise outlined in the attached Settlement Agreement, and further authorizing the Debtor, as well as Westfield, to undertake and otherwise engage in any and all actions necessary to effectuate and consummate the terms of the attached Settlement Agreement.

## BASIS FOR RELIEF REQUESTED

17. Section 105(a) of the Bankruptcy Code authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); see Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d Cir. 1994) ("It is well settled that bankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process.").

18. Federal Rule of Bankruptcy Procedure 9019(a) provides that "[o]n the motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a); 11 U.S.C. § 105(a). In determining whether to approve a proposed compromise, the court must evaluate whether it is fair, equitable, and in the best interests of the estate and its creditors. See, e.g., Protective Comm. of Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968); In re MQVP, Inc., No. 10-2225, 2012 WL 1233019, at *3 (6th Cir. Apr. 13, 2012) (unpublished) ("When determining whether to approve a proposed settlement . . . the bankruptcy court is charged with an affirmative obligation to apprise itself of the underlying facts and to make an independent judgment as to whether the compromise is fair and equitable." (citation and internal quotation marks omitted); accord In re Cajun Elec. Power Coop., Inc., 119 F.3d 349, 355 (5th Cir. 1997) ("Approval should only be given if the settlement is fair and equitable and in the best interest of the estate." (internal quotations omitted)). A compromise must be approved if it is the result of "an adequate and intelligent consideration of the merits of the claims, the difficulties of pursuing them, the potential harm to the debtor's estate caused by delay, and the fairness of the terms of the settlement." Anderson, 390 U.S. at 434.

19. The terms and conditions of the settlement and compromise reached between the Parties, memorialized in the Settlement Agreement (including the release of any claims between the Parties), should be approved by the Court pursuant to Fed. R. Bankr. P. 9019 because the compromise reached, and reflected and embodied in the Settlement Agreement, is fair, equitable, and in the best interests of the Debtor, the bankruptcy estate, creditors and parties in interest. The terms and provisions the Settlement Agreement are

the result of arms-length negotiations between the Parties and, with respect to the Debtor, represent a sound exercise of their business judgment and are otherwise consistent with the responsibilities and duties that are bestowed under the Bankruptcy Code.

20. The Debtor, Debtor Affiliates, and Westfield were each represented by separate and experienced counsel and the terms of the Settlement Agreement are the product of their collective judgment, experience and skill. Westfield was represented by Manier & Herod, P.C., who regularly represents sureties and bonding companies, as creditors, and in connection with bankruptcy-related matters and—based upon this experience—was familiar with the issues involved in the Bankruptcy Case, as well as the potential exposure of, and possible defenses that could be asserted both in the Bankruptcy Case and the Federal Litigation. As a result, the terms and provisions of the Settlement Agreement represent a fair, informed, and equitable compromise and resolution for the Parties involved.

21. The substantial benefits to the Debtor, the bankruptcy estate, creditors, and parties in interest, clearly outweigh any potential costs resulting from the settlement and compromise, including the substantial reduction of the Westfield POC, settlement of the Federal Litigation, and support of Westfield for confirmation of the Plan currently before the Court.

22. Had the Parties not agreed to the terms and conditions set forth in the Settlement Agreement and not compromised the dispute between them, there would have been continued and protracted, unnecessary and costly litigation on numerous issues, including a bifurcated confirmation process, additional evidentiary hearings, costs, expenses, and judicial involvement. Due to the complexity, expense and risks associated with litigating these and other issues in the Bankruptcy Case, the terms and conditions of the settlement and compromise reached, which completely resolve all issues between the Parties, are clearly in the best interests of the Debtor, the bankruptcy estate, parties in interest, and all creditors.

23. After consideration of the facts and circumstances of this matter, the Debtor believes that a compromise and settlement of this matter upon the terms proposed, is in the best interests of all involved, including the bankruptcy estate and creditors.

## **CONCLUSION**

**WHEREFORE,** and based on the foregoing, the Debtor respectfully requests that the Settlement Motion be **ALLOWED** and entry of an Order providing the following relief:

1. Approving the compromise and settlement reached between the Debtor and Westfield, memorialized in the Settlement Agreement attached hereto; and

2. Affording such further relief as the Court deems just and proper.

Respectfully submitted this, the 29th day of July, 2024.

**BUCKMILLER, BOYETTE & FROST, PLLC**

BY: s/ Joseph Z. Frost

JOSEPH Z. FROST
NCSB NO. 44387
jfrost@bbflawfirm.com

4700 Six Forks Road, Suite 150
Raleigh, North Carolina 27609
T: (919) 296-5040
F: (919) 977-7101

Counsel for Debtor JSmith Civil, LLC

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

IN RE:

JSMITH CIVIL, LLC,                      CASE NO. 23-02734-5-JNC
                                                       CHAPTER 11

        DEBTOR.

**NOTICE OF MOTION FOR APPROVAL OF GLOBAL SETTLEMENT**
**AND COMPROMISE WITH WESTFIELD INSURANCE COMPANY**

**NOTICE IS HEREBY GIVEN** of the **MOTION FOR APPROVAL OF GLOBAL SETTLEMENT AND COMPROMISE WITH WESTFIELD INSURANCE COMPANY** (the "Settlement Motion") filed by the Debtor JSMITH CIVIL, LLC (the "Debtor" or "JSC"), through his undersigned counsel in the above-captioned matter for the purpose of supplying all creditors and parties-in-interest with information reasonably calculated to allow an informed decision as to whether to support, object or abstain to the Settlement Motion, regarding approval of the settlement and compromise reached with WESTFIELD INSURANCE COMPANY ("Westfield") (the Debtor and Westfield are collectively referred to herein as, the "Parties" and individually as, "Party").

**THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA (THE "BANKRUPTCY COURT") HAS NOT REVIEWED THE INFORMATION PROVIDED IN THIS NOTICE OR THE SETTLEMENT MOTION AND HAS NOT OFFERED AN OPINION AS TO ITS ACCURACY, SUFFICIENCY OR COMPLETENESS. IT IS ANTICIPATED THAT THE BANKRUPTCY COURT MAY REVIEW THE DISCLOSURES MADE HEREIN AT THE HEARING IN CONSIDERATION OF THE MOTION. THE PURPOSE OF THIS NOTICE IS TO PROVIDE CREDITORS WITH INFORMATION CONCERNING THE DEBTOR AND THE PROPOSED SETTLEMENT IN ADVANCE THEREOF. THE DEBTOR, THROUGH UNDERSIGNED COUNSEL, WILL ATTEMPT TO RESPOND TO ALL REASONABLE INQUIRIES CONCERNING THE INFORMATION PROVIDED HEREIN. PARTIES IN INTEREST ARE ENCOURAGED TO SEEK THEADVICE OF COUNSEL TO MORE FULLY DETERMINE THEIR RIGHTS WITH RESPECT TO THE PROPOSED SETTLEMENT CONTEMPLATED HEREIN.**

**FURTHER NOTICE IS HEREBY GIVEN** that any objection to the Settlement Motion may be filed with the Clerk of the United States Bankruptcy Court for the Eastern District of North Carolina, with a copy served on the counsel for the Debtor, on or before **AUGUST 22, 2024** (the "Response/Objection Deadline")**,** and, if any such objections or responses are filed, a hearing

will be conducted on the Settlement Motion, and any response thereto to be scheduled by the Bankruptcy Court in Greenville, North Carolina. Any party objecting, responding, or requesting a hearing, shall appear at said hearing in support of such request or they may be assessed Court costs. If no request for a hearing is timely filed, the Court may rule on this Notice, the Settlement Motion and any response(s) or objection(s) thereto *ex parte* without further notice.

Respectfully submitted this, the 29th day of July, 2024.

**BUCKMILLER, BOYETTE & FROST, PLLC**

JOSEPH Z. FROST, NCSB No. 44387
jfrost@bbflawfirm.com

4700 Six Forks Road, Suite 150
Raleigh, North Carolina 27609
T: (919) 296-5040
F: (919) 977-7101

Counsel for Debtor JSmith Civil, LLC