# SETTLEMENT AND RELEASE AGREEMENT

THIS SETTLEMENT AND RELEASE AGREEMENT (the "Agreement") is made and entered into this 29th day of July, 2024 (the "Execution Date") by and among Westfield Insurance Company ("Surety"), JSmith Civil, LLC f/k/a BridgePoint Civil LLC ("JSC" or "Debtor"), Jeremey A. Smith, individually, ("Mr. Smith"), Tina W. Smith, individually, ("Ms. Smith"), JSC Holdings, LLC f/k/a BPC Holdings, LLC ("Holdings"), JSC Enterprises, LLC f/k/a BPC Enterprises, LLC ("Enterprises"), Smith Holdings Land Trust ("Land Trust"), and JSmith NC Destination Management, LLC ("Destination Management") (Mr. Smith, Ms. Smith, Holdings, Enterprises, Land Trust, and Destination Management, collectively, the "Debtor Affiliates") (Surety, Debtor, and Debtor Affiliates, collectively, the "Parties").

## W I T N E S S E T H:

WHEREAS, on or about May 8, 2018, Mr. Smith and Ms. Smith, each in their individual capacity, and the Debtor, Holdings, and Enterprises (Mr. Smith, Ms. Smith, Debtor, Holdings, and Enterprises, collectively, the "Debtor Affiliate Indemnitors"), along with Shelley A. McPhatter, in her individual capacity, ("Ms. McPhatter"), BridgePoint General Contracting, Inc. ("BGC"), and BridgePoint Construction Services ("BCS"), executed an Agreement of Indemnity (the "2018 Indemnity Agreement") as indemnitors thereunder for the benefit of Surety.

WHEREAS, on or about May 21, 2019, the Debtor Affiliate Indemnitors, along with Ms. McPhatter and David M. White, in his individual capacity ("Mr. White") (Ms. McPhatter, Mr. White, BGC, and BCS, collectively, the "Other Indemnitors") executed an Agreement of Indemnity (the "2019 Indemnity Agreement") as indemnitors thereunder for the benefit of Surety.

WHEREAS, on or about May 1, 2020, the Debtor Affiliate Indemnitors executed an Agreement of Indemnity (the "2020 Indemnity Agreement") (the 2020 Indemnity Agreement, 2019 Indemnity Agreement, and 2018 Indemnity Agreement, collectively, the "Indemnity Agreements") as indemnitors thereunder for the benefit of Surety. In reliance on the Indemnity Agreements, Surety issued certain surety bonds on behalf or at the request of the Debtor and/or certain of the Debtor Affiliates (the "Bonds")(a copy of those Bonds on which Surety has received and/or anticipates receiving claims are attached as Exhibit A).

WHEREAS, Surety has incurred significant losses that currently exceed $35,000,000 as a result of issuance of the Bonds and faces additional risk and exposure up to the aggregate penal sum of all the Bonds, which totals in in excess of Two Hundred Million Dollars ($200,000,000).

WHEREAS, on September 19, 2023, the Debtor filed for chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court") under case no. 23-02734 (the "Bankruptcy Case").

WHEREAS, prior to the filing of the Bankruptcy Case, Surety had been funding, directly or indirectly, payments to Debtor's subcontractors, suppliers, and others related to obligations on projects on which Surety has issued Bonds (the "Bonded Projects").

EXHIBIT 1

WHEREAS, prior to filing of the Bankruptcy Case, Surety had been arranging for and assisting Debtor in the performance of the completion of and performance of the Bonded Projects.

WHEREAS, the Debtor acknowledges that payments made to its subcontractors, suppliers, and others on the Bonded Projects during the preference period preceding the filing of the Bankruptcy Case did not deplete or otherwise come from the Debtor's assets and that, by Surety's performance, its right of equitable subrogation entitled Surety to all claims against obligees on the Bonds (including claims for breach of the bonded contracts).

WHEREAS, Surety filed a Proof of Claim (Claim No. 41) in the Bankruptcy Case stating a claim of $111,777,977.42, which amount represented one half of the total penal sums of the Bonds on which Surety had received and/or anticipated receiving claims (the "Surety Proof of Claim"). WHEREAS, the total amount of Surety's loss cannot be determined at this time, but Surety and Debtor agree that it is unlikely that Surety's losses will exceed Fifty-Million Dollars ($50,000,000).

WHEREAS, Surety and the Debtor have agreed to reduce, estimate, and fix Surety's total claim in the amount of Forty-Five Million Dollars ($45,000,000) representing a combination of Surety's losses to date, the value of the Other Indemnitors Assigned Claims (defined below), and less than five percent (5%) of the total remaining exposure under the Bonds (the "Surety Claim").

WHEREAS, Surety and the Other Indemnitors executed that certain Settlement and Release Agreement (the "Other Indemnitors Settlement"), resolving Surety's claims against the Other Indemnitors under the 2018 Indemnity Agreement and 2019 Indemnity Agreement with respect to the Surety Claim.

WHEREAS, the Other Indemnitors and/or certain of them filed Proofs of Claim Number 57, 58, 59, and 60 in the Bankruptcy Case, each asserting a claim against the Debtor in the amount of $20,518,751.64 (the "Other Indemnitors Proof of Claim").

WHEREAS, as part of the Other Indemnitors Settlement, the Other Indemnitors assigned, transferred, and conveyed to Surety all rights, claims, demands, and interests against the Debtor and Debtor Affiliate Indemnitors arising from or relating to the Indemnity Agreements, the Bonds, the business relationship between the Debtor and Debtor Affiliates (collectively or individually) and the Other Indemnitors (collectively or individually), or the sale of the Debtor, Holdings, Enterprises, and the interests therein to Mr. Smith and/or Ms. Smith (the "Other Indemnitors Assigned Claims"). The Other Indemnitors Assigned Claims includes the right to prosecute said claims in the Bankruptcy Case.

WHEREAS, on March 18, 2024, the Debtor filed its Plan of Reorganization (collectively with any amendments thereto, the "Plan") that it asserts is confirmable under section 1129 of the Bankruptcy Code.

WHEREAS, on May 2, 2024, Surety filed its Objection to Confirmation of the Debtor's Plan of Reorganization, contending that the Plan does not satisfy the requirements for confirmation pursuant to section 1129 of the Bankruptcy Code (the "Plan Objection").

WHEREAS, on April 2, 2024, Surety filed a complaint against the Debtor Affiliates in the United States District Court for the Eastern District of North Carolina under case no. 5:24-CV-00202 (the "Debtor Affiliate Suit"), alleging various causes of action (a) related to the Indemnity Agreements and (b) the avoidance of various fraudulent transfers of real property and related judgments.

WHEREAS, the Debtor Affiliates each dispute the allegations raised by Surety in the Debtor Affiliate Suit.

WHEREAS, the Debtor Affiliates are unwilling to proceed with the sale contemplated in the Plan unless the claims against it as asserted by Surety are settled and, therefore, the compromise and settlement set forth in this Agreement is significant consideration to the consummation of the Plan.

WHEREAS, notwithstanding the foregoing disagreements regarding the Plan and the Debtor Affiliate Suit and because of same, the Parties wish to reach a global resolution of the Plan Objection and Debtor Affiliate Suit.

NOW, THEREFORE, in consideration of these premises and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. <u>Treatment of Surety's Bankruptcy Claim</u>: Surety shall reduce and compromise its claim against the Debtor and shall accept and have an allowed general unsecured claim for the Surety Claim, Forty-Five Million Dollars ($45,000,000), in the Bankruptcy Case to be paid by the Debtor's estate over a period of five (5) years pursuant to and subject to the Plan as confirmed by the Bankruptcy Court.

2. <u>Settlement Payment</u>: Mr. Smith, Ms. Smith, and Destination Management, jointly and severally (the "Settlement Payors"), shall pay or cause to be paid to the Surety the total sum of One Million Four Hundred Thousand Dollars ($1,400,000) (the "Settlement Payment") in exchange for the consideration and releases set forth herein. The Settlement Payors will execute a promissory note for the amount of the Settlement Payment payable on demand (the "Note"). The Note shall be paid as follows:

   a. Any payments to Surety from the Debtor's estate pursuant to the Plan (the "Plan Payments") shall be credited dollar-for-dollar against the balance of the Note;

   b. Surety shall forebear from making demand or taking other action on the Note during the life of the Plan, if confirmed, while receiving Plan Payments from the Debtor's estate or until an uncured default with respect to the Plan Payments, whichever occurs first, but in no event shall Surety be required to forbear its rights under the Note beyond five (5) years after the effective date of the confirmed Plan or in the event the Plan is denied and the Bankruptcy Case dismissed or converted;

c. Upon completion of the Plan Payments pursuant to a confirmed Plan, an uncured default with respect to the Plan Payments, or denial of the Plan and dismissal or conversion of the Bankruptcy Case, whichever occurs first, the remaining balance of the Note shall be amended and amortized and the balance will be paid to Surety in equal monthly installments over the following five (5) years (the "Installment Payments" and each an "Installment Payment");

d. The Settlement Payors shall pay the first Installment Payment by the first available fifteenth day of the month following completion of the Plan Payments, an uncured default with respect to the Plan Payments, or denial of the Plan and dismissal or conversion of the Bankruptcy Case, whichever occurs first, with each subsequent Installment Payment becoming due and owing on the fifteenth of each month thereafter;

e. The Settlement Payors' failure to make any Installment Payment within fifteen (15) days of becoming due shall constitute a "Default" under this agreement;

f. If the Settlement Payors are deemed to be in Default under this Agreement, Surety shall provide written notice to the Settlement Payors of the alleged Default (the "Notice of Default") which shall afford the Settlement Payors seven (7) days from receipt of the Notice of Default to cure such Default;

g. To the extent the Settlement Payors fail to "Cure" any Default within seven (7) days of the receipt of a Notice of Default, the entire unpaid portion of the Note shall become immediately due and owing and interest shall begin to accrue on any unpaid portion of the Note in the amount of the lesser of ten percent (10.0%) or the maximum legal rate of interest then in effect in the State of North Carolina.

h. Nothing herein shall prevent the Settlement Payors from prepaying all or a portion of the Note without penalty.

3. <u>Estate Claims and Causes of Action</u>: The Debtor Affiliates, the Debtor's estate, and the reorganized Debtor shall not pursue any claims or causes of action, based on the Bankruptcy Code or otherwise, with respect to any of the Bonds, Bonded Projects, or contracts thereunder, including those claims for breach of contract, wrongful termination, claims for payment, avoidance actions, or other claims against (a) any obligee on any of the Bonds, (b) any subcontractor, supplier, laborer, or other party for work performed, materials supplied, or services provided or payment related to a bonded project, or (c) any owner on any bonded project (the "Bonded Project Claims"). The Debtor Affiliates, the Debtor, and Surety acknowledge and agree that the Bonded Project Claims are not property of the Bankruptcy Estate and such claims belong to Surety. The Plan will be modified to reflect the terms of this Agreement.

4. <u>Plan Support</u>: Surety shall withdraw its Plan Objection either within fifteen (15) business days of the entry of an order from the Bankruptcy Court approving this Agreement or, if approval of this Agreement and confirmation of the Plan are considered at the same hearing, upon the Bankruptcy Court's oral approval of this Agreement, whichever occurs first.

5.      Dismissal of the Debtor Affiliate Suit: Surety shall cause the dismissal of the Debtor Affiliate Suit with prejudice within fifteen (15) business days after (a) execution of this Agreement by the Parties, (b) entry of an order from the Bankruptcy Court approving this Agreement, and (c) final, unappealable confirmation of the Plan.

6.      Release by Surety: Effective as of, conditioned upon, and subject to (a) execution of the Note, (b) approval of the Plan, and (c) the execution of this Agreement, Surety, on its own behalf, and on behalf of its agents, servants, employees, insurers, reinsurers, successors, affiliates, and assigns, will release, acquit, exonerate, and forever discharge the Debtor and Debtor Affiliates, their agents, servants, employees, insurers, reinsurers, successors, affiliates, and assigns, from and against any and all actions, causes of action, claims, and demands for any and all damages, losses, and/or injuries that Surety possesses or may possess against the Debtor and Debtor Affiliates (i) under or in relation to the Indemnity Agreements, the Bonds, any underlying bonded project or contract or right or interest thereto, and/or the Debtor Affiliate Lawsuit and/or (ii) without warranty, pursuant to the Other Indemnitors Assigned Claims.

7.      Warranty of Assets and Agreement not to Transfer Property: Mr. Smith and Ms. Smith have provided a disclosure of assets and financial interests to Surety as part of the negotiation of this Agreement. Mr. Smith and Ms. Smith represent and warrant that the information provided is accurate and complete to the best of their knowledge and that they have disclosed all assets, rights, and interests with an individual value of greater than $25,000 of which they are aware. The remedy for a breach of this warranty is that the releases of Surety by the Indemnitors shall be void to the extent of the additional assets, rights, and interests not so disclosed. For avoidance of doubt, the remedy for a breach of this warranty provision shall be limited to the value of the undisclosed asset, right, or interest plus the reasonable attorneys' fees incurred by Surety in pursuit of its claims. Destination Management is the owner of property located at 207 Smith Street, Atlantic Beach, NC 28512 (the "Smith Street Property") and the Debtor Affiliates, including Destination Management, agree not to transfer or further encumber the Smith Street Property without the written consent of Surety provided, however, Surety shall provide its written consent to the sale of the Smith Street Property **if** (a) the sale is to a party that has no personal, family, or business relationship to any of the Debtor Affiliates, (b) the sale price is the fair market value of the Smith Street Property, and (c) the net proceeds (after satisfaction of priority liens and closing costs) are paid to Surety to be applied to the Note.

8.      Release by the Debtor and Debtor Affiliates: The Debtor and Debtor Affiliates, on their own behalf, and on behalf of their agents, servants, employees, insurers, reinsurers, successors, affiliates, and assigns, hereby release, acquit, exonerate, and forever discharge Surety and its agents, servants, employees, insurers, reinsurers, successors, affiliates, and assigns, from and against any and all defenses, actions, causes of action, claims and demands, for any and all damages, losses, and/or injuries that the Debtor or Debtor Affiliates possess or may possess against Surety arising out of or relating to the Indemnity Agreements, the Bonds, any underlying bonded project or contract or right or interest thereto, and/or the Debtor Affiliate Lawsuit.

9.      Default under this Agreement: The Settlement Payors fully understand and acknowledge that their failure to timely make any one of the Installment Payments in accordance

5

with Paragraph 2 of this Agreement constitutes a Default under this Agreement. The Settlement Payors further fully understand and acknowledge that upon an Event of a Default under this Agreement, and after providing Notice of Default and opportunity to Cure as provided for in Paragraph 2, Surety shall have the right, in its sole discretion, to seek the full amount of the Note, less any payments received from the Plan Payments as set forth in Paragraph 2 or to pursue recovery of the full Surety Claim. Further, in the event any one of the Settlement Payors initiates bankruptcy proceedings or is the subject of receivership proceedings, the full amount of the Note, less any payments received from the Plan Payments as set forth in Paragraph 2, shall be immediately due and payable as to the Settlement Payor that initiates the bankruptcy proceeding or is the subject of a receivership.

10. <u>Counterparts</u>: This Agreement may be executed by the Parties independently in any number of counterparts, all of which together will constitute but one and the same instrument, which is valid and effective as if all parties had executed the same counterpart. Furthermore, (a) this Agreement may be transmitted between the parties by facsimile machine or electronic mail, (b) this Agreement may be executed by facsimile or scan and electronically mailed signatures, and (c) facsimile or scan and electronically mailed signature shall have the effect of an original signature relative to this Agreement.

11. <u>No Assignment</u>: The Parties agree that they have not assigned any portion or portions of their claims against the other Parties to this Agreement to any persons or entities.

12. <u>Governing Law</u>: This Agreement, and any rights, remedies, or obligations provided for hereunder shall be interpreted and enforced in accordance with the laws of the State of North Carolina. Any suit filed to enforce this Agreement shall be brought in the Bankruptcy Court, which retains jurisdiction.

13. <u>Entire Agreement</u>: This Agreement constitutes the entire agreement of the Parties with respect to the issues specifically addressed herein and supersedes and replaces any prior communications, written or oral, among the Parties with respect to the subject matter.

14. <u>Severability of Provisions of Agreement</u>: The unenforceability or invalidity of any provision of this Agreement shall not affect the enforceability or validity of any other provision herein, and the invalidity or unenforceability of any provision of this Agreement as to any person, entity, or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons, entities, or circumstances.

15. <u>Bankruptcy Court Approval</u>: **This Agreement is conditioned upon approval by the Bankruptcy Court. The Debtor shall file a motion in the Bankruptcy Court for approval of this Agreement within fifteen (15) business days of the Execution Date. Notwithstanding the confirmation of the Plan or denial thereof and dismissal of the Bankruptcy Case, this Agreement shall become effective as of the entry of an order from the Bankruptcy Court approving this Agreement or, if approval of this Agreement and confirmation of the Plan are considered at the same hearing, upon the Bankruptcy Court's oral approval of this Agreement, whichever occurs first (the "Effective Date").**

**IN WITNESS THEREOF**, the parties hereto have executed this Agreement on the Effective Date.

*[Signature Pages to Follow]*

# Westfield Insurance Company

By: _____
Daniel Pentecost
Surety Bond Claims Manager

STATE OF OHIO

COUNTY OF _____

    Personally appeared before me, the undersigned, a Notary Public in and for said county and state, Daniel Pentecost, with whom I am personally acquainted, and who acknowledged that he executed this instrument in his capacity as an authorized agent of Westfield Insurance Company, for the purposes therein contained.

    Witness my hand at _____, _____ this the _____ day of _____, 2024.

_____
Notary Public

**JSmith Civil LLC**

By: _____

Its: _____

STATE OF _____

COUNTY OF _____

    Personally appeared before me, the undersigned, a Notary Public in and for said county and state, _____, with whom I am personally acquainted, and who acknowledged that he executed this instrument in his capacity as an authorized agent of JSmith Civil LLC for the purposes therein contained.

    Witness my hand at _____, _____ this the _____ day of _____, 2024.

_____
Notary Public

_____
**Jeremy A. Smith, Individually**

STATE OF _____

COUNTY OF _____

      Personally appeared before me, the undersigned, a Notary Public in and for said county and state, Jeremy Smith, with whom I am personally acquainted, and who executed this Agreement for the purposes therein contained.

      Witness my hand at _____, _____ this the _____ day of _____, 2024.

_____
Notary Public

 

_____

**Tina W. Smith, Individually**

STATE OF _____

COUNTY OF _____

  Personally appeared before me, the undersigned, a Notary Public in and for said county and state, Tina Smith, with whom I am personally acquainted, and who executed this Agreement for the purposes therein contained.

  Witness my hand at _____, _____ this the _____ day of _____, 2024.

_____
Notary Public

**JSC Holdings, LLC f/k/a BPC Holdings, LLC**

By: _____

Its: _____

STATE OF _____

COUNTY OF _____

     Personally appeared before me, the undersigned, a Notary Public in and for said county and state, _____, with whom I am personally acquainted, and who acknowledged that he executed this instrument in his capacity as an authorized agent of JSC Holdings, LLC f/k/a BPC Holdings, LLC for the purposes therein contained.

     Witness my hand at _____, _____ this the _____ day of _____, 2024.

_____
Notary Public

**JSC Enterprises, LLC f/k/a BPC Enterprises, LLC**

By: _____

Its: _____

STATE OF _____

COUNTY OF _____

  Personally appeared before me, the undersigned, a Notary Public in and for said county and state, _____, with whom I am personally acquainted, and who acknowledged that he executed this instrument in his capacity as an authorized agent of JSC Enterprises, LLC f/k/a BPC Enterprises, LLC for the purposes therein contained.

  Witness my hand at _____, _____ this the _____ day of _____, 2024.

_____
Notary Public

**Smith Holdings Land Trust**

By: _____

Its: _____

STATE OF _____

COUNTY OF _____

    Personally appeared before me, the undersigned, a Notary Public in and for said county and state, _____, with whom I am personally acquainted, and who acknowledged that she executed this instrument in her capacity as trustee for the Smith Holdings Land Trust for the purposes therein contained.

    Witness my hand at _____, _____ this the _____ day of _____, 2024.

_____
Notary Public

                        **JSmith NC Destination Management, LLC**

                        By: _____

                        Its: _____

STATE OF _____

COUNTY OF _____

      Personally appeared before me, the undersigned, a Notary Public in and for said county and state, _____, with whom I am personally acquainted, and who acknowledged that he executed this instrument in his capacity as an authorized agent of JSmith NC Destination Management, LLC for the purposes therein contained.

      Witness my hand at _____, _____ this the _____ day of _____, 2024.

                                       _____
                                       Notary Public