**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

IN RE:

JSMITH CIVIL, LLC,

CASE NO. 23-02734-5-JNC
CHAPTER 11

DEBTOR.

---

**ORDER ALLOWING MOTION FOR APPROVAL OF GLOBAL SETTLEMENT AND COMPROMISE WITH WESTFIELD INSURANCE COMPANY**

---

**THIS MATTER** coming before the Court upon the Motion for Approval of Global Settlement and Compromise with Westfield Insurance Company [D.E.   ] (the "Settlement Motion") filed by Debtor-Plaintiff JSMITH CIVIL, LLC ("JSC"), seeking approval of the global settlement and compromise reached with WESTFIELD INSURANCE COMPANY ("Westfield"), regarding the claims and disputes arising in, and relating to, the above-captioned bankruptcy proceeding.

The Debtor and Westfield desire to fully compromise, finally settle, and fully release all claims, disputes and differences against one another and have agreed to resolve this matter as set forth herein.  The entry of this Order, however, constitutes neither a retraction of any claims made,  nor an admission of any liability and/or any wrongdoing by any of the parties involved.

Based upon the record, and based upon the agreement reached between the Parties, the Court makes the following **FINDINGS OF FACT** and **CONCLUSIONS OF LAW**:

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Likewise, this Court possesses the authority to hear and adjudicate this matter pursuant to the General Order of

Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

2. The Debtor, a limited liability company organized and existing under the laws of the State of North Carolina, filed a voluntary petition with the United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court" or "Court") seeking relief under chapter 11 of the Bankruptcy Code on September 19, 2023 (the "Petition Date"), BK Case No. 23-02734-5-JNC (the "Bankruptcy Case").

3. Prior to the Petition Date, the Debtor and certain non-debtor third parties, including JEREMY A. SMITH ("Jeremy Smith"), TINA SMITH ("Tina Smith"), JSC HOLDINGS, LLC ("JSC Holdings"), JSC ENTERPRISES, LLC ("JSC Enterprises"), and/or SHELLEY A. MCPHATTER ("McPhatter"), BRIDGEPOINT GENERAL CONTRACTING, INC. ("BGC"), and BRIDGEPOINT CONSTRUCTION SERVICES ("BCS"), and David M. White ("White")[1] executed and delivered to Westfield, the following:

- A. Agreement of Indemnity executed by the Debtor and made effective as of May 8, 2018 (the "2018 Indemnity Agreement");

- B. Agreement of Indemnity executed by the Debtor and made effective as of May 21, 2019 (the "2019 Indemnity Agreement"); and

- C. Agreement of Indemnity executed by the Debtor and made effective as of May 1, 2020 (the "2020 Indemnity Agreement").

(collectively, the "Indemnity Agreements").

4. Purusant to the Indemnity Agreements, the Debtor agreed to indemnify Westfield, as surety under certain surety bonds, undertakings, guarantees, and other writings obligatory in the nature of a bond (the "Surety Bonds" or the "Bonds") from any and all liability for losses and/or expenses of whatsoever kind, including but not limited to interest, court costs, and counsel fees) and other losses that Westfield may sustain by reason of the Debtor and other third-party indemnitors failure to perform on any contracts covered by the Bonds (collectively, the "Bonded Projects").

5. As security therefore, the Indemnity Agreements granted Westfield a security interest in the following:

---

[1] McPhatter, BGC, BCS, and White are collectively referred to herein as, the "Other Indemnitors."

> i. All of such Indemnitor's real property, personal property, accounts, accounts receivable, notes receivable chattel paper, commercial tort claims, deposit accounts, documents, machinery, equipment, fixtures, instruments, inventory, investment property (including certificated and uncertificated securities), general intangibles, goods (including rights to returned or repossessed goods and rights of stoppage in transit), cash and cash equivalents, contract rights and claims, payment intangibles, and supporting obligations, agreements, and letter of credit rights, proceeds of letters of credit, promissory notes, records, software, franchises, customer lists, insurance receivables and refunds, tax refunds, tax refund claims, pension plan refunds, pension plan reversions, patents, patent applications, service marks, service mark applications, trademarks, trademark applications, trade names, trade secrets, goodwill, copyrights, copyright applications, and licenses; and
> ii. All supporting obligations of, attachments, accessions, parts and appurtenances to, substitutions for, replacements of, products and proceeds including cash proceeds, noncash proceeds and proceeds of any insurance of, any and all of the Collateral.

(the "Westfield Collateral"). Westfield, on Marh 29, 2023, filed a UCC Financing Statement with the North Carolina Secretary of State, File No. 2023004094211, to perfect its security interest, lien and encumbrance in the Westfield Collateral arising from the 2020 Indemnity Agreement (the "March 2023 Financing Statement"). Likewise, and on May 10, 2023, Westfield filed a UCC Financing Statement with the North Carolina Secretary of State, File No. 20230059889H, to perfect its security interest, lien, and encumbrance in the Westfield Collateral arising from the 2018 Indemnity Agreement and the 2019 Indemnity Agreement (the "May 2023 Financing Statement").

6. Prior to the filing of the Bankruptcy Case, Westfield had been arranging for and assisting Debtor in the performance of the completion of and performance of the Bonded Projects and, moreover, had been funding, directly or indirectly, payments to Debtor's subcontractors, suppliers, and others related to obligations on projects on which Westfield has issued Bonds, referred to herein as, the Bonded Projects.

7. Westfield incurred significant losses that currently exceed $35,000,000.00 through issuance of the Bonds and faces additional risk and exposure up to the aggregate penal sum of all the Bonds, totaling in excess of $200,000,000.00. Although the total amount of Westfield's loss cannot be determined at this time, it is unlikely that said losses will exceed $50,000,000.00.

8. Westfield, in the Bankruptcy Case, filed a proof of claim, Claim No. 41, asserting a secured claim of $111,777,977.42, representing one-half (1/2) of the total penal sums of the Bonds on which Westfield had received and/or anticipated receiving claims (the "Westfield POC").

9. The Other Indemnitors filed, in the Bankruptcy Case, proofs of claim, Claim Nos. 57, 58, 59, and 60 in the Bankruptcy Case, asserting claims against the Debtor in the amount of $20,518,751.64 (the "Other Indemnitors POCs"). As part of settlement and compromise between Westfield and the Other Indemnitors (the "Other Indemnitors

3

Settlement"), the Other Indemnitors assigned, transferred, and conveyed to Westfield all rights, claims, demands, and interests against the Debtor and Debtor Affiliates arising from or relating to the Indemnity Agreements, the Bonds, the business relationship between the Debtor and Debtor Affiliates (collectively or individually) and the Other Indemnitors (collectively or individually), or the sale of the Debtor, Holdings, Enterprises, and the interests therein to Jeremy Smith and/or Tina Smith (the "Other Indemnitors Assigned Claims").[2]

10. On March 18, 2024, the Debtor filed the Plan of Reorganization [D.E. 296] (the "Plan") and the Disclosure Statement [D.E. 297] that are currently before the Court, to which Westfield has objected. The hearing on confirmation of the Plan and approval of the Disclosure Statement is currently scheduled for July 30, 2024, in Greenville, North Carolina (the "Confirmation Hearing").

11. On April 2, 2024, and following the filing of the Plan and the Disclosure Statement, Westfield commenced a civil action with the United States District Court for the Eastern District of North Carolina captioned <u>Westfield Insurance Company v. JSC Holdings, LLC, Jeremy Smith, Tina Smith, Smith Holdings Land Trust, and JSmith Destination Management, LLC</u>, Civ. Action No. 5:24-cv-00202-FL, through the filing of a Complaint against JSC Holdings, Jeremy Smith, Tina Smith, JSC Holdings, JSC Enterprises, SMITH HOLDINGS LAND TRUST (the "Smith Trust"), and JSMITH DESTINATION MANAGEMENT, LLC ("JSC Destination") (Jeremy Smith, Tina Smith, JSC Holdings, JSC Enterprises, the Smith Trust, and JSC Destination are collectively referred to herein as, the "Debtor Affiliates") (collectively, the "Federal Litigation").

12. The Debtor Affiliates each dispute the allegations raised by Westfield in the Federal Litigation and do not believe that Westfield is entitled to, nor should it be awarded, any of the relief sought in the Federal Litigation.

13. Following commencement of the Federal Litigation, and prior to the Confirmation Hearing, the Debtor, Westfield, and the Debtor Affiliates (collectively, the "Parties"), and through their counsel, engaged in mediated settlement conference overseen by the Honorable Stephani W. Humrickhouse, Retired United States Bankruptcy Judge for the Eastern District of North Carolina, which culminated in a global resolution of the issues and controversies between the Debtor and Westfield in the Bankruptcy Case, as well as the Federal Litigation between Westfield and the Debtor Affiliates, including any and all of which have been, or could have been, asserted by and against one another (collectively, the "Claims"), and is memorialized in the Settlement and Release

---

[2] The Other Indemnitors Assigned Claims include, but are not limited to, the right to prosecute and maintain the Other Indemnitors POCs that were filed in the Bankruptcy Case.

Agreement (the "Settlement Agreement"), a copy of which was attached to the Settlement Motion, as supplemented and modified, as Exhibit 1 and is incorporated herein by reference.

14. Based upon the foregoing, and the record in the Bankruptcy Case and the Adversary Proceeding, the settlement and resolution memorialized in the Settlement Agreement a sound exercise of the business judgment of the Debtor, and is otherwise in the best interests of the Debtor, the bankruptcy estate, creditors, and parties interest, and should be approved pursuant to Fed. R. Bankr. P. 9019.

**NOW THEREFORE,** based on the foregoing, including the agreement of the Parties memorialized in the Settlement Agreement, **IT IS HEREBY ORDERED, ADJUDGED, and DECREED** as follows

1. The Settlement Motion is **ALLOWED** and the compromise and settlement with Westfield and memorialized in the Settlement Motion and accompanying Settlement Agreement, is hereby **APPROVED.**

2. The Debtor, Westfield, and Debtor Affiliates shall be authorized to execute any and all formal documents and undertake any additional measures in order to implement the terms and provisions of this Order, which will formalize the settlement and resolution of any claims and disputes in the Bankruptcy Case and the Federal Litigation with respect to Debtor Affiliates, and provide the Parties with the requisite releases of any and all claims they may have against one another in the Bankruptcy Case and/or the Federal Litigation.

3. The Court shall retain jurisdiction to interpret, construe, enforce, or resolve any disputes or controversies arising from or related to, this Order and the Settlement Agreement.

**END OF DOCUMENT**