## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

IN RE:

**JSMITH CIVIL, LLC,**

           **DEBTOR.**

**CASE NO. 23-02734-5-JNC**
**CHAPTER 11**

---

### SUPPLEMENT TO MOTION FOR APPROVAL OF GLOBAL SETTLEMENT AND COMPROMISE WITH WESTFIELD INSURANCE COMPANY

---

JSMITH CIVIL, LLC ("JSC" and "Debtor"), by and through undersigned counsel of record and pursuant to § 105(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019, and hereby supplements the previously-filed Motion for Approval of Global Settlement and Compromise with Westfield Insurance Company [D.E. 404] (the "Settlement Motion"), through the submission of a fully-executed copy of the Settlement attached hereto as **EXHIBIT 2** and incorporated herein by reference.[1]

Respectfully submitted this, 31st day of July, 2024.

**BUCKMILLER, BOYETTE & FROST, PLLC**

BY:   s/ Joseph Z. Frost          
JOSEPH Z. FROST, NCSB NO. 44387
jfrost@bbflawfirm.com
4700 Six Forks Road, Suite 150
Raleigh, North Carolina 27609
T: (919) 296-5040
F: (919) 977-7101

Counsel for the Debtor JSmith Civil, LLC

---

[1] Also attached hereto is a revised *Proposed Order Allowing Motion for Approval of Settlement and Compromise with Westfield Insurance Company* (the "Revised Proposed Order").

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby declares and certifies, under penalty of perjury and subject to 28 U.S.C. § 1746, that on this date, a copy of the foregoing **SUPPLEMENT TO MOTION FOR APPROVAL OF GLOBAL SETTLEMENT AND COMPROMISE WITH WESTFIELD INSURANCE COMPANY** was electronically filed utilizing the CM/ECF system, notification of which was remitted to all ECF participants in the above-captioned bankruptcy proceeding.

Executed this, the 31st day of July, 2024.

 s/ Joseph Z. Frost
JOSEPH Z. FROST, NCSB No. 44387
jfrost@bbflawfirm.com
BUCKMILLER, BOYETTE & FROST, PLLC
4700 Six Forks Road, Suite 150
Raleigh, North Carolina 27609

# SETTLEMENT AND RELEASE AGREEMENT

THIS SETTLEMENT AND RELEASE AGREEMENT (the "Agreement") is made and entered into this 29th day of July, 2024 (the "Execution Date") by and among Westfield Insurance Company ("Surety"), JSmith Civil, LLC f/k/a BridgePoint Civil LLC ("JSC" or "Debtor"), Jeremey A. Smith, individually, ("Mr. Smith"), Tina W. Smith, individually, ("Ms. Smith"), JSC Holdings, LLC f/k/a BPC Holdings, LLC ("Holdings"), JSC Enterprises, LLC f/k/a BPC Enterprises, LLC ("Enterprises"), Smith Holdings Land Trust ("Land Trust"), and JSmith NC Destination Management, LLC ("Destination Management") (Mr. Smith, Ms. Smith, Holdings, Enterprises, Land Trust, and Destination Management, collectively, the "Debtor Affiliates") (Surety, Debtor, and Debtor Affiliates, collectively, the "Parties").

## W I T N E S S E T H:

WHEREAS, on or about May 8, 2018, Mr. Smith and Ms. Smith, each in their individual capacity, and the Debtor, Holdings, and Enterprises (Mr. Smith, Ms. Smith, Debtor, Holdings, and Enterprises, collectively, the "Debtor Affiliate Indemnitors"), along with Shelley A. McPhatter, in her individual capacity, ("Ms. McPhatter"), BridgePoint General Contracting, Inc. ("BGC"), and BridgePoint Construction Services ("BCS"), executed an Agreement of Indemnity (the "2018 Indemnity Agreement") as indemnitors thereunder for the benefit of Surety.

WHEREAS, on or about May 21, 2019, the Debtor Affiliate Indemnitors, along with Ms. McPhatter and David M. White, in his individual capacity ("Mr. White") (Ms. McPhatter, Mr. White, BGC, and BCS, collectively, the "Other Indemnitors") executed an Agreement of Indemnity (the "2019 Indemnity Agreement") as indemnitors thereunder for the benefit of Surety.

WHEREAS, on or about May 1, 2020, the Debtor Affiliate Indemnitors executed an Agreement of Indemnity (the "2020 Indemnity Agreement") (the 2020 Indemnity Agreement, 2019 Indemnity Agreement, and 2018 Indemnity Agreement, collectively, the "Indemnity Agreements") as indemnitors thereunder for the benefit of Surety. In reliance on the Indemnity Agreements, Surety issued certain surety bonds on behalf or at the request of the Debtor and/or certain of the Debtor Affiliates (the "Bonds")(a copy of those Bonds on which Surety has received and/or anticipates receiving claims are attached as Exhibit A).

WHEREAS, Surety has incurred significant losses that currently exceed $35,000,000 as a result of issuance of the Bonds and faces additional risk and exposure up to the aggregate penal sum of all the Bonds, which totals in in excess of Two Hundred Million Dollars ($200,000,000).

WHEREAS, on September 19, 2023, the Debtor filed for chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court") under case no. 23-02734 (the "Bankruptcy Case").

WHEREAS, prior to the filing of the Bankruptcy Case, Surety had been funding, directly or indirectly, payments to Debtor's subcontractors, suppliers, and others related to obligations on projects on which Surety has issued Bonds (the "Bonded Projects").

EXHIBIT

2

exhibitsticker.com

WHEREAS, prior to filing of the Bankruptcy Case, Surety had been arranging for and assisting Debtor in the performance of the completion of and performance of the Bonded Projects.

WHEREAS, the Debtor acknowledges that payments made to its subcontractors, suppliers, and others on the Bonded Projects during the preference period preceding the filing of the Bankruptcy Case did not deplete or otherwise come from the Debtor's assets and that, by Surety's performance, its right of equitable subrogation entitled Surety to all claims against obligees on the Bonds (including claims for breach of the bonded contracts).

WHEREAS, Surety filed a Proof of Claim (Claim No. 41) in the Bankruptcy Case stating a claim of $111,777,977.42, which amount represented one half of the total penal sums of the Bonds on which Surety had received and/or anticipated receiving claims (the "Surety Proof of Claim").
WHEREAS, the total amount of Surety's loss cannot be determined at this time, but Surety and Debtor agree that it is unlikely that Surety's losses will exceed Fifty-Million Dollars ($50,000,000).

WHEREAS, Surety and the Debtor have agreed to reduce, estimate, and fix Surety's total claim in the amount of Forty-Five Million Dollars ($45,000,000) representing a combination of Surety's losses to date, the value of the Other Indemnitors Assigned Claims (defined below), and less than five percent (5%) of the total remaining exposure under the Bonds (the "Surety Claim").

WHEREAS, Surety and the Other Indemnitors executed that certain Settlement and Release Agreement (the "Other Indemnitors Settlement"), resolving Surety's claims against the Other Indemnitors under the 2018 Indemnity Agreement and 2019 Indemnity Agreement with respect to the Surety Claim.

WHEREAS, the Other Indemnitors and/or certain of them filed Proofs of Claim Number 57, 58, 59, and 60 in the Bankruptcy Case, each asserting a claim against the Debtor in the amount of $20,518,751.64 (the "Other Indemnitors Proof of Claim").

WHEREAS, as part of the Other Indemnitors Settlement, the Other Indemnitors assigned, transferred, and conveyed to Surety all rights, claims, demands, and interests against the Debtor and Debtor Affiliate Indemnitors arising from or relating to the Indemnity Agreements, the Bonds, the business relationship between the Debtor and Debtor Affiliates (collectively or individually) and the Other Indemnitors (collectively or individually), or the sale of the Debtor, Holdings, Enterprises, and the interests therein to Mr. Smith and/or Ms. Smith (the "Other Indemnitors Assigned Claims"). The Other Indemnitors Assigned Claims includes the right to prosecute said claims in the Bankruptcy Case.

WHEREAS, on March 18, 2024, the Debtor filed its Plan of Reorganization (collectively with any amendments thereto, the "Plan") that it asserts is confirmable under section 1129 of the Bankruptcy Code.

WHEREAS, on May 2, 2024, Surety filed its Objection to Confirmation of the Debtor's Plan of Reorganization, contending that the Plan does not satisfy the requirements for confirmation pursuant to section 1129 of the Bankruptcy Code (the "Plan Objection").

WHEREAS, on April 2, 2024, Surety filed a complaint against the Debtor Affiliates in the United States District Court for the Eastern District of North Carolina under case no. 5:24-CV-00202 (the "Debtor Affiliate Suit"), alleging various causes of action (a) related to the Indemnity Agreements and (b) the avoidance of various fraudulent transfers of real property and related judgments.

WHEREAS, the Debtor Affiliates each dispute the allegations raised by Surety in the Debtor Affiliate Suit.

WHEREAS, the Debtor Affiliates are unwilling to proceed with the sale contemplated in the Plan unless the claims against it as asserted by Surety are settled and, therefore, the compromise and settlement set forth in this Agreement is significant consideration to the consummation of the Plan.

WHEREAS, notwithstanding the foregoing disagreements regarding the Plan and the Debtor Affiliate Suit and because of same, the Parties wish to reach a global resolution of the Plan Objection and Debtor Affiliate Suit.

NOW, THEREFORE, in consideration of these premises and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      Treatment of Surety's Bankruptcy Claim: Surety shall reduce and compromise its claim against the Debtor and shall accept and have an allowed general unsecured claim for the Surety Claim, Forty-Five Million Dollars ($45,000,000), in the Bankruptcy Case to be paid by the Debtor's estate over a period of five (5) years pursuant to and subject to the Plan as confirmed by the Bankruptcy Court.

2.      Settlement Payment: Mr. Smith, Ms. Smith, and Destination Management, jointly and severally (the "Settlement Payors"), shall pay or cause to be paid to the Surety the total sum of One Million Four Hundred Thousand Dollars ($1,400,000) (the "Settlement Payment") in exchange for the consideration and releases set forth herein. The Settlement Payors will execute a promissory note for the amount of the Settlement Payment payable on demand (the "Note"). The Note shall be paid as follows:

> a.      Any payments to Surety from the Debtor's estate pursuant to the Plan (the "Plan Payments") shall be credited dollar-for-dollar against the balance of the Note;
>
> b.      Surety shall forebear from making demand or taking other action on the Note during the life of the Plan, if confirmed, while receiving Plan Payments from the Debtor's estate or until an uncured default with respect to the Plan Payments, whichever occurs first, but in no event shall Surety be required to forbear its rights under the Note beyond five (5) years after the effective date of the confirmed Plan or in the event the Plan is denied and the Bankruptcy Case dismissed or converted;

c.      Upon completion of the Plan Payments pursuant to a confirmed Plan, an uncured default with respect to the Plan Payments, or denial of the Plan and dismissal or conversion of the Bankruptcy Case, whichever occurs first, the remaining balance of the Note shall be amended and amortized and the balance will be paid to Surety in equal monthly installments over the following five (5) years (the "Installment Payments" and each an "Installment Payment");

d.      The Settlement Payors shall pay the first Installment Payment by the first available fifteenth day of the month following completion of the Plan Payments, an uncured default with respect to the Plan Payments, or denial of the Plan and dismissal or conversion of the Bankruptcy Case, whichever occurs first, with each subsequent Installment Payment becoming due and owing on the fifteenth of each month thereafter;

e.      The Settlement Payors' failure to make any Installment Payment within fifteen (15) days of becoming due shall constitute a "Default" under this agreement;

f.      If the Settlement Payors are deemed to be in Default under this Agreement, Surety shall provide written notice to the Settlement Payors of the alleged Default (the "Notice of Default") which shall afford the Settlement Payors seven (7) days from receipt of the Notice of Default to cure such Default;

g.      To the extent the Settlement Payors fail to "Cure" any Default within seven (7) days of the receipt of a Notice of Default, the entire unpaid portion of the Note shall become immediately due and owing and interest shall begin to accrue on any unpaid portion of the Note in the amount of the lesser of ten percent (10.0%) or the maximum legal rate of interest then in effect in the State of North Carolina.

h.      Nothing herein shall prevent the Settlement Payors from prepaying all or a portion of the Note without penalty.

3.      <u>Estate Claims and Causes of Action</u>: The Debtor Affiliates, the Debtor's estate, and the reorganized Debtor shall not pursue any claims or causes of action, based on the Bankruptcy Code or otherwise, with respect to any of the Bonds, Bonded Projects, or contracts thereunder, including those claims for breach of contract, wrongful termination, claims for payment, avoidance actions, or other claims against (a) any obligee on any of the Bonds, (b) any subcontractor, supplier, laborer, or other party for work performed, materials supplied, or services provided or payment related to a bonded project, or (c) any owner on any bonded project (the "Bonded Project Claims").  The Debtor Affiliates, the Debtor, and Surety acknowledge and agree that the Bonded Project Claims are not property of the Bankruptcy Estate and such claims belong to Surety.  The Plan will be modified to reflect the terms of this Agreement.

4.      <u>Plan Support</u>: Surety shall withdraw its Plan Objection either within fifteen (15) business days of the entry of an order from the Bankruptcy Court approving this Agreement or, if approval of this Agreement and confirmation of the Plan are considered at the same hearing, upon the Bankruptcy Court's oral approval of this Agreement, whichever occurs first.

5.      Dismissal of the Debtor Affiliate Suit: Surety shall cause the dismissal of the Debtor Affiliate Suit with prejudice within fifteen (15) business days after (a) execution of this Agreement by the Parties, (b) entry of an order from the Bankruptcy Court approving this Agreement, and (c) final, unappealable confirmation of the Plan.

6.      Release by Surety: Effective as of, conditioned upon, and subject to (a) execution of the Note, (b) approval of the Plan, and (c) the execution of this Agreement, Surety, on its own behalf, and on behalf of its agents, servants, employees, insurers, reinsurers, successors, affiliates, and assigns, will release, acquit, exonerate, and forever discharge the Debtor and Debtor Affiliates, their agents, servants, employees, insurers, reinsurers, successors, affiliates, and assigns, from and against any and all actions, causes of action, claims, and demands for any and all damages, losses, and/or injuries that Surety possesses or may possess against the Debtor and Debtor Affiliates (i) under or in relation to the Indemnity Agreements, the Bonds, any underlying bonded project or contract or right or interest thereto, and/or the Debtor Affiliate Lawsuit and/or (ii) without warranty, pursuant to the Other Indemnitors Assigned Claims.

7.      Warranty of Assets and Agreement not to Transfer Property: Mr. Smith and Ms. Smith have provided a disclosure of assets and financial interests to Surety as part of the negotiation of this Agreement. Mr. Smith and Ms. Smith represent and warrant that the information provided is accurate and complete to the best of their knowledge and that they have disclosed all assets, rights, and interests with an individual value of greater than $25,000 of which they are aware. The remedy for a breach of this warranty is that the releases of Surety by the Indemnitors shall be void to the extent of the additional assets, rights, and interests not so disclosed. For avoidance of doubt, the remedy for a breach of this warranty provision shall be limited to the value of the undisclosed asset, right, or interest plus the reasonable attorneys' fees incurred by Surety in pursuit of its claims.  Destination Management is the owner of property located at 207 Smith Street, Atlantic Beach, NC 28512 (the "Smith Street Property") and the Debtor Affiliates, including Destination Management, agree not to transfer or further encumber the Smith Street Property without the written consent of Surety provided, however, Surety shall provide its written consent to the sale of the Smith Street Property **if** (a) the sale is to a party that has no personal, family, or business relationship to any of the Debtor Affiliates, (b) the sale price is the fair market value of the Smith Street Property, and (c) the net proceeds (after satisfaction of priority liens and closing costs) are paid to Surety to be applied to the Note.

8.      Release by the Debtor and Debtor Affiliates: The Debtor and Debtor Affiliates, on their own behalf, and on behalf of their agents, servants, employees, insurers, reinsurers, successors, affiliates, and assigns, hereby release, acquit, exonerate, and forever discharge Surety and its agents, servants, employees, insurers, reinsurers, successors, affiliates, and assigns, from and against any and all defenses, actions, causes of action, claims and demands, for any and all damages, losses, and/or injuries that the Debtor or Debtor Affiliates possess or may possess against Surety arising out of or relating to the Indemnity Agreements, the Bonds, any underlying bonded project or contract or right or interest thereto, and/or the Debtor Affiliate Lawsuit.

9.      Default under this Agreement: The Settlement Payors fully understand and acknowledge that their failure to timely make any one of the Installment Payments in accordance

with Paragraph 2 of this Agreement constitutes a Default under this Agreement. The Settlement Payors further fully understand and acknowledge that upon an Event of a Default under this Agreement, and after providing Notice of Default and opportunity to Cure as provided for in Paragraph 2, Surety shall have the right, in its sole discretion, to seek the full amount of the Note, less any payments received from the Plan Payments as set forth in Paragraph 2 or to pursue recovery of the full Surety Claim. Further, in the event any one of the Settlement Payors initiates bankruptcy proceedings or is the subject of receivership proceedings, the full amount of the Note, less any payments received from the Plan Payments as set forth in Paragraph 2, shall be immediately due and payable as to the Settlement Payor that initiates the bankruptcy proceeding or is the subject of a receivership.

10.   Counterparts: This Agreement may be executed by the Parties independently in any number of counterparts, all of which together will constitute but one and the same instrument, which is valid and effective as if all parties had executed the same counterpart. Furthermore, (a) this Agreement may be transmitted between the parties by facsimile machine or electronic mail, (b) this Agreement may be executed by facsimile or scan and electronically mailed signatures, and (c) facsimile or scan and electronically mailed signature shall have the effect of an original signature relative to this Agreement.

11.   No Assignment: The Parties agree that they have not assigned any portion or portions of their claims against the other Parties to this Agreement to any persons or entities.

12.   Governing Law: This Agreement, and any rights, remedies, or obligations provided for hereunder shall be interpreted and enforced in accordance with the laws of the State of North Carolina. Any suit filed to enforce this Agreement shall be brought in the Bankruptcy Court, which retains jurisdiction.

13.   Entire Agreement: This Agreement constitutes the entire agreement of the Parties with respect to the issues specifically addressed herein and supersedes and replaces any prior communications, written or oral, among the Parties with respect to the subject matter.

14.   Severability of Provisions of Agreement: The unenforceability or invalidity of any provision of this Agreement shall not affect the enforceability or validity of any other provision herein, and the invalidity or unenforceability of any provision of this Agreement as to any person, entity, or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons, entities, or circumstances.

15.   Bankruptcy Court Approval: **This Agreement is conditioned upon approval by the Bankruptcy Court. The Debtor shall file a motion in the Bankruptcy Court for approval of this Agreement within fifteen (15) business days of the Execution Date. Notwithstanding the confirmation of the Plan or denial thereof and dismissal of the Bankruptcy Case, this Agreement shall become effective as of the entry of an order from the Bankruptcy Court approving this Agreement or, if approval of this Agreement and confirmation of the Plan are considered at the same hearing, upon the Bankruptcy Court's oral approval of this Agreement, whichever occurs first (the "Effective Date").**

**IN WITNESS THEREOF**, the parties hereto have executed this Agreement on the Effective Date.

*[Signature Pages to Follow]*

**Westfield Insurance Company**

By: _____
Daniel Pentecost
Surety Bond Claims Manager

STATE OF OHIO

COUNTY OF ___Cuyahoga County___

    Personally appeared before me, the undersigned, a Notary Public in and for said county and state, Daniel Pentecost, with whom I am personally acquainted, and who acknowledged that he executed this instrument in his capacity as an authorized agent of Westfield Insurance Company, for the purposes therein contained.

    Witness my hand at _____, _____ this the 29TH day of ___JULY___, 2024.

_____
Notary Public

MATTHEW G. BURG, Attorney At Law
Notary Public - State of Ohio
My commission has no expiration date.
Section 147.03

8

JSmith Civil LLC

By: _____

Its: _MANAGER_____

STATE OF _NORTH CAROLINA_

COUNTY OF _WAKE_____

    Personally appeared before me, the undersigned, a Notary Public in and for said county and state, _____, with whom I am personally acquainted, and who acknowledged that he executed this instrument in his capacity as an authorized agent of JSmith Civil LLC for the purposes therein contained.

    Witness my hand at _Raleigh_, _North Carolina_ this   the   _29_   day   of _July_____, _2020_.

JOSEPH Z. FROST
Notary Public
Wake County
NORTH CAROLINA
Commission Expires 10/05/2027

_____
Notary Public

9



Jeremy A. Smith, Individually

STATE OF <u>NORTH CAROLINA</u>

COUNTY OF <u>WAKE</u>

    Personally appeared before me, the undersigned, a Notary Public in and for said county and state, Jeremy Smith, with whom I am personally acquainted, and who executed this Agreement for the purposes therein contained.

    Witness my hand at <u>Raleigh</u>, <u>North Carolina</u> this the <u>29</u> day of <u>July</u>, 2024.

JOSEPH Z. FROST
Notary Public
Wake
County
NORTH CAROLINA

Commission Expires 10/05/2027

_____
Notary Public

_Tina W. Smith_
**Tina W. Smith, Individually**

STATE OF _NORTH CAROLINA_

COUNTY OF _WAKE_

    Personally appeared before me, the undersigned, a Notary Public in and for said county and state, Tina Smith, with whom I am personally acquainted, and who executed this Agreement for the purposes therein contained.

    Witness my hand at _RALEIGH_ , _NORTH CAROLINA_ this   the   _29_   day   of _JULY_

JOSEPH R. FROST
Notary Public
Wake
County
NORTH CAROLINA
COMMISSION
EXPIRES 10/05/2027

_____
Notary Public

**JSC Holdings, LLC f/k/a BPC Holdings, LLC**

By: _____

Its: _Manager_ _____

STATE OF ___NORTH CAROLINA___

COUNTY OF ___WAKE___

    Personally appeared before me, the undersigned, a Notary Public in and for said county and state, _Jeremy A. Smith_ with whom I am personally acquainted, and who acknowledged that he executed this instrument in his capacity as an authorized agent of JSC Holdings, LLC f/k/a BPC Holdings, LLC for the purposes therein contained.

    Witness my hand at ___RALEIGH___, ___NC___ this the ___29___ day of ___July___, 2024.

JOSEPH Z. FROST
Notary Public
Wake
County
NORTH CAROLINA

COMMISSION
EXPIRES 10/5/2027

Notary Public _____

12

**JSC Enterprises, LLC f/k/a BPC Enterprises, LLC**

By: _____

Its: _Manager_____

STATE OF _NORTH CAROLINA_

COUNTY OF _WAKE_____

Personally appeared before me, the undersigned, a Notary Public in for said county and state, _Jeremy A. Smith_ with whom I am personally acquainted, and who acknowledged that he executed this instrument in his capacity as an authorized agent of JSC Enterprises, LLC f/k/a BPC Enterprises, LLC for the purposes therein contained.

Witness my hand at _Raleigh___, _North Carolina_ this the _29_ day of _July_____, 2024.

JOSEPH Z. FROST
Notary Public
Wake
County
NORTH CAROLINA

Commission Expires 10/5/2027

_____
Notary Public

**Smith Holdings Land Trust**

By: *Tina W. Smith*

Its: TRUSTEE

STATE OF NORTH CAROLINA

COUNTY OF WAKE

Personally appeared before me, the undersigned, a Notary Public in and for said county and state, TINA W. SMITH, with whom I am personally acquainted, and who acknowledged that she executed this instrument in her capacity as trustee for the Smith Holdings Land Trust for the purposes therein contained.

Witness my hand at RALEIGH , NORTH CAROLINA this the 29 day of July , 2024.

JOSEPH Z. FROST
Notary Public
Wake
County
NORTH CAROLINA

_____
Notary Public

MY COMMISSION EXPIRES 10/05/2027

14

**JSmith NC Destination Management, LLC**

By: _____

Its: _Manager_____

STATE OF _North Carolina_

COUNTY OF _Wake_____

Personally appeared before me, the undersigned, a Notary Public in and for said county and state, _Jeremy A. Smith_ with whom I am personally acquainted, and who acknowledged that he executed this instrument in his capacity as an authorized agent of JSmith NC Destination Management, LLC for the purposes therein contained.

Witness my hand at _Raleigh_, _NC_____ this the _29_ day of _July_____, 2024.

_____
Notary Public

JOSEPH Z. FROST
Notary Public
Wake
County
NORTH CAROLINA

COMMISSION
EXPIRES 10/05/2027

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### NEW BERN DIVISION

IN RE:

**JSMITH CIVIL, LLC,**

**DEBTOR.**

CASE NO. 23-02734-5-JNC
CHAPTER 11

---

## ORDER ALLOWING MOTION FOR APPROVAL OF GLOBAL SETTLEMENT AND COMPROMISE WITH WESTFIELD INSURANCE COMPANY

---

**THIS MATTER** coming before the Court upon the Motion for Approval of Global Settlement and Compromise with Westfield Insurance Company [D.E. 404], as amended and modified by the Supplement to Motion for Approval of Global Settlement and Compromise with Westfield Insurance Company (collectively, the "Settlement Motion") filed by Debtor-Plaintiff JSMITH CIVIL, LLC ("JSC"), seeking approval of the global settlement and compromise reached with WESTFIELD INSURANCE COMPANY ("Westfield"), regarding the claims and disputes arising in, and relating to, the above-captioned bankruptcy proceeding.

The Debtor and Westfield desire to fully compromise, finally settle, and fully release all claims, disputes and differences against one another and have agreed to resolve this matter as set forth herein. The entry of this Order, however, constitutes neither a retraction of any claims made, nor an admission of any liability and/or any wrongdoing by any of the parties involved.

Based upon the record, and based upon the agreement reached between the Parties, the Court makes the following **FINDINGS OF FACT** and **CONCLUSIONS OF LAW**:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Likewise, this Court

possesses the authority to hear and adjudicate this matter pursuant to the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

2.     The Debtor, a limited liability company organized and existing under the laws of the State of North Carolina, filed a voluntary petition with the United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court" or "Court") seeking relief under chapter 11 of the Bankruptcy Code on September 19, 2023 (the "Petition Date"), BK Case No. 23-02734-5-JNC (the "Bankruptcy Case").

3.     Prior to the Petition Date, the Debtor and certain non-debtor third parties, including JEREMY A. SMITH ("Jeremy Smith"), TINA SMITH ("Tina Smith"), JSC HOLDINGS, LLC ("JSC Holdings"), JSC ENTERPRISES, LLC ("JSC Enterprises"), and/or SHELLEY A. MCPHATTER ("McPhatter"), BRIDGEPOINT GENERAL CONTRACTING, INC. ("BGC"), and BRIDGEPOINT CONSTRUCTION SERVICES ("BCS"), and David M. White ("White")[1] executed and delivered to Westfield, the following:

> A. Agreement of Indemnity executed by the Debtor and made effective as of May 8, 2018 (the "2018 Indemnity Agreement");
>
> B. Agreement of Indemnity executed by the Debtor and made effective as of May 21, 2019 (the "2019 Indemnity Agreement"); and
>
> C. Agreement of Indemnity executed by the Debtor and made effective as of May 1, 2020 (the "2020 Indemnity Agreement").

(collectively, the "Indemnity Agreements").

4.     Purusant to the Indemnity Agreements, the Debtor agreed to indemnify Westfield, as surety under certain surety bonds, undertakings, guarantees, and other writings obligatory in the nature of a bond (the "Surety Bonds" or the "Bonds") from any and all liability for losses and/or expenses of whatsoever kind, including but not limited to interest, court costs, and counsel fees) and other losses that Westfield may sustain by reason of the Debtor and other third-party indemnitors failure to perform on any contracts covered by the Bonds (collectively, the "Bonded Projects").

5.     As security therefore, the Indemnity Agreements granted Westfield a security interest in the following:

---

[1] McPhatter, BGC, BCS, and White are collectively referred to herein as, the "Other Indemnitors."

i. All of such Indemnitor's real property, personal property, accounts, accounts receivable, notes receivable chattel paper, commercial tort claims, deposit accounts, documents, machinery, equipment, fixtures, instruments, inventory, investment property (including certificated and uncertificated securities), general intangibles, goods (including rights to returned or repossessed goods and rights of stoppage in transit), cash and cash equivalents, contract rights and claims, payment intangibles, and supporting obligations, agreements, and letter of credit rights, proceeds of letters of credit, promissory notes, records, software, franchises, customer lists, insurance receivables and refunds, tax refunds, tax refund claims, pension plan refunds, pension plan reversions, patents, patent applications, service marks, service mark applications, trademarks, trademark applications, trade names, trade secrets, goodwill, copyrights, copyright applications, and licenses; and

ii. All supporting obligations of, attachments, accessions, parts and appurtenances to, substitutions for, replacements of, products and proceeds including cash proceeds, noncash proceeds and proceeds of any insurance of, any and all of the Collateral.

(the "Westfield Collateral"). Westfield, on Marh 29, 2023, filed a UCC Financing Statement with the North Carolina Secretary of State, File No. 2023004094211, to perfect its security interest, lien and encumbrance in the Westfield Collateral arising from the 2020 Indemnity Agreement (the "March 2023 Financing Statement"). Likewise, and on May 10, 2023, Westfield filed a UCC Financing Statement with the North Carolina Secretary of State, File No. 20230059889H, to perfect its security interest, lien, and encumbrance in the Westfield Collateral arising from the 2018 Indemnity Agreement and the 2019 Indemnity Agreement (the "May 2023 Financing Statement").

6.     Prior to the filing of the Bankruptcy Case, Westfield had been arranging for and assisting Debtor in the performance of the completion of and performance of the Bonded Projects and, moreover, had been funding, directly or indirectly, payments to Debtor's subcontractors, suppliers, and others related to obligations on projects on which Westfield has issued Bonds, referred to herein as, the Bonded Projects.

7.     Westfield incurred significant losses that currently exceed $35,000,000.00 through issuance of the Bonds and faces additional risk and exposure up to the aggregate penal sum of all the Bonds, totaling in excess of $200,000,000.00. Although the total amount of Westfield's loss cannot be determined at this time, it is unlikely that said losses will exceed $50,000,000.00.

8.     Westfield, in the Bankruptcy Case, filed a proof of claim, Claim No. 41, asserting a secured claim of $111,777,977.42, representing one-half (1/2) of the total penal sums of the Bonds on which Westfield had received and/or anticipated receiving claims (the "Westfield POC").

9.     The Other Indemnitors filed, in the Bankruptcy Case, proofs of claim, Claim Nos. 57, 58, 59, and 60 in the Bankruptcy Case, asserting claims against the Debtor in the amount of $20,518,751.64 (the "Other Indemnitors POCs"). As part of settlement and

compromise between Westfield and the Other Indemnitors (the "Other Indemnitors Settlement"), the Other Indemnitors assigned, transferred, and conveyed to Westfield all rights, claims, demands, and interests against the Debtor and Debtor Affiliates arising from or relating to the Indemnity Agreements, the Bonds, the business relationship between the Debtor and Debtor Affiliates (collectively or individually) and the Other Indemnitors (collectively or individually), or the sale of the Debtor, Holdings, Enterprises, and the interests therein to Jeremy Smith and/or Tina Smith (the "Other Indemnitors Assigned Claims").[2]

10.     On March 18, 2024, the Debtor filed the Plan of Reorganization [D.E. 296] (the "Plan") and the Disclosure Statement [D.E. 297] that are currently before the Court, to which Westfield has objected.  The hearing on confirmation of the Plan and approval of the Disclosure Statement is currently scheduled for July 30, 2024, in Greenville, North Carolina (the "Confirmation Hearing").

11.     On April 2, 2024, and following the filing of the Plan and the Disclosure Statement, Westfield commenced a civil action with the United States District Court for the Eastern District of North Carolina captioned Westfield Insurance Company v. JSC Holdings, LLC, Jeremy Smith, Tina Smith, Smith Holdings Land Trust, and JSmith Destination Management, LLC, Civ. Action No. 5:24-cv-00202-FL, through the filing of a Complaint against JSC Holdings, Jeremy Smith,  Tina Smith, JSC Holdings, JSC Enterprises, SMITH HOLDINGS LAND TRUST (the "Smith Trust"), and JSMITH DESTINATION MANAGEMENT, LLC ("JSC Destination") (Jeremy Smith, Tina Smith, JSC Holdings, JSC Enterprises, the Smith Trust, and JSC Destination are collectively referred to herein as, the "Debtor Affiliates") (collectively, the "Federal Litigation").

12.     The Debtor Affiliates each dispute the allegations raised by Westfield in the Federal Litigation and do not believe that Westfield is entitled to, nor should it be awarded, any of the relief sought in the Federal Litigation.

13.     Following commencement of the Federal Litigation, and prior to the Confirmation Hearing, the Debtor, Westfield, and the Debtor Affiliates (collectively, the "Parties"), and through their counsel, engaged in mediated settlement conference overseen by the Honorable Stephani W. Humrickhouse, Retired United States Bankruptcy Judge for the Eastern District of North Carolina,  which culminated in a global resolution of the issues and controversies between the Debtor and Westfield in the Bankruptcy Case, as well as the Federal Litigation between Westfield and the Debtor Affiliates, including any and all of which have been, or could have been, asserted by and against one another

---

[2] The Other Indemnitors Assigned Claims include, but are not limited to, the right to prosecute and maintain the Other Indemnitors POCs that were filed in the Bankruptcy Case.

(collectively, the "Claims"), and is memorialized in the Settlement and Release Agreement (the "Settlement Agreement"), a copy of which was attached to the Settlement Motion, as supplemented and modified, as <u>Exhibit 2</u> and incorporated herein by reference.

14.     Based upon the foregoing, and the record in the Bankruptcy Case and the Adversary Proceeding, the settlement and resolution memorialized in the Settlement Agreement a sound exercise of the business judgment of the Debtor, and is otherwise in the best interests of the Debtor, the bankruptcy estate, creditors, and parties interest, and should be approved pursuant to Fed. R. Bankr. P. 9019.

**NOW THEREFORE,** based on the foregoing, including the agreement of the Parties memorialized in the Settlement Agreement, **IT IS HEREBY ORDERED, ADJUDGED, and DECREED** as follows

1.     The Settlement Motion is **ALLOWED** and the compromise and settlement with Westfield and memorialized in the Settlement Motion and accompanying Settlement Agreement, is hereby **APPROVED.**

2.     The Debtor, Westfield, and Debtor Affiliates shall be authorized to execute any and all formal documents and undertake any additional measures in order to implement the terms and provisions of this Order, which will formalize the settlement and resolution of any claims and disputes in the Bankruptcy Case and the Federal Litigation with respect to Debtor Affiliates, and provide the Parties with the requisite releases of any and all claims they may have against one another in the Bankruptcy Case and/or the Federal Litigation.

3.     The Court shall retain jurisdiction to interpret, construe, enforce, or resolve any disputes or controversies arising from or related to, this Order and the Settlement Agreement.

**END OF DOCUMENT**